IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | Case No. 0:22-cv-60988 |
| ) | |
| v. ) | |
| ) | |
| KEVIN W. WESSELL, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**UNITED STATES' BRIEF IN SUPPORT OF PETITION TO ENFORCE IRS SUMMONS**

The United States petitions to enforce an IRS summons served on Kevin Wessell. Although Mr. Wessell agreed to produce all non-privileged documents responsive to the summons and to provide an adequate privilege log for anything withheld, he has done neither. Instead, his production contains numerous unexplained gaps that he refuses to account for, and his 482-page log provides no basis for evaluating the privilege claims. As a result, the Court should find that the United States has made a *prima facie* showing that (1) Mr. Wessell has failed to comply with the summons and (2) the summons satisfies the requirements for enforcement. On that basis, the Court should order Mr. Wessell to show cause why the summons should not be enforced. A proposed order is enclosed.

**I. Background**

A. *The IRS issued a summons to Mr. Wessell*

On September 26, 2018, the IRS served a summons on Mr. Wessell. Exhibit 1 (Cincotta Decl.) ¶ 10. The purpose of the summons is to identify the clients of the Wessell Group, a sprawling enterprise operated by Mr. Wessell whose activities bear "the hallmarks of offshore

tax evasion." *Id.*, Attachment C ¶ 27.[1] In particular, the Wessell Group creates foreign entities and bank accounts in tax havens such as the Cook Islands and Nevis in order to help United States taxpayers hide their money. *Id.* ¶¶ 19–49. The Wessell Group equips its customers with nominee directors and officers, and it even provides them with suggested avenues for circumventing court orders to repatriate funds. *Id.* ¶¶ 32–38. Based on extensive evidence outlined by the United States in a 2018 filing, this Court has already concluded that "there is a reasonable basis for believing" that the Wessell Group's customers "may fail or may have failed to comply with the internal revenue laws," which require taxpayers to report their worldwide income and pay associated taxes. *See In re Tax Liabilities of John Does*, No. 0:18-cv-62135-WPD, ECF No. 6 at 1 (S.D. Fla. Sept. 13, 2018).[2]

The IRS summons required Mr. Wessell to produce all documents related to United States taxpayers who, between January 1, 2012 and December 31, 2017, used the Wessell Group

---

[1] Exhibit 1 is a declaration from IRS Supervisory Revenue Agent Karen Cincotta related to the present petition to enforce. The United States also filed a prior *ex parte* petition, discussed below in note 2, related to Mr. Wessell. In connection with that prior petition, Agent Cincotta executed another declaration that sets forth background information about the Wessell Group. That prior declaration is included as Attachment C to the current declaration.

[2] This Court made this determination in an *ex parte* order authorizing the IRS to serve the same summons the United States is currently seeking to enforce. Unlike with ordinary IRS summonses, this one required advance approval because it arose under the "John Doe" provision of 26 U.S.C. § 7609(f). In connection with the IRS's investigation of the Wessell Group, this Court authorized the IRS to serve a summons on Mr. Wessell and other individuals and entities located in Florida, and courts in New York and California also permitted the service of summonses on recipients in those jurisdictions. *See In re Tax Liabilities of John Does*, No. 2:18-cv-8003-CAS-E, ECF No. 6 (C.D. Cal. Sept. 20, 2018); *In re Tax Liabilities of John Does*, No. 1:18-mc-00423-PKC, ECF No. 10 (S.D.N.Y Sept. 11, 2018). Only the summons to Mr. Wessell is at issue in this petition. Although this case began under the special rules of § 7609(f), it is now just like any other IRS summons matter. In particular, the *ex parte* approval of the issuance of the summons cannot be the subject of any further review or dispute. *See, e.g.*, *United States v. John G. Mutschler & Assocs., Inc.*, 734 F.2d 363, 366 (8th Cir. 1984). As discussed below, the sole question is whether the summons, now issued, should be enforced.

to "establish, maintain, operate, or control: any foreign financial account or other asset; any foreign corporation, company, trust, foundation, or other legal entity; or any foreign or domestic financial account or other asset in the name of a foreign entity." Exhibit 1 (Cincotta Decl.) ¶ 11 & Attachment D. The deadline for compliance was October 26, 2018. *Id.* ¶ 9.

### B. Mr. Wessell agreed, then failed, to fully comply with the summons

After numerous extensions of that deadline, the parties agreed to enter into a clawback agreement to facilitate Mr. Wessell's compliance with the summons. Under that agreement, Mr. Wessell had two obligations. First, apart from documents that could potentially be privileged, Mr. Wessell was required to produce all documents "potentially responsive to the Summons." Exhibit 2 at 1. Second, for any documents identified as potentially privileged, he was required to "conduct a good-faith privilege review" and to "produce a privilege log identifying all Documents withheld on the basis of claimed privileges." *Id.* at 2.

To date, Mr. Wessell has produced a list of 1,470 customers, together with their affiliated entities' names, the jurisdictions in which the entities are or were located, and certain additional data points. Exhibit 1 (Cincotta Decl.) ¶¶ 13, 15. Additionally, Mr. Wessell has produced more than 600,000 documents that are potentially responsive to the summons. *Id.* ¶ 18. Finally, Mr. Wessell has provided a 482-page privilege log with 3,441 entries. *See* Exhibit 3. This log, apart from being littered with obviously nonprivileged entries, contains almost none of the information that is needed to evaluate the privilege claims. Meanwhile, after spending a substantial amount of time reviewing the customer list and the document production, the IRS has identified numerous apparent gaps. The United States has attempted to address these issues with Mr. Wessell but has been unable to resolve them. As a result, the United States files this petition to enforce.

## II.     Standards

To obtain enforcement, the United States must first demonstrate that there has not been full compliance with the summons and then must establish a *prima facie* case under *United States v. Powell*, 379 U.S. 48 (1964). Under *Powell*, the United States must show that 1) "the investigation will be conducted pursuant to a legitimate purpose," 2) "the inquiry may be relevant to the purpose," 3) "the information sought is not already within the [IRS's] possession," and 4) "the administrative steps required by the [Internal Revenue] Code have been followed." *Id.* at 57–58. A declaration from an IRS agent involved in the case is sufficient to establish a *prima facie* case. *See United States v. Clarke*, 573 U.S. 248, 250 (2014)*; La Mura v. United States*, 765 F.2d 974, 979 (11th Cir. 1985).

Once the United States has made a *prima facie* showing, the burden shifts to the summoned party. To meet that burden, the party must "disprove one of the four elements of the government's *prima facie* showing or convince the court that enforcement of the summons would constitute an abuse of the court's process." *La Mura*, 765 F.2d at 979–80; *see also Clarke*, 573 U.S. at 250. This is a "heavy" burden, "requiring allegation of specific facts" to show a summons should not be enforced. *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992).

## III.    Argument

Despite repeated promises of full compliance, Mr. Wessell has fallen far short of the mark. His production appears incomplete, and his privilege log does not pass muster. Meanwhile, the declaration of Agent Cincotta submitted in support of this petition establishes a *prima facie* case for enforcement under *Powell*. As a result, Mr. Wessell should be ordered to show cause why the summons should not be enforced.

*A. Mr. Wessell's production has numerous unexplained gaps*

Although Mr. Wessell produced over 600,000 documents in response to the summons, the United States has substantial evidence that he failed to produce **all** responsive documents, as the summons requires. Evidence obtained from another source proves that Mr. Wessell completely omitted some customers from his customer list and production even though their information is responsive to the summons. Meanwhile, there is a significant mismatch between the customer list Mr. Wessell provided and the documents he produced. Finally, Mr. Wessell appears to have produced only partial files for numerous customers.

First, the IRS knows that Mr. Wessell left customers off his list and out of his production. As noted, Mr. Wessell was not the only recipient of a summons for records related to the Wessell Group. Instead, there were numerous recipients across three jurisdictions. *See supra* n.2. The IRS compared information about Wessell Group customers obtained from one of the other summons recipients against Mr. Wessell's production and came across several customers who were identified by the other summons recipient but not by Mr. Wessell himself. Exhibit 1 (Cincotta Decl.) ¶¶ 16, 33. Three examples are Pedro Benevides, who is the beneficial owner of European Investments Group, LLC; Molly R. Chen, who is the beneficial owner of Jemic Company, LLC; and Liora Wall, who is the beneficial owner of Genealogy Services Ltd. *Id.* ¶ 16.[3] All of these are foreign entities that the Wessell Group operated for U.S. taxpayers during the timeframe at

---

[3] This list is not intended to be exhaustive. *Id.* The United States is withholding certain other examples, as well as the identity of the person or entity that produced the information, so that Mr. Wessell is not able to opportunistically supplement his production by turning over only those documents the United States already has reason to know about. The person or entity has access to only a limited universe of Wessell Group documents, so knowing the identity of that person or entity could lead Mr. Wessell to continue withholding documents outside that universe. The United States can make additional information available for *in camera* inspection if the Court desires.

issue in the summons. *Id.* However, neither the customers nor the entities were included on Mr. Wessell's list. *Id.* Additionally, the IRS searched the produced documents for the three entities, as well as for their beneficial owners, but the searches yielded no results. *Id.* ¶ 33. This absence casts significant doubt on the completeness of Mr. Wessell's production.

Second, Mr. Wessell's customer list does not align with the documents he produced. By aggregating Mr. Wessell's customer list, information from some of the documents Mr. Wessell produced, and the names provided by the other summons recipient referenced above, the IRS created a master list of potential Wessell Group customers. *Id.* ¶ 17. That master list contains both customer names and the names of their associated entities. *Id.* The IRS then assigned a team of three Senior Revenue Agents and a Relativity Technical Advisor (the "IRS Team") to analyze and review the documents produced by Mr. Wessell. *Id.* ¶ 19. Using several Relativity tools and functions, the IRS Team extensively analyzed and searched the produced documents for customer and entity names from the master list. *Id.* at ¶¶ 20–27. Out of the 5,483 searches run as of August 12, 2021, 841 generated no results. *Id.* ¶ 28. That breaks down to 109 individuals and 732 entities for whom there are no results. *Id.* ¶¶ 28–29.[4] Some of the search terms that yielded no results came from names identified by the other summons recipient, but the majority of them were derived from Mr. Wessell's own customer list. *Id.* ¶ 32. In other words, for a substantial number of customers and entities Mr. Wessell identified on his own list, he produced no corresponding documents.

Finally, even for customers for whom Mr. Wessell did produce documents, the files frequently appear incomplete. Mr. Wessell sold customers pre-packaged plans, so the

---

[4] When an entity appeared to have multiple name variations, the IRS ran searches of all known variations. *Id.* ¶ 29. As a result, the number of unique entities for which there were no responsive documents is marginally lower than 732. *Id.*

expectation is that each customer with the same type of package would have the same paperwork in his or her customer file. *Id.* ¶ 34. For instance, one of the types of entities the Wessell Group forms is a limited duration company ("LDC"). *Id.* ¶ 35. The Wessell Group's use of LDCs bears the "hallmarks of tax noncompliance." *Id.* ¶ 36. The IRS reviewed the documents that Mr. Wessell produced related to 41 LDCs. *Id.* ¶ 37. Although a document produced by Mr. Wessell states that operating agreements and articles of organization are required for LDCs, there were 24 LDCs for which the IRS could not locate an operating agreement and 15 for which the IRS could not locate articles of organization. *Id.*

The United States has presented Mr. Wessell with some of this evidence of incompleteness and has requested an explanation. Mr. Wessell's attorneys have represented that they have produced or withheld/logged all documents in their possession, but they have not provided any explanation for the gaps. Moreover, they have refused to submit an affidavit from Mr. Wessell that he has turned over to them all potentially responsive documents. *See* Exhibits 4–5 (correspondence between counsel). The fact that his attorneys have accounted for all documents they have is of little comfort if Mr. Wessell has not provided them with everything he possesses. At a bare minimum, these gaps are red flags suggesting that Mr. Wessell has withheld responsive documents, and he should therefore be ordered to produce all responsive documents in his possession, custody, or control.

B. *Mr. Wessell's privilege log is inadequate*

Separately, even a cursory review of Mr. Wessell's privilege log shows that it fails to comply with the Federal Rules of Civil Procedure and this Court's requirements. A valid privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself

privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Specifically, in this Court, a "proper privilege log" should include:

(1) the name and job title or capacity of the author of the document;

(2) the name and job title or capacity of each recipient of the document;

(3) the date the document was prepared and, if different, the date(s) on which it was sent to or shared with persons other than the author(s);

(4) the title and description of the document;

(5) the subject matter addressed in the document;

(6) the purpose(s) for which it was prepared or communicated; and

(7) the specific basis for the claim that it is privileged.

*Anderson v. Branch Banking & Tr. Co.*, No. 13-cv-62381, 2015 WL 2339470, at *2 (S.D. Fla. May 14, 2015).

Although Mr. Wessell's privilege log arguably complies with the third requirement by providing a document date, it fails to satisfy every other requirement, thereby making it impossible to assess the claims of privilege. Indeed, the log itself does not assert any specific privileges. Mr. Wessell's attorneys subsequently contended that the withheld documents are protected from disclosure by the attorney-client privilege and the attorney work product doctrine. To date, though, neither Mr. Wessell nor his attorneys have provided any convincing explanation as to how either privilege applies to justify withholding documents responsive to the IRS's summons.

> i. *Mr. Wessell's log fails to identify the name and job title of the documents' authors and recipients*

Privilege logs must identify "the individuals who were parties to the communications with sufficient detail to permit the compelling party or court to determine if the privilege is

properly claimed." *TIC Park Centre 9, LLC v. Cabot*, No. 16-24569-Civ-COOKE/TORRES, at *4 (S.D. Fla. June 1, 2017) (quoting *Arthrex, Inc. v. Parcus Med., LLC*, No. 2:11–cv–694–FtM–29SPC, 2012 WL 3778981, at *4 (M.D. Fla. Aug. 31, 2012)) (internal quotation marks omitted). At minimum, the log should include "the name and job title or capacity of the author of the document," as well as "the name and job title or capacity of each recipient of the document." *Anderson*, 2015 WL 2339470, at *2; *see also* S.D. Fla. Local R. 26.1(e)(2)(B)(ii)(a) (requiring a privilege log to include "other information as is sufficient to identify the document," including "where appropriate, the author, addressee, and any other recipient of the document" and "where not apparent, the relationship of the author, addressee, and any other recipient to each other").

Mr. Wessell's privilege log includes "From," "To," "CC," and "BCC" columns, which purport to identify the name and email address of the sender and recipient(s) of emails. *See* Exhibit 3 at 1. However, these fields are deficient in multiple respects. First, the email address is not always accompanied by a name. In some instances, an unhelpful system alias, such as "Friend," "Sales," or "Creditor Secured Party," is provided. *See, e.g.*, *id.* at 2, line 14; *id.* at 83, lines 533–39; *id.* at 88, line 572. In others, no name is provided at all. *See, e.g.*, *id.* at 2, lines 15–17; *id.* at 7, line 48; *id.* at 86, line 559.

Second, none of these fields provide any indication of the job title or capacity of any individual. Thus, it is impossible to determine whether any of these email communications represent confidential communications between an attorney and a client for the purpose of rendering legal advice or—if they do—whether any such communications were shared with a third party, thereby waiving any privilege that might otherwise apply.

Third, the privilege log claims numerous non-email documents as privileged. However, these documents have no information in the "From" or "To" columns. There is an additional

9

column labeled "Office Property – Author," which occasionally provides some information as to these documents, but not always. When it does provide information, it is often an unhelpful system alias, such as "admin," "customer," or "test." *See, e.g.*, *id.* at 17, lines 93\100[5]; *id.* at 55, lines 348\350; *id.* at 273, lines 1709\1710. As a result, for a vast number of documents, the privilege log contains almost no information to help discern the name and job title or capacity of the author and recipient(s) to properly assess the validity of the claimed privilege.

    ii. *The log does not describe the documents or identify the subject matters addressed*

A proper privilege log must also include "the title and description of the document," as well as "the subject matter addressed in the document." *Anderson*, 2015 WL 2339470, at *2. This information is critical to a proper assessment of privilege claims. *See id.* at *3 (explaining that without "sufficient information about the subject matters being addressed," neither the recipient nor the Court "can properly assess" the privilege claims); *see also Lincoln Nat'l Life Ins. Co. v. Biviano*, No. 09-82447-CIV-MARRA/JOHNSON, at *5 (S.D. Fla. Apr. 13, 2011) (noting that "the subject matter of each document, communication or tangible thing must be described in sufficient detail to permit opposing counsel and the Court to assess the applicability of the claimed privilege").

Mr. Wessell's privilege log provides a column for the "Title" of the document. However, in most cases, the title lacks descriptive value and the log provides no other description. In some cases, documents contain only a vague title like the name of a person or company, "LLCs," or "Documents." *See, e.g.*, Exhibit 3 at 1–2, lines 4–12\13; *id.* at 21, lines 117–19; *id.* at 71, lines 451–52; *id.* at 209, line 1230; *id.* at 252, lines 1547–49. In other cases, documents contain coded

---

[5] The log uses "\" to lump together various documents in a single entry.

titles like "CCF24042013_00000.pdf." *See, e.g.*, *id.* at 4, lines 25\26; *id.* at 11, lines 76\77. Occasionally, documents lack a title entirely. *See, e.g.*, *id.* at 303, lines 1932–34. Without any other description or indication of the subject matter addressed in each document, it is impossible to evaluate Mr. Wessell's privilege claims. *Cf. Beaubrun v. GEICO Gen. Ins. Co.*, No. 16-24205-Civ-COOKE/TORRES, 2017 WL 3284825, at *4–5 (S.D. Fla. Aug. 1, 2017) (finding a privilege log that gave short descriptions, such as "discussing probate issues," to be inadequate).

Moreover, the titles of numerous documents suggest that the documents are, in fact, not privileged. For example, Mr. Wessell claims as privileged several emails from LinkedIn and FedEx (Exhibit 3 at 19, line 106; *id.* at 181, line 1023); emails with newsletters, news articles, and other public information (*id.* at 7, line 48; *id.* at 80, lines 513\514; *id.* at 199, lines 1147\1148; *id.* at 272, line 1699); apparently administrative communications, such as payment reminders, invoices, payments, *etc.* (*id.* at 1, line 3; *id.* at 2, line 16; *id.* at 4, lines 31\32; *id.* at 22, lines 123\124; *id.* at 41, line 224); and other miscellaneous communications with titles that do not suggest privilege, such as "10th Year Anniversary Celebrations!!," "Hurricane Irma," and "Easter" (*id.* at 2, line 14; *id.* at 196, line 1125; *id.* at 214, line 1268). In sum, for virtually every document on the log, the title—the only descriptive information offered—fails to establish that a privilege applies. *Cf. Cabot*, 2017 WL 9988744, at *3 ("Many entries appear to relate to invoices, administrative matters, property funds, rent, addresses, and updates (whatever that means)—all of which do not appear to be privileged. In other words, the entries are vague, conclusory, and contain no specific facts to establish that each element of a privilege applies.").

### iii. *The log does not list the purpose for which each document was prepared or the basis for the claim that it is privileged*

Finally, the log fails to comply with the requirement to include the purpose for which each document was prepared or communicated and the "the specific basis for the claim that it is

11

privileged." *Anderson*, 2015 WL 2339470, at *2. To this date, the United States does not know the purpose for which the documents were created. Moreover, the log does not even identify the type of privilege claimed. In a supplemental letter, Mr. Wessell claims to be withholding the documents based on "attorney-client privilege/attorney work product protection." However, these are different privileges, and we still do know which privilege Mr. Wessell believes applies to each document. More importantly, for whichever privilege may be claimed, there is no explanation for why it applies. As a result of these issues, combined with the others discussed above, it is impossible for the United States to reasonably assess Mr. Wessell's claims of privilege. *Cf. Bray & Gillespie Mgmt., LLC v. Lexington Ins. Co.*, No. 6:07-cv-222-Orl-19KRS, 2008 WL 11435667, at *1 (M.D. Fla. Oct. 8, 2008) ("In the long list of documents described in the [privilege log], authors or recipients are rarely identified, no job titles or employment capacities of those named in the documents are revealed, no subject matter or purpose for the documents is shown, and absolutely no basis whatsoever is given for claiming any privilege with respect to any document listed.") (footnote omitted).

    *iv.* *Mr. Wessell should be directed to show cause why the logged documents should not be produced*

Mr. Wessell has completely failed to establish that the logged documents were properly withheld. The Court should therefore direct him to show cause why the documents should not be produced to the United States. To the extent there are documents for which Mr. Wessell cannot meet this burden, the Court should direct him to produce them to the United States.

  C. *The United States has established a* prima facie *case for enforcement*

Because there is evidence that Mr. Wessell has failed to comply with the summons, the only remaining question is whether the United States has established a *prima facie* case for

enforcement under *Powell*. It has. The attached declaration from Agent Cincotta meets all of *Powell*'s requirements.

First, the IRS "is conducting an investigation to determine the identities and correct income tax liabilities of United States persons who used [certain defined] services of the Wessell Group between 2012 and 2017." Exhibit 1 (Cincotta Decl.) ¶ 3. Pursuant to 26 U.S.C. § 7602, this is a proper purpose for an IRS summons. *See Clarke*, 573 U.S. at 251; *La Mura*, 765 F.2d at 980.

Second, the information that Mr. Wessell has failed to produce may be relevant to this investigation. Exhibit 1 (Cincotta Decl.) ¶¶ 12, 39. In the summons context, the "government's burden of showing relevance . . . is slight. If the information sought by an IRS summons might throw light upon the correctness of the taxpayer's return, then it is deemed to be relevant." *La Mura*, 765 F.2d at 981 (internal quotation marks omitted); *see also United States v. Arthur Young & Co.*, 465 U.S. 805, 814 (1984) (noting that the phrase "may be relevant" in 26 U.S.C. § 7602 "reflects Congress' express intention to allow the IRS to obtain items of even potential relevance"). In this case, the documents may be relevant because the IRS cannot determine the correct tax liabilities of Wessell Group customers who remain unknown. Exhibit 1 (Cincotta Decl.) ¶ 39. Relatedly, even if the IRS knows a particular customer's name, not having complete information about that person's associated entities could hamper the investigation. *Id.*

Third, the missing information is not already within the IRS's possession. *Id.* ¶ 40. Although the IRS has received from another source some of the information that is missing from Mr. Wessell's production, the IRS is also entitled to get Mr. Wessell's copies. *See, e.g., Twin Palms Resort, LLC ex rel. Harbour v. United States*, 676 F. Supp. 2d 1350, 1359 (S.D. Fla. 2009); *Sugarloaf Funding, LLC v. U.S. Dept. of Treasury*, 584 F.3d 340, 350 (1st Cir. 2009).

Moreover, the bigger issue is that the gaps indicate that there could be other Wessell Group customers whose identities are still unknown to the IRS, or for whom the IRS has only an incomplete list of associated entities.

Finally, the declaration attests that all the administrative steps required by the Internal Revenue Code for issuance and service of the summons have been followed. Exhibit 1 (Cincotta Decl.) ¶ 41.[6] As a result, the United States has established a *prima facie* case under *Powell*.

## Conclusion

Mr. Wessell has failed to fully comply with the summons issued to him, and the United States has made a *prima facie* showing that enforcement is proper. As a result, the United States requests that the Court order Mr. Wessell to show cause why the summons should not be enforced. A proposed order is enclosed.

---

[6] Section 7602(d)(2) of the Internal Revenue Code restricts enforcement of summonses in cases where there is a "Justice Department referral." The IRS is aware of four Justice Department referrals from the relevant time period and will employ a filter team to ensure compliance with § 7602(d)(2). *See* Exhibit 1 (Cincotta Decl.) ¶¶ 42–43.

Dated: May 24, 2022                    Respectfully Submitted,

                                                                       David A. Hubbert
Deputy Assistant Attorney General

**Jeremy A. Rill**
Jeremy A. Rill
Special Bar No. A5502675
Fla. Bar No. 124485
**Amy Matchison**
Amy Matchison
Special Bar No. A5502904
Cal. Bar No. 217022
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 14198
Washington, D.C. 20044
202-307-0513 (Rill)
202-307-6422 (Matchison)
Fax: 202-514-4963
Jeremy.A.Rill@usdoj.gov
Amy.T.Matchison@usdoj.gov

Of Counsel:

Juan A. Gonzalez
United States Attorney
Southern District of Florida