IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Petitioner, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| KEVIN W. WESSELL, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

SUPPLEMENTAL DECLARATION OF KAREN CINCOTTA

I, Karen Cincotta, pursuant to 28 U.S.C. § 1746, declare and state:

1.     I am a duly commissioned Internal Revenue Agent assigned as a Supervisory Revenue Agent in the Offshore Compliance Initiatives Program of the Internal Revenue Service. The Offshore Compliance Initiatives Program develops projects, methodologies, and techniques for identifying United States persons who are involved in abusive offshore transactions and financial arrangements for tax avoidance purposes. I started as a Revenue Agent in 2005, have specialized in offshore investigations since 2009, and have been a Supervisory Revenue Agent since 2019. I have been with the Offshore Compliance Initiatives Program since September 2013.

2.     As a Revenue Agent and Supervisory Revenue Agent, I have received training in tax law and audit techniques and have received specialized training in abusive offshore tax issues. I also have experience investigating offshore tax matters.

3.     The IRS is conducting an investigation to determine the identities and correct income tax liabilities of United States persons who used the services of the Wessell Group

between 2012 and 2017 to establish, maintain, operate, or control: any foreign financial account or other asset; any foreign corporation, company, trust, foundation, or other legal entity; or any foreign or domestic financial account or other asset in the name of a foreign entity.

4.      The Wessell Group is comprised of entities and websites that are operated by, that appear to be controlled by, and that are (or in the past have been) at least partially owned by Kevin W. Wessell ("Mr. Wessell"). The IRS believes that the Wessell Group is providing offshore services to U.S. persons to hide their beneficial ownership of assets.

5.      The Wessell Group includes the following entities: Eagle Estate, LLC; Lincoln International Services, Inc; Lincoln Management Group, LLLP; Eagle Rock Mountain, LP; LAP Trust; Incway Corporation Which Will Do Business In California As Companies Incorporated; Companies Inc.; Worldwide Education Services; 1-800-Company; 1-800-Company, LLLP; Presidential Services Incorporated; PSI Holdings, Inc.; National Management Associates, Inc., doing business in California as General Corporate Services, Inc.; Offshore Corporation; OffshoreCorporation.com, which is a website; Offshore Company, Inc., which is a website; CanadianCorp.com, which is a website; and Corporacion.com, which is a website.

6.      In connection with the IRS's investigation, the United States filed sealed *ex parte* petitions, pursuant to 26 U.S.C. § 7609(f), in three jurisdictions seeking leave to serve "John Doe" summonses. The petition filed in this Court sought permission to serve a summons on, *inter alia*, Mr. Wessell.

7.      On September 13, 2018, Judge William P. Dimitrouleas signed a sealed order granting the United States' petition. *See* Exhibit A. That order and the remaining case documents were subsequently unsealed on September 28, 2018. *See* Exhibit B.

8.      In connection with the United States' petition, I executed a declaration, which is attached as Exhibit C. That declaration sets out in detail the activities of the Wessell Group, including the use of offshore trusts and nominee directors, and the reasons why there is a reasonable basis to believe that the Wessell Group's customers may fail or may have failed to comply with one or more internal revenue laws.

9.      In accordance with 26 U.S.C. § 7609(f) and Judge Dimitrouleas's order, the IRS issued a summons to Mr. Wessell directing him to appear on October 26, 2018 at 10:00 a.m. before me or my designee at the Internal Revenue Service Office at 7850 SW 6th Court in Plantation, FL, to provide testimony and to produce for examination books, records, papers, and other data. A copy of the summons is attached as Exhibit D.

10.      In accordance with 26 U.S.C. § 7603(a), an IRS revenue agent personally served Mr. Wessell with the summons on September 26, 2018. *See* Exhibit E.

11.      The summons seeks records that may identify the names and transactional activities of the John Doe class comprised of U.S. persons who used the Wessell Group's services between 2012 and 2017 to establish, maintain, operate, or control: any foreign financial account or other asset; any foreign corporation, company, trust, foundation, or other legal entity; or any foreign or domestic financial account or other asset in the name of a foreign entity.

12.       This information, including what has yet to be produced, may be relevant to the underlying IRS investigation to determine the identities and correct income tax liabilities of such persons.

13.      On February 22, 2019, Mr. Wessell provided the IRS with a spreadsheet listing 1,470 customers, the names of their affiliated entities, and the jurisdictions where the entities are

or were located.

14.     On May 6, 2019, the IRS received from Mr. Wessell a production described as a "USB drive containing 2,849 documents relating to the first 25 Wessell Group customers." This production included over 600 documents relating to over 170 entities not included on Mr. Wessell's list from February 22, 2019. The IRS manually reviewed each document and tagged the document to its related entity.

15.     On November 25, 2019, the IRS received Mr. Wessell's production of a single Excel spreadsheet containing 1,470 customer names, together with their affiliated entities' names and the jurisdictions in which the entities are or were located. The list was identical to the list of customers Mr. Wessell provided on February 22, 2019, except that it also included additional data for each customer. The IRS noted that Mr. Wessell's spreadsheet contained duplicate entries and incorrect spellings, and the individual names listed were not necessarily the owners, directors, shareholders, or managers of the associated companies. Because the Excel spreadsheet Mr. Wessell provided listed one or more companies per row, the IRS added additional rows as needed so that there would be only one entity/company per row.

16.     Mr. Wessell's spreadsheet did not include certain customers the IRS learned about from another party that produced records regarding the Wessell Group pursuant to a related John Doe summons. This is so even though these customers are U.S. taxpayers who fit the criteria for inclusion in the John Doe class. Three examples are Pedro Benevides, who is the beneficial owner of European Investments Group, LLC; Molly R. Chen, who is the beneficial owner of Jemic Company, LLC; and Liora Wall, who is the beneficial owner of Jewish Genealogy Services Ltd. This list is not intended to be exhaustive.

17.   The IRS added the information obtained from the other summoned party, along with the 170-plus entity names from ¶ 14, *supra*, to Mr. Wessell's spreadsheet to create a master list of all identified Wessell Group customers and entities (the "Master List"). The purpose of the Master List is to capture all taxpayers, entities, and related information identified by the IRS when reviewing the summoned records production. Information was entered into the Master List as summoned information was received and analyzed, and organized into categories, which included individuals' names, individuals' Social Security numbers, and entities' names.

18.   On March 4, 2020, the IRS received Mr. Wessell's production of 642,051 documents. These documents were on a USB drive in several electronic formats. Upon receipt, the IRS loaded Mr. Wessell's entire production into a Relativity database. The 2,849 documents Mr. Wessell produced on May 6, 2019 were also loaded into Relativity. The IRS searched the Wessell Group data in Relativity by using information collected in the Master List.

19.   The IRS assigned a three-member team of Senior Revenue Agents to review the March 20, 2020, production in Relativity, together with the support of an IRS Relativity Technical Advisor (collectively, "The IRS Team"). The IRS Team analyzed the records productions, including the unstructured documents which do not have a pre-defined data model, such as pdf documents. The IRS Team then extracted from the documents and emails the names of individuals and entities. Each of these types of documents were produced in different formats. One method the IRS used was Search Term Reports ("STRs") to tag the documents to their related entities using search terms identified from the names of entities and individuals, and from email addresses. All information extracted from the documents Mr. Wessell produced was included in the Master List.

- 5 -

20.     The IRS used the following Relativity tools and functions to search the documents Mr. Wessell produced:

       a.   Document tagging: allows the user to mark sections of text within a transcript that you can then be referenced through hyperlinks. IRS reviewed and tagged each document based on the fields or options created by the IRS Relativity Technical Advisor. For example, a list of entity names for IRS to tag, an option for IRS to request a second level IRS reviewer, and/or to add a reviewer note if needed.

       b.   dtSearch indexing: A search index option that allows a user to perform proximity searches (finding documents with keywords or phrases occurring within a certain proximity of each other), stemming (which returns documents containing grammatical variations of a root word), and or advanced keyword searching options (to query a full text index).

       c.   STRs: STRs provided the ability to identify documents containing specific key words. The IRS Relativity Technical Advisor could enter multiple terms and generate a report listing the number of hits for each search term in a document.

       d.   Saved Searches: A saved search is a saved set of defined criteria with custom queries and unique views used to return the latest documents that meet the defined criteria.

21.     The IRS Team's search terms used for the Master List included, but was not limited to, the following:

       a.   Bank;

       b.   Corp;

       c.   LDC or "Limited Duration Company";

       d.   LDC;

    e.  Limited Duration Company;

    f.  Limited;

    g.  LLC;

    h.  LLP;

    i.  LP;

    j.  LTD; and

    k.  Trust.

22.    Using the Relativity tools described in paragraph 20, *supra*, the IRS Team used the Master List to extract a list of entity names and loaded these entity names into Relativity to manually tag/link documents to the related entity name. Together, the IRS Team tagged the production of the 2,849 documents to the related entities and identified nonresponsive, blank, or unreadable documents. The IRS Team reviewed the documents on the list and tagged the correct entity names or individual names based on the Master List, or determined if there were Relativity technical issues with Optical Character Recognition (OCR) for unreadable documents due to a poorly scanned image. After tagging the documents, there were approximately 177 new entity names identified and added to the Master List and to Relativity.

23.    The IRS Team applied the following steps to each of the saved searches when reviewing the March 4, 4020 production of 642,051 documents:

    a.  Downloaded all documents in the saved search to an Excel workbook;

    b.  Grouped the documents by file types;

    c.  Created a worksheet for PDF documents;

    d.  Eliminated the duplicates based on the MD5Hash number;

 e. Identified key word(s) to search for documents that had potential for review;

 f. Reviewed and extracted important data for risk assessment;

 g. Identified the documents that had no potential for review using key words file names/paths.

24. Before reviewing the 116,538 PDF documents identified from the saved searches, the IRS Team first eliminated duplicate documents using the MD5Hash number.[1] The IRS Team identified 59,410 duplicates, and 28 PDF's with no MD5Hash, meaning they could not be rendered, leaving 57,100 PDFs for review. The IRS Team first reviewed the PDF documents to extract the information related to foreign banks, foreign trusts, and foreign entities.

25. Then, the IRS Team reviewed the other types of documents using family documents (for related documents), search terms, or file names/paths, etc. if needed.

26. The data was then exported into Excel to show a list of entity names and total documents tagged. The IRS Team reviewed the Excel report and selected the entities/individuals which needed a more in-depth review for potential non-compliance.

27. Of the May 6, 2019 production of 2,849 documents, the IRS Team noted the following:

 a. 162 were blank or unreadable;

 b. 142 were emails that contained only individuals' names, but not entity names;

 c. 81 were internal Wessell Group forms or instruction documents, with no

---

1 MD5 Hash is an industry standard and accepted methodology for de-duping. How Relativity processing calculates the MD5 hash causes duplicate emails across psts to be assigned different MD5 hashes.

individual or entity information;

      d.  613 contained entity names not on the February 22, 2019, spreadsheet provided by Mr. Wessell; and

      e.  the remaining 1,851 contained documents with entities or individuals on the February 22, 2019 spreadsheet provided by Mr. Wessell.

    28.    As of August 12, 2021, the IRS Team had run 5,483 search terms of the names of individuals and entities on the Master List. Of the 5,483 searches, 841 resulted in zero documents identified and, thus, could not be tagged to entity formation or bank account documents. For individuals (as distinct from entities), the IRS searched the data by each individual's last name. If the last name was a common last name or a common word, the search was for all instances in which the last name appeared within three words of the first name. Of the individuals' names searched, 109 resulted in zero documents identified. *See* exhibit F (list of 109 names of individuals).

    29.    The remaining 732 searches that did not return any hits were for entity names. When an entity appeared to have multiple name variations, the IRS ran searches of all known variations. As a result, the number of unique entities for which there were no responsive documents is lower than 732. *See* Exhibit G (list of 732 entity names).

    30.    The 109 individuals and 732 entities for which there were no results meet the criteria for inclusion in the John Doe class. In particular, the individuals are U.S. persons who used the Wessell Group's services between 2012 and 2017 to establish, maintain, operate, or control: any foreign financial account or other asset; any foreign corporation, company, trust, foundation, or other legal entity; or any foreign or domestic financial account or other asset in

the name of a foreign entity. The entities are associated with U.S. persons who are part of the John Doe class.

31.     Also, as of August 12, 2021, the IRS Team has searched Relativity using a total of over 35,000 search terms, including the search terms used for Mr. Wessell's May 6, 2019 production of the 2,849 documents, to tag/identify approximately more than 546,000 documents to Wessell clients, out of the 642,051 documents produced by Mr. Wessell. Of the 642,051 documents produced, the IRS determined that 95,494 of the documents were nonresponsive to the summons, meaning that the document did not show up in the STRs, and/or were blank and/or unreadable. Based on the analysis the IRS Team performed on the untagged documents, the IRS Team determined that, of the remaining documents, less than 1% related to additional potential Wessell clients.

32.     Some of the search terms that yielded no results came from names identified by the other summons recipient who produced records, but the majority of them were derived from Mr. Wessell's own customer list.

33.     Among the names and entities for which there were no results are the ones identified in ¶ 16, *supra*.

34.     Because the Wessell Group sold pre-packaged bundles to its customers, the IRS expected to see in Mr. Wessell's document production the same categories of documents for each customer who purchased the same offshore package from the Wessell Group. However, for reasons that remain unexplained, that has not been the case.

35.     One example of this is records related to LDCs. In my initial declaration, I explained how the Wessell Group set up International Business Companies ("IBCs"). Exhibit C

¶¶ 64–68. I concluded that the use of such IBCs is consistent with an effort to "avoid . . . United States tax obligations" and to "conceal . . . beneficial ownership of the offshore entity." *Id.* ¶ 67.

36.     LDCs are similar to IBCs. The use of offshore LDCs has the hallmarks of tax noncompliance for the same reasons identified in my initial declaration with respect to IBCs.

37.     The IRS reviewed the documents that Mr. Wessell produced related to 41 LDCs. Although a document produced by Mr. Wessell states that operating agreements and articles of organization are required documents for LDCs, there were 24 LDCs for which the IRS could not locate an operating agreement and 15 for which the IRS could not locate articles of organization. *See* Exhibit H at 3 (document explaining recordkeeping requirements); Exhibit I (list of entities with missing documents).

38.     In sum, Mr. Wessell appears to have failed to fully comply with the summons. This failure continues to this date.

39.     The documents that appear to be missing are relevant because the IRS cannot determine the correct tax liabilities of Wessell Group customers who remain unknown. Relatedly, even if the IRS knows a particular customer's name, not having complete information about that person's associated entities could hamper the investigation. The missing documents would identify the customers and contain information about their offshore transactions, which would allow the IRS to undertake appropriate examinations to determine whether these customers accurately reported their tax liabilities.

40.     The IRS is not seeking the reproduction of documents Mr. Wessell has already produced. The other documents sought by the summons are not already in the possession of the IRS.

41.     All administrative steps required by the Internal Revenue Code for issuance and service of the summons have been followed.

42.     As of the date the summons to Mr. Wessell was issued, the identities of the John Does were unknown. Accordingly, the IRS could not know at the time the summons was issued whether there was any "Justice Department referral," as that term is described in Section 7602(d)(2) of the Internal Revenue Code, in effect for the years between 2012 and 2017 related to the John Does. Additionally, because the IRS still does not know the identities of John Does who Mr. Wessell has not yet identified, the IRS does not know whether there is any Justice Department referral currently in effect with respect to the years 2012 through 2017 for those John Does.

43.     As a result of the partial production Mr. Wessell has made, the IRS was able to identify more than 24,000 names that could be part of the John Doe class. The IRS searched these names to determine whether any of them are subject to a Justice Department referral related to the years 2012 through 2017. The IRS identified four individuals who are subject to Justice Department referrals related to the relevant timeframe. The IRS is not seeking the production of additional documents related to these individuals. However, all of the information related to these referrals is the return information of those taxpayers and, as such, is protected from disclosure pursuant to 26 U.S.C. § 6103. As a result, the IRS cannot identify these individuals to Mr. Wessell so that he can cull their non-responsive records from the production we seek. To ensure strict compliance with § 7602(d)(2), the IRS is will utilize a filter team to review all documents that are newly produced by Mr. Wessell in response to this petition to enforce. The filter team can determine whether any of the newly produced documents relate to

any of the four individuals who are subject to Justice Department referrals for the relevant years. To the extent that any of the newly produced documents relate to any of these four individuals, the filter team will destroy the documents related to these individuals. For all newly produced documents pertaining to taxpayers who are not the subject of a Justice Department referral for the relevant years, the filter team will provide the documents to the IRS team assigned to the Wessell Group matter.

      Executed this   23   day of May, 2022.

KAREN CINCOTTA
Supervisory Internal Revenue Agent
Internal Revenue Service

- 13 -

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18- 62135-CIV-DIMITROULEAS

IN THE MATTER OF THE TAX
LIABILITIES OF:

JOHN DOES, United States taxpayers who,
at any time during the years ended
December 31, 2012, through December 31,
2017, used the services of the Wessell
Group or its predecessors, subsidiaries,
divisions, affiliates, or website domains
(collectively, the "Wessell Group") to establish,
maintain, operate, or control: any foreign
financial account or other asset; any
foreign corporation, company, trust,
foundation, or other legal entity; or any
foreign or domestic financial account or
other asset in the name of a foreign entity.

_____/

**SEALED ORDER GRANTING *EX PARTE* PETITION
FOR LEAVE TO SERVE "JOHN DOE" SUMMONSES**

THIS MATTER is before the Court upon the United States of America's *Ex Parte*

Petition for Leave to Serve "John Doe" Summonses (the "Petition"). Based upon a review of the

Petition and supporting documents, the Court has determined that the "John Doe" summonses to

Kevin W. Wessell; Lesli A. Wessell (aka Leslie A. Wessell); Sophia R. Wessell; Bank of

America, NA; and Wells Fargo, NA relate to the investigation of an ascertainable group or class

of persons, that there is a reasonable basis for believing that such group or class of persons may

fail or may have failed to comply with the internal revenue laws, and that the information sought

to be obtained from the summonses is not readily available from other sources. It is therefore:

**ORDERED AND ADJUDGED** that the Internal Revenue Service, through Senior

Revenue Agent Karen Cincotta or any other authorized officer or agent, may serve Internal

1

Revenue Service "John Doe" summonses upon Kevin W. Wessell; Lesli A. Wessell (aka Leslie A. Wessell); Sophia R. Wessell; Bank of America, NA; and Wells Fargo, NA in substantially the form as attached as Exhibits A–E to the Declaration of Karen Cincotta. A copy of this Order shall be served together with the summonses.

The Clerk shall close this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 13th day of September, 2018.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies to:
Counsel of record

2

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| IN THE MATTER OF THE TAX LIABILITIES OF:<br><br>JOHN DOES, United States taxpayers who, at any time during the years ended December 31, 2012, through December 31, 2017, used the services of the Wessell Group or its predecessors, subsidiaries, divisions, affiliates, or website domains (collectively, the "Wessell Group") to establish, maintain, operate, or control: any foreign financial account or other asset; any foreign corporation, company, trust, foundation, or other legal entity; or any foreign or domestic financial account or other asset in the name of a foreign entity. | Case No. 18-62135CV |

## [~~PROPOSED~~] ORDER GRANTING MOTION TO UNSEAL

THIS MATTER is before the Court upon the United States of America's motion to unseal the docket. Based on the United States' motion, the Court finds that the docket in this should be unsealed. It is therefore ORDERED AND ADJUDGED that the United States' motion is GRANTED and the Clerk is directed to unseal the docket.

IT IS SO ORDERED this ___ day of _____, 2018.

United States District Judge

Exhibit C

THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

IN THE MATTER OF THE TAX                        )
LIABILITIES OF:                                 )
                                                )
JOHN DOES, United States taxpayers who,         )        Case No.
at any time during the years ended              )
December 31, 2012, through December 31,          )
2017, used the services of the Wessell          )
Group or its predecessors, subsidiaries,        )
divisions, affiliates, or website domains       )
(collectively, the "Wessell Group") to          )
establish, maintain, operate, or control:       )
any foreign financial account or other asset;   )
any foreign corporation, company, trust,        )
foundation, or other legal entity; or any       )
foreign or domestic financial account or        )
other asset in the name of a foreign entity.    )

DECLARATION OF KAREN CINCOTTA

I, Karen Cincotta, pursuant to 28 U.S.C. § 1746, declare and state:

**I.      Introduction**

1.      I am a duly commissioned Internal Revenue Agent ("Revenue Agent") assigned

as a Senior Revenue Agent in the Offshore Compliance Initiatives Program of the Internal

Revenue Service ("IRS" or "Service"). The Offshore Compliance Initiatives Program develops

projects, methodologies, and techniques for identifying United States persons who are involved

in abusive offshore transactions and financial arrangements for tax avoidance purposes. I have

been a Revenue Agent since 2005 and have specialized in offshore investigations since 2009. I

have been with the Offshore Compliance Initiatives Program since September 2013.

2.     As a Revenue Agent, I have received training in tax law and audit techniques and have received specialized training in abusive offshore tax issues. I also have experience investigating offshore tax matters.

## II.     Internal Revenue Laws Require United States Persons to Report Income Earned Worldwide, to Disclose All Foreign Financial Accounts, and to File Reports of Certain Foreign Financial Accounts.

3.     United States persons with gross income exceeding certain thresholds must file annual income tax returns reporting to the Service their income from all sources worldwide. U.S. taxpayers who fail to report all income on their income tax returns, including income earned in accounts held overseas, have failed to comply with the internal revenue laws.

4.     United States taxpayers who have a financial interest in, or signature authority over, any foreign financial account must disclose the existence of that account on their federal income tax returns. For individuals, this is done by checking the "Yes" box in response to a question at the bottom of Schedule B, *Interest and Ordinary Dividends*, which is attached to the U.S. Individual Income Tax Return, Form 1040 (or Form 1040A).

5.     United States taxpayers who have a financial interest in, or signature authority over, any financial account in a foreign country that has an aggregate value of more than $10,000 at any time during a calendar year are required to file with the Department of the Treasury, for that calendar year, a Report of Foreign Bank and Financial Accounts on FinCEN Form 114 ("FBAR").[1] The FBAR for a calendar year is due by April 15 of the next year.[2] It is the experience of the Service that persons who have failed to file FBARs with respect to foreign

---

[1] For taxable years prior to calendar year 2013, FBARs were reported on Form TD F 90-22.1.

[2] For taxable years prior to calendar year 2016, FBARs were due June 30 of the next year.

- 2 -

financial accounts typically also have failed to disclose those accounts on Schedule B of their income tax returns.

### III.  Use of Offshore Structures

6.    The Service has long been concerned with the problem of United States persons evading their United States tax obligations by concealing unreported taxable income in accounts in offshore low or no tax jurisdictions, or in financial secrecy jurisdictions. A number of reports describe this problem in detail. *See, e.g.*, *Crime and Secrecy: The Use of Offshore Banks and Companies: Hearing Before the* S. *Permanent Subcomm. on Investigations of the S. Comm. on Homeland Security and Governmental Affairs*, 98th Cong. (1983), *available at* https://www.ncjrs.gov/pdffiles1/Photocopy/91139NCJRS.pdf; United Nations Office for Drug Control and Crime Prevention, *Financial Havens, Banking Secrecy and Money Laundering* (1998), *available at* http://www.imolin.org/imolin/finhaeng.html; *Tax Haven Banks and U.S. Tax Compliance: Hearing Before the* S. *Permanent Subcomm. on Investigations of the S. Comm. on Homeland Security and Governmental Affairs*, 110th Cong. (2008), *available at* http://purl.access.gpo.gov/GPO/LPS109146.

7.    Indeed, offshore tax abuses cost the United States approximately $150 billion in tax revenue each year. Staff of S. Permanent Subcomm. on Investigations of the S. Comm. on Homeland Security and Governmental Affairs, 113th Cong., *Offshore Tax Evasion: The Effort to Collect Unpaid Taxes on Billions in Hidden Offshore Accounts* 19 (2014), *available at* https://www.hsgac.senate.gov/download/report-offshore-tax-evasion-the-effort-to-collect-unpaid-taxes-on-billions-in-hidden-offshore-accounts-5-14-14-update.

8.    Many of these losses stem from U.S. taxpayers' use of tax haven countries, which "hold trillions of dollars in assets provided by citizens of other countries, including the United

- 3 -

States." Staff of S. Permanent Subcomm. on Investigations of the S. Comm. on Homeland Security and Governmental Affairs, 110th Cong., *Tax Haven Banks and U.S. Tax Compliance* 1 (2008), *available at* https://www.hsgac.senate.gov/download/report-psi-staff-report-tax-haven-banks-and-us-tax-compliance-july-17-2008.

9.     To attract foreign assets, these tax havens "have enacted laws enabling nonresidents to form at minimal cost companies, trusts, foundations, and other legal entities to hold their assets in financial accounts protected by secrecy laws and practices enforced with criminal and civil penalties." *Id.* at 32.

10.     Since 2000, the Service has conducted thousands of examinations in cases developed through John Doe summonses issued as part of its Offshore Compliance Initiatives Program. Experience in those examinations has shown that:

a.     Offshore tax evasion by U.S. persons almost always involves a foreign financial account.

b.     Offshore tax evasion by U.S. persons often involves an offshore entity (*e.g.*, a corporation, trust, or foundation) or structure of entities. Nominee directors and/or trustees are typically used for these entities to conceal the true U.S. owner's beneficial ownership of offshore, and sometimes domestic, accounts and assets.

11.     It is also the experience of the Service that U.S. taxpayers forming or acquiring offshore entities or structures, or opening offshore bank accounts, often use the services of offshore trust and corporate service providers who advertise that they do the following:

i.   open bank accounts;

ii.   create corporations, trusts, and foundations; and

- 4 -

          iii.   serve as nominee directors, officers, and trustees for beneficial owners.

12.     Indeed, a "sophisticated offshore industry, composed of a cadre of international professionals including tax attorneys, accountants, bankers, brokers, corporate service providers, and trust administrators, aggressively promotes offshore jurisdictions to U.S. citizens as a means to avoid taxes and creditors in their home jurisdictions." Staff of S. Permanent Subcomm. on Investigations of the S. Comm. on Homeland Security and Governmental Affairs, 109th Cong., *Tax Haven Abuses: The Enablers, the Tools and Secrecy* 1 (2006), *available at* https://www.hsgac.senate.gov/subcommittees/investigations/hearings/tax-haven-abuses-the-enablers-the-tools-and-secrecy.

13.     In addition to its examination experience, the Service has received in excess of 55,000 voluntary disclosures from persons with offshore accounts and entities in a series of Offshore Voluntary Disclosure Programs announced as opportunities for persons to self-disclose tax noncompliance involving offshore accounts and arrangements in exchange for limits on their exposure to criminal and civil penalties. Taxpayers making offshore voluntary disclosures reported the use of undisclosed bank accounts in over 600 banks or branches of banks in jurisdictions around the world. Many of these offshore accounts were held through shell companies and trusts, or other practices were employed to conceal beneficial ownership information. Many used the services of offshore trust and corporate service providers.

## IV.   The Wessell Group

14.     The "Wessell Group" is comprised of entities and websites that are operated by, that appear to be controlled by, and that are (or in the past have been) at least partially owned by Kevin W. Wessell ("Wessell"). The Service believes that the Wessell Group is providing

- 5 -

offshore services to U.S. persons to hide their beneficial ownership of assets. Attached hereto as Exhibit 1 is a chronological series of organizational charts of the Wessell Group and website domains, showing the year-to-year progression of changes to the structure, based upon information available to the Service.

15.     The Wessell Group includes the following entities: Eagle Estate, LLC; Lincoln International Services, Inc; Lincoln Management Group, LLLP; Eagle Rock Mountain, LP; LAP Trust; Incway Corporation Which Will Do Business In California As Companies Incorporated; Companies Inc.; Worldwide Education Services; 1-800-Company; 1-800-Company, LLLP; Presidential Services Incorporated; PSI Holdings, Inc.; National Management Associates, Inc., doing business in California as General Corporate Services, Inc.; Offshore Corporation; OffshoreCorporation.com, which is a website; Offshore Company, Inc., which is a website; CanadianCorp.com, which is a website; and Corporacion.com, which is a website.

16.     As demonstrated by Exhibit 1, there have been frequent changes in the names of the companies in the Wessell Group, as well as in the Wessell Group's overall structure. However, the Wessell Group's purpose—providing services directed at concealing its clients' beneficial ownership of offshore assets—has remained constant. And through information available to the Service, I know that when an entity in the Wessell Group purportedly ceases operations, clients generally migrate to another Wessell Group entity, where they can receive the same or similar services. A change in name does not mean a change in service.

17.     Though Wessell has always controlled the Wessell Group, he has used his family members—his wife Lesli A. Wessell, a.k.a. Leslie A. Wessell ("Lesli"), and his children, Sophia and Adam—as nominees. Take, for instance, LAP Irrevocable Trust, which is a Cook Islands irrevocable trust. Wessell was the beneficiary of the trust until February 3, 2013, when he was

- 6 -

removed due to judgments against him and associated allegations of fraud. **Exhibit 2 ¶ 57–58;**

**Exhibit 3 at 216:18-217:12.** Lesli then became the primary beneficiary of the trust, with Sophia

and Adam as secondary beneficiaries. **Exhibit 2 ¶ 57.** As another example, based on

information available to the Service, I learned that Sophia and Adam obtained a 98 percent stake

in Eagle Estate LLC in 2006, when they were fourteen and twelve years old, respectively.

18.     The nominee structure used by Wessell for his own businesses is consistent with

the services the Wessell Group has provided to customers seeking to mask their interests in

offshore assets.

## V.     The Wessell Group's Activities

19.     As discussed above, the Service's experience has been that hallmarks of offshore

tax evasion include foreign financial accounts, offshore entities, nominees, and the use of

offshore trust and corporate service providers. The Wessell Group's activities meet all these

criteria.

### A.  Wessell's Writings

20.     The Wessell Group's guiding philosophy is set out in various writings.

21.     For instance, in an article posted online in 2005, Wessell stated:

The secret to asset protection consist [sic] of these two points:

1. Own nothing.
2. Control everything.

What I mean by own nothing is to not own anything in your own name. Instead,
own assets inside legal tools that can protect your assets and your privacy. These
legal tools allow you to have control of your resources without having them titled
in your name.

**Exhibit 4.**

22.     Wessell has also written a book, which is reproduced as **Exhibit 5**. In chapter 7,

he touts establishing trusts in the Isle of Man, the Cook Islands, and Nevis. Wessell recommends

that assets be transferred to a U.S. limited partnership in which a foreign trust holds a 99 percent

limited partnership interest. The U.S. resident, in turn, gets a 1 percent general partnership

interest in the U.S. limited partnership. According to Wessell's book, "the general partner has

legal control over the entire limited partnership[,] and assets inside" the partnership are protected

from seizure by judgment creditors. *Id.* at 44.[3] "Therefore, the U.S. resident controls 100% of

the assets, yet 'owns' only 1% of them." *Id.* (emphasis omitted). Wessell also explains that in

the three jurisdictions listed above, "you can legally require the [foreign] trustee to take your

direction regarding trust investments. Therefore, you essentially remain in control of the trust

and keep its asset protection provisions." *Id.* at 42. These structures and arrangements are all

directed at concealing the clients' actual beneficial ownership and control of their assets.

23.     In chapter 8, Wessell touts the use of nominees, stating:

> You can even have nominees stand in the place of the
> stockholders. The nominees can even serve as the officers or
> directors and the actual owner can maintain control by way of
> proxy votes. This is a very effective manner of operating if you
> want your association with an offshore bank kept private.

*Id.* at 45.

24.     Chapter 9 of Wessell's book describes how using a combination of corporations,

limited liability companies, trusts, foreign trusts, and foreign corporations can allegedly provide

a client with superior financial protection. *Id.* at 47. To urge clients to take action, the book

alleges that IRS seizures are at an all-time high. *Id.* at 52.

---

[3] Citations refer to the page numbers in the bottom right of the exhibit.

- 8 -

### B. The Wessell Group's Services

25.     The Wessell Group's services allow customers to put Wessell's philosophy into practice.

26.     In advertising its services, the Wessell Group makes clear that the purpose is to conceal beneficial ownership.

27.     These services fall into several different categories, and all of them bear the hallmarks of offshore tax evasion.

#### i. Use of tax haven countries

28.     One of the Wessell Group's core services is to facilitate the concealment of customers' money in tax haven countries.

29.     The Wessell Group advertises to its customers that the "most favorable . . . offshore tax havens are Nevis, Belize, St. Vincent, Panama, and [The] Bahamas." **Exhibit 6**.

30.     For instance, one service offered by the Wessell Group is pairing an offshore company in a place like Nevis with an offshore bank located in a different country. The Wessell Group explains that this allows customers to have "an extremely high level of anonymity because online banking offshore transfers will be in your offshore company['s] name rather than your personal name." **Exhibit 7**.

31.     The Wessell Group also promotes its use of Panamanian companies. For instance, it advertises that "Panama offers some of the most strict banking and financial secrecy laws available in the world." **Exhibit 8**. It also states that "Panama remains the most secure offshore financial center" and claims that Panama does not have any Mutual Legal Assistance

- 9 -

Treaties (MLATs) with any other country. *Id.*[4] In light of this, the Wessell Group offers to set up a "Panama Private Interest Foundation" as an option to control foreign corporations while skirting the controlled foreign corporation rules in the United States. The Wessell Group states that "[t]he objective is to remove ownership from [the client's] personal name, to the name of a foreign entity whose ownership is anonymous." *Id.*

   *ii. Nominee services*

  32. Another common Wessell Group service is the provision of nominee officers or directors who will mask a U.S. person's involvement in an offshore entity.

  33. For example, Wessell Group customers can purchase a "nominee privacy service" as a means for the individual to "maintain 100% control through voting rights while, at the same time, keeping [the client's] name off of the officers/directors/managers list of offshore companies. When asked in court if or in a deposition if you are a director or manager of the company you can truthfully state that you are not." **Exhibit 9.**

  34. The Wessell Group also supplies nominees through its "Samoa Complete Management Package," which includes a variety of services to assist clients in the maintenance and operation of their offshore structures. Some of these services include a Samoan mailing address with mail forwarding to the client, a Samoan telephone number answered by a live receptionist, nominee directors and officers, and a power of attorney giving the client 100 percent control. **Exhibit 10.**

---

[4] This is not accurate. The United States has had an MLAT with Panama since 1995. *See* http://www.passportsusa.com/law/info/judicial/judicial_690.html.

- 10 -

35.    Sometimes the Wessell Group will combine nominee officers and directors with

bearer shares.[5] The Wessell Group advertises this arrangement as follows for the British Virgin

Islands:

> Maximum, [sic] confidentiality and anonymity are provided by
> BVI bearer shares being available by the absence of any
> requirements to file any organizational or accountancy information
> with the Registrar of Companies, [sic] (other than the
> memorandum of Articles of Association), and by share registers
> being available for inspection only by company registered
> shareholders or by order of the BVI court.

**Exhibit 11.**

### iii.  Foreign trusts

36.    Another device offered by the Wessell Group to clients is the formation of trusts.

37.    The Wessell Group touts its ability to form Cook Islands trusts.  Specifically, the

Wessell Group states:

> A Cook Islands Trust is the strongest form of asset protection
> worldwide.  The Cook Islands are located South of Hawaii.  It has
> the strongest asset protection case law history in the world.  It is
> not just a theory but each time it has been tested it has protected
> the client's assets . . . even in two cases where the strongest legal
> body   in   the   world—the   US   government—was   the
> plaintiff.  (Note: We will not intentionally set up asset protection
> from the US government, so we're simply stating a fact.) . . .
>
> Before the "bad thing" happens, the client (who is the beneficiary
> of the trust) is in the driver's seat.  So [the] client can control day-
> to-day activities, we establish a limited liability company that is
> 100% owned by the trust.  The client is the Manager of the Nevis
> LLC who controls the LLC['s] assets and is the signatory on all
> accounts.

---

[5] Bearer shares are unregistered shares owned by whoever has physical possession of them.  A
bearer share corporation is owned by the person or entity that holds, or "bears," the unregistered
shares.

When the "bad thing" happens, the trustee steps in as manager of the LLC. Now, the trustee is licensed and bonded. By licensed we mean they went thorough [sic] intensive background checks to get a license. By bonded we mean that the funds are insured. Plus we use a 30-year[-]old trust company.

For client safety and peace of mind, the only time the trustee steps in is when the courts would take the money. So, the question is this: ["]What would you rather have, a 100% chance of the money being taken by the courts? Or would you rather have a licensed, bonded trustee, who has never taken a client's money, do what you have paid them to do—protect your money?"

When the "bad thing" goes away the string of control—the management of the Nevis LLC—goes back to you and you are back in the driver's seat with all of your money in-tact.

In the mean time [sic], during legal duress, if you have bills, the trustee can pay them for you. You can have the trustee pay a trusted friend or relative who provides money for you, etc. So, you still have access to your money, but the courts do not.

**Exhibit 12.**

38.     The Wessell Group even promotes trusts as a means of avoiding contempt of

court citations:

Occasionally clients ask if they can be held in contempt of court [if] they do no [sic] bring back the funds that have been placed offshore. If the trust is drafted properly the law protects those who have placed funds therein. The protection from creditors arises from the Duress Clause. If the Trustee determines that your request for funds arises from court-ordered duress, the Trustee is duty-bound, under the terms of the trust, to step in and protect your assets. Let's say a judge orders you to bring back the funds. You write a letter to the Trustee letting [him] know that the court has ordered you to repatriate the funds and make them available to your judgment creditor. The Trustee responds that he senses that your letter was written under duress and that [he] will not release the money.

So, you go back to the judge on your appointed day and let him know what transpired. The judge puffs up and states his intent to detain you. You reply, "Hold on a minute your Honor. In order to

- 12 -

hold me in contempt there are three prima facie essentials. First, there must be a lawful order. Certainly there was one. Second, it must be known to the contemptor. Certainly it was, as I was standing right here when you made it. Finally, it must have been willfully violated. I did not violate your order. I demanded that the trustees return the funds. But [he] did not. So, I did not willfully violate your order, it is simply impossible for me to comply." The same steps are used If [sic] the judge attempts to make you revoke the trust. Thus, domestic law protects you and Cook Islands law protects your money.

**Exhibit 13**.

### iv. Merchant accounts

39.     The Wessell Group also advertises offshore banking solutions to merchants involved in "controversial" or "high risk" specialties, such as "online pharmacies, telemarketing, and online gaming," who are "having trouble obtaining or stabilizing a US-based merchant account." **Exhibit 14**.

40.     The Wessell Group's solution is to set up a bank account for the client in the name of an international business company ("IBC") outside the United States. The Wessell Group advertises that this structure will "help provide financial privacy and asset protection." *Id.*

### v. Using offshore entities to reduce domestic entities' liabilities

41.     I also learned that some of the offshore entities formed for clients had names that were the same as or similar to names of the clients' domestic entities. In several instances, clients paid fees charged by the Wessell Group for their offshore entities using checks written on their domestic entities' accounts. This suggests that U.S. clients may have reduced their domestic entities' U.S. income tax liabilities by claiming deductions for fees incurred by their offshore entities, as the name similarities could make the payments appear to be expenses of the

- 13 -

domestic entities. Additionally, the use of the same or a similar entity name could make it easier for gross receipts of a U.S. person's domestic entity to be diverted to an offshore corporation with the same or similar name, as such a diversion would likely go unnoticed by a customer.

C. *The Wessell Group's Scope*

42.     As outlined in the examples above, the Wessell Group offers customers a number of different services with features that bear the hallmarks of offshore tax evasion.

43.     One of the Wessell Group's websites, Offshorecompany.com, touts that it "forms thousands of packages every year." **Exhibit 9.** Offshorecompany.com offers three offshore strategies to clients:

a. "Offshore Company Formation Strategy 1," which costs $1,845, places funds in offshore bank accounts that are owned by private offshore companies. The Wessell Group contends that this makes the assets "extremely difficult to discover" because "transfers in and out of your account will be in the name of the company, thus omitting your personal name from the electronic trail." *Id.*

b. "Offshore Incorporation Strategy 2," which costs $3,615, offers the same structure as "Strategy 1," but also includes a "Nevis Office Program" and a nominee service. The office program is described as follows: "When an actual or potential litigant calls to see if the company is a legitimate Nevis operation, we answer the phone on your company's behalf. We also receive mail from these offshore companies and forward it to the client. These elements take away the court argument that the company is simply a shell to hide assets. The name[s] of the owners are not in the public records, so asset protection is achieved through statute by the Nevis LLC law and through a very sophisticated level of privacy." *Id.*

- 14 -

      c. "Offshore Company and Trust Strategy 3," which costs $15,040, involves a Cook Islands trust owning a Nevis LLC, with the client serving as the LLC's manager with signature authority on the financial accounts. *Id.*

44.    In my experience, the types of packages described above are designed to disguise ultimate beneficial ownership of assets.

45.    As outlined below, the Wessell Group has engaged in a substantial amount of business with customers seeking these and similar packages.

46.    For instance, I learned that in calendar year 2011, one Wessell Group entity, 1-800-Company LLLP, recorded revenue of approximately $3.5 million in its profit and loss statement. As detailed below, approximately $2.2 million of that amount related to international work:

| Type of Revenue Reflected in 1-800-Company's Profit & Loss Statement | Percentage of 1-800-Company's Total Revenue | Amount |
|---|---|---|
| Aged company (a.k.a. shelf corporations) | 8.57% | $299,279 |
| Certificate of good standing and Certificate of incumbency | 1.69% | $59,108 |
| International bank | 3.46% | $120,936 |
| International corporation | 5.38% | $187,800 |
| International LLC | 9.21% | $321,617 |
| International operating program | 3.23% | $112,870 |
| International resident agent | 11.82% | $413,075 |
| International trust | 14.22% | $496,904 |
| Nominee | 5.18% | $180,923 |
| **Total Revenue for International Entities** | **62.76%** | **$ 2,192,512** |

*D. Alexander v. Incway Corporation*

47.    Through research of publicly available records, I discovered a court case that exemplifies the Wessell Group's activities. Specifically, I learned that the U.S. District Court for

- 15 -

the Central District of California determined that Wessell and two associates had "engaged in a 'pattern of racketeering activity' by committing numerous acts of mail fraud and wire fraud within a 10 year period to further their fraudulent investment scheme." *Alexander v. Incway Corp.*, 2013 WL 5603932, ¶ 172 (C.D. Cal. 2013), *rev'd in part on other grounds*, 633 F. App'x 472 (9th Cir. 2016). A copy of the district court's *Alexander* opinion is attached hereto as **Exhibit 15**.

48.     In about June 2008, the plaintiff in the case, Alexander, became a client of the Wessell Group. **Exhibit 15 ¶ 2**. Alexander expressed interest in establishing an account at a Swiss bank. *Id.* ¶ 8. Wessell recommended that Alexander set up an account in Nevis and deposit his funds in another offshore location—specifically Sweden. *Id.* ¶¶ 6, 8. The Court determined that it "appears" that Alexander ultimately established an offshore entity called "Cold Play Ventures, LLC." *Id.* ¶ 12. From information available to the Service, I learned that "Cold Play Ventures" was organized in Nevis. Alexander wired approximately $525,000 to The Alps. *Id.* ¶¶ 25–26.

49.     Describing Wessell and a few of the Wessell Group entities, the Court noted that: "Given the interconnectedness of Wessell and the corporate defendants, and the fraudulent purposes for which these entities were designed, the exact relationship between the entities involved is unclear." *Id.* ¶ 94.

## VI.     Noncompliance by Wessell Group Clients

### A.  The Service's Offshore Voluntary Disclosure Programs

50.     The Voluntary Disclosure Practice is a longstanding practice of the Service's Criminal Investigation Division ("CI") and takes timely, accurate, and complete voluntary disclosures into account when CI is deciding whether to recommend criminal

prosecution of a person to the U.S. Department of Justice. The program enables noncompliant persons to resolve their tax liabilities and minimize their chances of criminal prosecution. The Voluntary Disclosure Practice requires participating persons to cooperate with the Service in determining their correct liability for taxes and penalties, but it does not specify any particular terms for resolution of taxes and penalties.

51.     On March 23, 2009, the Service announced a voluntary disclosure program designed to bring into compliance with U.S. tax laws persons that used undisclosed foreign accounts and undisclosed foreign entities to avoid or evade taxes. This program, known as the 2009 Offshore Voluntary Disclosure Program ("2009 OVDP"), ran from March 23, 2009 through October 15, 2009 and covered tax years 2003 through 2008. By entering and qualifying for the 2009 OVDP, persons were required to file all original and amended returns and pay all taxes, interest, and predetermined penalties, including a 20 percent offshore penalty.

52.     After the 2009 OVDP closed, the Service opened a second special offshore disclosure initiative known as the 2011 Offshore Voluntary Disclosure Initiative ("2011 OVDI"). The 2011 OVDI ran from February 8, 2011 through September 9, 2011 and covered tax years 2003 through 2010. The objective of the 2011 OVDI was the same as the 2009 OVDP. However, the penalty framework changed, and the offshore penalty rate increased from 20 percent to 25 percent.

53.     The Service began an open-ended offshore voluntary disclosure program in January 2012 ("2012 OVDP") on the heels of strong interest in the 2011 OVDI and 2009 OVDP. The 2012 OVDP has a higher penalty rate than the 2011 OVDI and is currently available to persons.

54.    I reviewed the Service's databases that captured information from the 2009

OVDP, the 2011 OVDI, and the 2012 OVDP (collectively, the "voluntary disclosure programs").

Persons who participated in these programs identified undeclared accounts held in jurisdictions

in which the Wessell Group offers to set up bank accounts and entities for its clients.

55.    The banks and locations from the voluntary disclosure programs where the

Wessell Group offers to establish financial accounts for clients are listed in the table below.

| HSBC - Hong Kong |
| Caye Bank – Belize |
| Atlantic International Bank – Belize |
| MMG Bank – Panama |
| HSBC - Cayman Islands |
| First Caribbean International Bank – BVI |
| Cayman Bank - Cayman Islands |
| Barclays Bank - Seychelles |
| Swiss Bank – Switzerland |
| Royal Bank of Canada - Cayman Islands |
| Bateman Financial - Cayman Islands |
| Thales Securities - Cayman Islands |

*See* **Exhibit 16**.

56.    A search of the Service's voluntary disclosure programs databases for Wessell

Group entities yielded voluntary disclosures for two persons who acknowledged using the

Wessell Group's services to set up offshore structures.

57.    Taxpayers 1 and 2 are United States persons married to each other who had

offshore bank accounts and structures dating back to at least 2003 that they failed to report on

their jointly filed income tax returns with the Service.

58.    Taxpayers 1 and 2 disclosed they each paid a total of $3,874 to the Wessell

Group in 2011 to set up their offshore structures, broken down as follows:

| Service | Amount |
|---------|--------|
| Belize Corporation | $ 1,495 |

- 18 -

Case 9:13-cv-82135-WPD  Document 4  Entered on FLSD Docket 05/21/2013  Page 38 of 46

| Caribbean Account | $ 550 |
|---|---|
| Swiss Account | $ 550 |
| Certificate of Incumbency | $ 455 |
| Notary | $ 200 |
| Shipping | $ 29 |
| Mail Forwarding | $ 595 |
| Total | $ 3,874 |

59.     Shortly after engaging the Wessell Group, Taxpayers 1 and 2 discontinued use of their overseas holdings and reported their violations to the IRS, which led to the imposition of over $200,000 in penalties. The penalties were only for tax years 2003–2010 and were not tied to the entity or accounts set up by the Wessell Group in 2011 because Taxpayers 1 and 2 abandoned the scheme that year. Nonetheless, their use of the Wessell Group was consistent with a scheme that led to the penalties and could have led to further violations of the tax laws had they not decided to make a voluntary disclosure.

### B. Other Examples

60.     The Service is aware of a third taxpayer, Taxpayer 3, who used the Wessell Group to set up entities in Nevada and in Turks and Caicos in 2007. The Nevada entity was set up before the Turks and Caicos entity, and the entities had similar names. The Wessell Group also set up and funded a bank account for the Turks and Caicos entity in that jurisdiction for Taxpayer 3. The Wessell Group sent Taxpayer 3 a blank corporate booklet via U.S. mail to his post office box and provided him guidance over the phone on how to complete the various forms in the booklet for both entities. The Wessell Group registered the offshore entity with Turks and Caicos and sent Taxpayer 3 the Turks and Caicos registration certificates. The Wessell Group also supplied the directors for the Turks and Caicos entity, and Taxpayer 3 told the IRS he did not know the entity's physical address. Taxpayer 3 did not report the entity on his 2007 tax

- 19 -

return. He sold the entity in 2008 and also failed to report that transaction.

61.     From information available to the Service, I learned that a U.S. person used offshore structures set up by the Wessell Group in an attempt to willfully evade and defeat his income tax liability. *See United States v. Stodghill*, No. 3:13-cr-00036-RLY-WGH (S.D. Ind.). A copy of the indictment is attached as **Exhibit 17**. Gregory P. Stodghill pleaded guilty on December 17, 2013 to tax evasion and was sentenced to five years in prison. A copy of the plea agreement is attached as **Exhibit 18**. Through the Wessell Group, Stodghill set up entities in the British Virgin Islands and Panama, as well as at least one in the United States. He proceeded to use these entities as nominees to try to hide his connection to assets. For instance, he used a Panamanian entity to mask his interest in a residence he purchased. All told, he attempted to conceal more than $1 million in taxable income.

62.     On July 27, 2009, the U.S. Securities and Exchange Commission filed a complaint against numerous entities and individuals for violations of various securities laws in a Ponzi-type scheme, including making false and misleading statements, selling unregistered securities, and committing fraud in connection with selling securities. *SEC v. Diversity Capital Inv.*, No. 2:09-cv-5449-ODW (S.D. Cal.).[6] One of the defendants named in the Diversity Capital Complaint, Edward Lantz Ferguson, was indicted (**Exhibit 21**) and subsequently convicted of mail fraud, *United States v. Ferguson*, No. 8:09-cr-00180-AHM (C.D. Cal.), and the conviction

---

[6] A copy of the complaint is attached as **Exhibit 19** and alleges the defendants used a series of financial schemes to funnel outside investors' funds through a number of offshore shell companies in the British Virgin Islands, the Cayman Islands, and Nevis. The complaint further alleges that funds that were funneled into the offshore shell companies were used to pay the personal expenses of the defendants. The district court entered an injunction and ordered more than $25 million in disgorgement. **Exhibit 20**.

was affirmed by the Ninth Circuit in an unpublished opinion, 584 Fed. Appx. 749 (9th Cir. 2014). The court found that Ferguson knowingly participated in or devised a scheme or plan to defraud and that he acted with the intent to defraud. From information available to the Service, I learned that the entity used to perpetuate the fraud was set up by the Wessell Group. The scheme to defraud investors began in at least November 2007 and continued to about July 27, 2009.

### C. Information from Other John Doe Summonses

#### i. CIBC First Caribbean International Bank Limited

63.     I learned that Wessell and his entities wired funds offshore for clients. On May 2, 2013, a federal district court in California[7] authorized the Service to serve a John Doe summons on Wells Fargo Bank for records pertaining to correspondent bank accounts utilized by CIBC First Caribbean International Bank Limited ("FCIB") ("FCIB John Doe Summons"). The FCIB John Doe Summons sought records of each correspondent account for FCIB, which conducts business in numerous locations, including Nevis, St. Kitts, Panama, and the British Virgin Islands. In response to the FCIB John Doe Summons, Wells Fargo Bank provided electronic funds transfer information for its correspondent relationship with FCIB. The retrieved data identified wire transfers between the Wessell Group and financial institutions located in the Bahamas. These wires identify Wessell Group entities as senders or receivers of wire transfers in which the other parties to the transactions were offshore service providers, and they reference offshore entities whose formation was facilitated by the Wessell Group. This evidence indicates that the Wessell Group is assisting U.S. taxpayers evade U.S. taxes.

---

[7] In re Tax Liabilities of John Does, No. 3:13-cv-01938 (N.D. Cal.).

- 21 -

Case 0:18-cv-62235-WPD Document 1-4 Entered on FLSD Docket 09/11/2018 Page 33 of 46

*ii. Belize Corporate Services*

64. I learned that the Wessell Group generated income and incurred expenses in connection with Belize Corporate Services, which is an offshore service provider. On September 16, 2015, a federal district court in Florida[8] approved the Service's petition to serve John Doe summonses on Bank of America, National Association ("BOA") and Citibank, National Association for records of Belize Bank International Limited, Belize Bank Limited, and Belize Corporate Services ("Belize John Doe Summons").

65. Belize Corporate Services' "About Us" webpage states that the company was "[i]nitially established as an offshore service provider primarily for Belize IBC[s]" and "is now Belize's leading international financial service provider with a global network of professional intermediary and private customers." **Exhibit 22**. Belize Corporate Services provides the following services:

      a.      formation of Belize and other foreign jurisdiction companies;

      b.      assistance with opening offshore bank accounts denominated in several different currencies;

      c.      assistance with opening online and offline securities brokerage accounts;

      d.      credit, debit, and prepaid cards; and

      e.      virtual office and bookkeeping services.

*Id.*

66. The virtual office services include a local telephone number, fax number, and address for use by the client. **Exhibit 23**. Mail and telephone calls can also be forwarded to the

---

[8] *In re Tax Liabilities of John Does*, No. 1:15-MC-23475 (S.D. Fla.).

client, and calls can be answered in the IBC's name. *Id.* As explained on Belize Corporate
Services' "Virtual Office Services" webpage, "Having a virtual office allows you to indicate a
significant physical presence in Belize to demonstrate that the Belize IBC is not only
incorporated in Belize, but also carrying on business from within Belize." *Id.*

67.     It is the Service's experience that individuals seeking to avoid their United States
tax obligations use such services to conceal their beneficial ownership of the offshore entity.

68.     I searched the data produced in connection with the Belize John Doe Summons
and found at least 69 wire transactions to or originating from the Wessell Group.

### VII.    The Current Investigation

69.     The Service is now investigating United States persons who, at any time during
the years ended December 31, 2012, through December 31, 2017 used the services of the
Wessell Group to establish, maintain, operate, or control: any foreign financial account or other
asset; any foreign corporation, company, trust, foundation, or other legal entity; or any foreign or
domestic financial account or other asset in the name of a foreign entity.  To facilitate this
investigation, the Service is seeking the Court's permission to serve, pursuant to sections 7602
and 7609(f) of the Internal Revenue Code (26 U.S.C. §§ 7602, 7609(f)), a "John Doe" summons
to five individuals and entities: Kevin Wessell, Lesli Wessell, Sophia Wessell, BOA, and Wells
Fargo.

70.     Based on information received by the Service, the persons in the "John Doe" class
may have failed to report the existence of foreign financial accounts or domestic or foreign
entities under their control, failed to report income, evaded income taxes, or otherwise violated
the internal revenue laws of the United States.

A. *Summons to Kevin W. Wessell*

71.     The summons to be served on Kevin Wessell is attached as **Exhibit A**.

72.     From information available to the Service, I am aware that the Wessell Group maintained books and records containing clients' names, addresses, phone numbers, and billing and shipping addresses; the names of clients' entities and the entities' formation documents; the offshore bank account records associated with the offshore entities, including copies of clients' U.S. passports; the ancillary services provided by the offshore services providers, such as registered agent and nominee services, support services, and office programs; and the amount of fees paid for offshore services provided.

73.     The documents described above, all of which should be accessible by Kevin Wessell, are the types of records that would help identify U.S. clients with undisclosed offshore entities.

74.     Kevin Wessell's last known address is 10370 Cameilla Street, Parkland, Florida 33076.

B. *Summons to Lesli A. Wessell*

75.     The summons to be served on Lesli Wessell is attached as **Exhibit B**.

76.     Lesli Wessell has maintained an ownership stake in the Wessell Group and can be expected to have access to the Wessell Group's books and records.

77.     Lesli Wessell's last known address is 10370 Cameilla Street, Parkland, Florida 33076.

C. *Summons to Sophia R. Wessell*

78.     The summons to be served on Sophia Wessell is attached as **Exhibit C**.

- 24 -

79.    Sophia Wessell has maintained an ownership stake in the Wessell Group.

Although she was a minor at the time she obtained the stake, she is now an adult. As a result of

her ownership stake, she can be expected to have access to the Wessell Group's books and

records.

80.    Sophia Wessell's last known address is 10370 Cameilla Street, Parkland, Florida

33076.

### D. Summons to Bank of America, National Association

81.    A copy of the summons to BOA is attached as **Exhibit D.**

82.    During the course of my investigation, I learned that the Wessell Group used

BOA to conduct financial transactions for its clients related to its business. Additionally, during

the course of my investigation, I learned that 1-800-Company LLLP used BOA to accept

electronic funds transfers from clients.

83.    Based on my experience, I know relationships such as this allow the Wessell

Group to transfer funds from BOA to other accounts in the United States or to accounts overseas.

Based on my experience, I know a domestic bank account can also serve as a means of moving

funds into a foreign bank.

84.    BOA is a subsidiary of Bank of America Corporation, which maintains its

headquarters in Charlotte, North Carolina. BOA has a location at 701 Brickell Avenue, Miami,

Florida, 22131. The records sought would be relevant in identifying U.S. persons who used the

Wessell Group's services in setting up offshore structures and bank accounts.

- 25 -

### E. Summons to Wells Fargo, National Association

85.     A copy of the summons to Wells Fargo is attached as **Exhibit E.**

86.     During the course of my investigation, I learned that the Wessell Group had a bank account at Wells Fargo to conduct financial transactions related to its business. Wells Fargo maintains its headquarters in San Francisco, CA. Wells Fargo operates banking centers in Florida, including a location at 1541 Sunset Drive, Coral Gables, Florida 33143. The records sought would be relevant in identifying U.S. persons who used the Wessell Group's services in establishing offshore structures and opening bank accounts.

### VIII.   **The Summonses Describe an Ascertainable Class of Persons.**

87.     The "John Doe" summonses to Kevin Wessell, Lesli Wessell, Sophia Wessell, BOA, and Wells Fargo seek information regarding United States persons who, at any time during the years ended December 31, 2012, through December 31, 2017, used the services of the Wessell Group to establish, maintain, operate, or control: any foreign financial account or other asset; any foreign corporation, company, trust, foundation or other legal entity; or any foreign or domestic financial account or other asset in the name of a foreign entity.

88.     This class of persons is ascertainable in that the individuals in the class are particularized from the general public by their characteristics of being United States persons who used the services of the Wessell Group to establish, maintain, operate, or control foreign accounts, assets, or entities.

**IX.** **The Internal Revenue Service Has Reason to Believe Members of the "John Doe" Class May Have Failed to Comply with One or More Requirements of the Internal Revenue Laws.**

89.     The services the Wessell Group provides to its U.S. clients, as described at length on its websites and herein, are the kinds of activities that, in the experience of the Service, are the hallmarks of offshore tax evasion, including use of offshore trusts, foundations, and corporations managed by nominee officers and secretly owned through bearer shares and/or the concealment of beneficial ownership in foreign accounts and assets in tax haven countries.

90.     As described herein, there are a number of examples of individuals using the Wessell Group's services for unlawful purposes.

91.     The information obtained by the Service and discussed in this Declaration suggests that many of the still-unknown United States persons doing business with the Wessell Group have not reported their offshore accounts, entities, or structures.

92.     Based on my experience with offshore issues, persons who hold undisclosed foreign accounts, entities, or structures often do so in order to conceal the existence of such accounts, entities, or structures and their associated income from the Service.

93.     It is the experience of the Service that there is a direct correlation between unreported income and the lack of visibility of that income to the Service. That is, when the third-party payer of income to a person is not required to, or does not, report that income to the Service, the person-recipient of that income is far less likely to report it on his or her tax returns. Many of the still-unknown United States persons doing business with the Wessell Group have likely relied on the lack of third-party reporting to support their decision not to disclose their foreign accounts, entities, or structures, with the expectation that the Service would not discover the vehicles and any associated income.

- 27 -

94. Based on the above information, United States persons in the "John Doe" class may be failing to comply with internal revenue laws governing U.S. persons' obligations to report and pay tax on worldwide income, to disclose all interests in foreign financial accounts, to file annual reports of foreign financial accounts with assets exceeding $10,000, and to file annual reports reporting offshore entities.

## X.    The Requested Information Is Not Readily Available from Other Sources.

95. To my knowledge, and based on my experience, the only repositories of the information sought that are readily available to the Service are Kevin Wessell, Lesli Wessell, Sophia Wessell, BOA, Wells Fargo, and another entity and individual identified in John Doe applications that are being concurrently filed in other jurisdictions.

96. In light of the above, the records sought by the John Doe summonses are not otherwise reasonably and timely available to the Service. To the extent that any of the proposed summons recipients have produced any documents responsive to the summonses in connection with past examinations conducted by—or past summonses issued by—the Service, the Service is not seeking reproduction of those materials here.

## XI.    CONCLUSION

97. Based upon the foregoing, I believe the information sought in the "John Doe" summonses to be issued to Kevin Wessell, Lesli Wessell, Sophia Wessell, BOA, and Wells Fargo will allow the Service to identify U.S. persons who may have failed to comply with their obligation to report and pay U.S. taxes on income earned with respect to financial accounts and entities established, maintained, operated, or controlled by or through the Wessell Group during the years ended December 31, 2012, through December 31, 2017.

- 28 -

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true

and correct.

Executed this ⟶5⟵ day of ⟶July⟵ 2018.

KAREN CINCOTTA
Internal Revenue Agent
Internal Revenue Service

# Exhibit D

# Summons

In the matter of  Tax Liability of John Does*

Internal Revenue Service (Division):  Large Business & International Division

Industry/Area (name or number):  Withholding & International Individual Compliance

Periods: Years ending 12/31/2012 through 12/31/2017

## The Commissioner of Internal Revenue

To: Kevin W. Wessell

At: 10970 Camellia St, Parkland, FL 33076  4411 NE 26th Ave, Lighthouse Point, FL 33064

You are hereby summoned and required to appear before  Revenue Agent Karen Cincotta or Designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See attachment

* "JOHN DOES", United States taxpayers who, at any time during the years ended December 31, 2012, through December 31, 2017, used the services of the Wessell Group or its predecessors, subsidiaries, divisions, affiliates, or website domains (collectively, the "Wessell Group") to establish, maintain, operate, or control:  any foreign financial account or other asset; any foreign corporation, company, trust, foundation, or other legal entity; or any foreign or domestic financial account or other asset in the name of a foreign entity.

### Do not write in this space

Business address and telephone number of IRS officer before whom you are to appear:

1122 Town & Country Commons, Chesterfield, MO 63017; Telephone: (636) 255-1319

Place and time for appearance at  Internal Revenue Service, 7850 SW 6th Court, Plantation, FL 33324-3202

**IRS**

on the  26th  day of  October  2018  at  10:00  o'clock  a  m.

Issued under authority of the Internal Revenue Code this  26th  day of  September  ,  2018

Department of the Treasury
Internal Revenue Service

www.irs.gov

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

*Bryan Stiernagle*
Signature of issuing officer

Program Manager
Title

Signature of approving officer (if applicable)

Title

**Original — to be kept by IRS**

# Provisions of the Internal Revenue Code

## Sec. 7602. Examination of books and witnesses

(a) Authority to Summon, etc. - For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized -

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry.

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

(b) Purpose may include inquiry into offense. - The purposes for which the Secretary may take any action described in paragraph (1), (2), or (3) of subsection (a) include the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws.

(c) Notice of contact of third parties. -

(1) General Notice. - An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination or collection of the tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that contacts with persons other than the taxpayer may be made.

(2) Notice of specific contacts. - The Secretary shall periodically provide to a taxpayer a record of persons contacted during such period by the Secretary with respect to the determination or collec ion of the tax liability of such taxpayer. Such record shall also be provided upon request of the taxpayer.

(3) Exceptions. - This subsection shall not apply-

(A) to any contact which the taxpayer has authorized,

(B) if the Secretary determines for good cause shown that such notice would jeopardize collection of any tax or such notice may involve reprisal against any person, or

(C) with respect to any pending criminal investigation.

(d) No administrative summons when there is Justice Department referral.-

(1) Limitation of authority. - No summons may be issued under this title, and the Secretary may not begin any action under section 7604 to enforce any summons, with respect to any person if a Justice Department referral is in effect with respect to such person.

(2) Justice Department referral in effect. - For purposes of this subsection-

(A) In general. - A Justice Department referral is in effect with respect to any person if-

(i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws or

(ii) any request is made under section 6103(h)(3)(B) for the disclosure of any return or return information (within the meaning of section 6103(b)) relating to such person.

(B) Termination. - A Justice Department referral shall cease to be in effect with respect to a person when-

(i) the Attorney General notifies the Secretary, in writing, that -

(I) he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws,

(II) he will not authorize a grand jury investigation of such person with respect to such an offense, or

(III) he will discontinue such a grand jury investigation.

(ii) a final disposition has been made of any criminal proceeding pertaining to the enforcement of the internal revenue laws which was instituted by the Attorney General against such person, or

(iii) the Attorney General notifies the Secretary, in writing, that he will not prosecute such person for any offense connected with the administration or enforcement of the internal revenue laws relating to the request described in sub paragraph (A)(ii).

(3) Taxable years, etc., treated separately. - For purposes of this subsection, each taxable period (or, if there is no taxable period, each taxable event) and each tax imposed by a separate chapter of this ti le shall be treated separately.

(e) Limitation on examination on unreported income. - The Secretary shall not use financial status or economic reality examination techniques to determine the existence of unreported income of any taxpayer unless the Secretary has a reasonable indication that there is a likelihood of such unreported income.

## Sec. 7603. Service of summons

(a) In general - A summons issued under section 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7602 shall be served by the Secretary, by an attested copy delivered in hand to the person to whom it is directed, or left at his last and usual place of abode; and the certificate of service signed by the person serving the summons shall be evidence of the facts it states on the hearing of an application for the enforcement of the summons. When the summons requires the production of books, papers, records, or other data, it shall be sufficient if such books, papers, records, or other data are described with reasonable certainty

(b) Service by mail to third-party recordkeepers. -

(1) In general. - A summons referred to in subsection (a) for the production of books, papers, records, or other data by a third-party recordkeeper may also be served by certified or registered mail to the last known address of such recordkeeper.

(2) Third party record keeper. - For purposes of paragraph (1), the term *third-party recordkeeper* means -

(A) any mutual savings bank, cooperative bank, domestic building and loan association, or other savings institution chartered and supervised as a savings and loan or similar association under Federal or State law, any bank (as defined in section 581), or any credit union (within the meaning of section 501 (c)(14)(A));

(B) any consumer reporting agency (as defined under section 603(f) of the Fair Credit Reporting Act (15 U.S.C. 1681 a(f));

(C) Any person extending credit through the use of credit cards or similar devices;

(D) any broker (as defined in section 3(a)(4) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(4));

(E) any attorney;

(F) any accountant;

(G) any barter exchange (as defined in section 6045(c)(3));

(H) any regulated investment company (as defined in section 851) and any agent of such regulated investment company when acting as an agent thereof;

(I) any enrolled agent; and

(J) any owner or developer of a computer software source code (as defined in section 7612(d)(2)). Subparagraph (J) shall apply only with respect to a summons requiring the production of the source code referred to in subparagraph (J) or the program and data described in section 7612(b)(1)(A)(iii) to which source code relates.

## Sec. 7604. Enforcement of summons

(a) Jurisdiction of District Court. - If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data.

(b) Enforcement. - Whenever any person summoned under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary may apply to the judge of the district court or to a United States Commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or Commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States Commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience.

\* \* \* \* \*

## Sec. 7605. Time and place of examination

(a) Time and place. - The time and place of examination pursuant to the provisions of section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602 shall be such time and place as may be fixed by the Secretary and as are reasonable under the circumstances. In the case of a summons under authority of paragraph (2) of section 7602, or under the corresponding authority of section 6420(e)(2), 6421 (g)(2) or 6427(j)(2), the date fixed for appearance before the Secretary shall be not less than 10 days from the date of the summons.

## Sec. 7610. Fees and costs for witnesses

(a) In general. - The Secretary shall by regulations establish the rates and conditions under which payment may be made of -

(1) fees and mileage to persons who are summoned to appear before the Secretary, and

(2) reimbursement for such costs that are reasonably necessary which have been directly incurred in searching for, reproducing, or transporting books, papers, records, or o her data required to be produced by summons.

(b) Exceptions. - No payment may be made under paragraph (2) of subsection (a) if -

(1) the person with respect to whose liability the summons is issued has a proprie- tary interest in the books, papers, records or other data required to be produced, or

(2) the person summoned is the person with respect to whose liability the summons is issued or an officer, employee, agent, accountant, or attorney of such person who, at the time the summons is served, is acting as such.

(c) Summons to which section applies. - This section applies with respect to any summons authorized under section 6420(e)(2), 6421 (g)(2), 6427(j)(2), or 7602.

## Sec. 7210. Failure to obey summons

Any person who, being duly summoned to appear to testify, or to appear and produce books, accounts, records, memoranda or other papers, as required under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), 7602, 7603, and 7604(b), neglects to appear or to produce such books, accounts, records memoranda, or other papers, shall, upon conviction thereof, be fined not more than $1,000, or imprisoned not more than 1 year, or both, together with costs of prosecution.

---

Authority to examine books and witness is also provided under sec. 6420 (e)(2) - Gasoline used on farms: sec. 6421(g)(2) - Gasoline used for certain nonhighway purposes by local transit systems, or sold for certain exempt purposes; and sec. 6427(j)(2) - Fuels not used for taxable purposes.

\* \* \* \* \*

# Notice of Payment Information for Recipients of IRS Summons

If you are a third-party recipient of a summons, you may be entitled to receive payment for certain costs directly incurred which are reasonably necessary to search for, reproduce, or transport records in order to comply with a summons.

This payment is made only at the rates established by the Internal Revenue Service to certain persons served with a summons to produce records or information in which the taxpayer does not have an ownership interest. The taxpayer to whose liability the summons relates and the taxpayer's officer, employee, agent, accountant, or attorney are not entitled to this payment. No payment will be made for any costs which you have charged or billed to other persons.

The rate for search costs is limited to the total amount of personnel time spent locating and retrieving documents or information requested by the summons. Specific salaries of such persons may not be included in search costs. In addition, search costs do not include salaries, fees, or similar costs for analysis of material or for managerial or legal advice, expertise, research, or time spent for any of these activities. If itemized separately, search costs may include the actual costs of extracting information stored by computer in the format in which it is normally produced, based on computer time and necessary supplies. Time for computer search may be paid.

Rates for reproduction costs for making copies or duplicates of summoned documents, transcripts, and other similar material may be paid at the allowed rates. Photographs, films, and other material are reimbursed at cost.

The rate for transportation costs is the same as the actual cost necessary to transport personnel to locate and retrieve summoned records or information, or costs incurred solely by the need to transport the summoned material to the place of examination.

In addition to payment for search, reproduction, and transportation costs, persons who appear before an Internal Revenue Service officer in response to a summons may request payment for authorized witness fees and mileage fees. You may make this request by contacting the Internal Revenue Service officer or by claiming these costs separately on the itemized bill or invoice as explained below.

## Instructions for requesting payment

After the summons is served, you should keep an accurate record of personnel search time, computer costs, number of reproductions made, and transportation costs. Upon satisfactory compliance, you may submit an itemized bill or invoice to the Internal Revenue Service officer before whom you were summoned to appear, either in person or by mail to the address furnished by the Internal Revenue Service officer. Please write on the itemized bill or invoice the name of the taxpayer to whose liability the summons relates.

If you wish, Form 6863, Invoice and Authorization for Payment of Administrative Summons Expenses, may be used to request payment for search, reproduction, and transportation costs. Standard Form 1157, Claims for Witness Attendance Fees, Travel, and Miscellaneous Expenses, may be used to request payment for authorized witness fees and mileage fees. These forms are available from the Internal Revenue Service officer who issued the summons.

If you have any questions about the payment, please contact the Internal Revenue Service officer before whom you were summoned to appear.

Anyone submitting false claims for payment is subject to possible criminal prosecution.



Department of the Treasury
**Internal Revenue Service**

**www.irs.gov**

Form 2039 (Rev. 10-2010)
Catalog Number 21405J

**Part B** — to be given to person summoned

**Sec. 7609. Special procedures for third party summons**

(a) Notice-

(1) In general. - If any summons to which this section applies requires the giving of testimony on or relating to, the production of any portion of records made or kept on or relating to, or the production of any computer software source code (as defined in 7612(d)(2)) with respect to, any person (other than the person summoned) who is identified in the summons, then notice of the summons shall be given to any person so identified within 3 days of  the day on which such service is made, but no later than the 23rd day before the day fixed in the summons as the day upon which such records are to be examined. Such notice shall be accompanied by a copy of the summons which has been served and shall contain an explanation of the right under subsection (b)(2) to bring a proceeding to quash such summons.

(2) Sufficiency of notice. - Such notice shall be sufficient if, on or before such third day, such notice is served in the manner provided in section 7603 (relating to service of summons) upon the person entitled to notice, or is mailed by certified or registered mail to the last known address of such person, or, in the absence of a last known address, is left with the person summoned. If such notice is mailed, it shall be sufficient if mailed to the last known address of the person entitled to notice or, in the case of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, to the last known address of the fiduciary of such person, even if such person or fiduciary is then deceased, under a legal disability, or no longer in existence.

(3) Nature of summons. - Any summons to which this subsection applies (and any summons in aid of collection described in subsection (c)(2)(D)) shall identify the taxpayer to whom the summons relates or the other person to whom the records pertain and shall provide such other information as will enable the person summoned to locate the records required under the summons.

(b) Right to intervene; right to proceeding to quash. -

(1) Intervention. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to intervene in any proceeding with respect to the enforcement of such summons under section 7604.

(2) Proceeding to quash. -

(A) In general. - Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than  he 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.

(B) Requirement of notice to person summoned and to Secretary. - If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or cer ified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a) (1 ).

(C) Intervention, etc. - Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

(c) Summons to which section applies. -

(1) In general. - Except as provided in paragraph (2), this section shall apply to any summons issued under paragraph (2) of section 7602(a) or under sections 6420(e)(2), 6421(g)(2), 6427(j)(2), or 7612.

(2) Exceptions. - This section shall not apply to any summons

(A) served on the person with respect to whose liability the summons is issued, or any officer or employee of such person;

(B) issued to determine whether or not records of the business transaction or affairs of an identified person have been made or kept;

(C) issued solely to determine the identify of any person having a numbered account (or similar arrangement) with a bank or other institution described in section 7603(b)(2)(A);

(D) issued in aid of the collection of-

(i) an assessment made or a judgment rendered against the person with respect to whose liability the summons is issued, or

(ii) the liability at law or in equity of any transferee or fiduciary of any person referred to in clause; or

(E) (i) issued by a criminal investigator of the Internal Revenue Service in connection with the investigation of an offense connected with the administration or enforcement of the internal revenue laws, and

(ii) served on a person who is not a third-party recordkeeper (as defined in section 7603(b)).

(3) John Doe and Certain Other Summonses. - Subsection (a) shall not apply to any summons described in subsection (f) or (g).

(4) Records. - For purposes of this section, the term records includes books, papers, and other data.

(d) Restriction on examination of records. - No examination of any records required to be produced under a summons as to which notice is required under subsection (a) may be made -

(1) before the close of the 23rd day after the day notice with respect to the summons is given in the manner provided in subsection (a)(2), or

(2) where a proceeding under subsection (b)(2)(A) was begun within the 20-day period referred to in such subsection and the requirements of subsection (b)(2)(B) have been met, except in accordance with an order of the court having jurisdiction of such proceeding or with the consent of the person beginning the proceeding to quash.

(e) Suspension of Statute of Limitations. -

(1) Subsection (b) action. - If any person takes any action as provided in subsection (b) and such person is the person with respect to whose liability the summons is issued (or is the agent, nominee, or other person acting under the direction or control of such person), then the running of any period of limitations under section 6501 (relating to the assessment and collection of tax) or under section 6531 (relating to criminal prosecutions) with respect to such person shall be suspended for the period during which a proceeding, and appeals therein, with respect to the enforcement of such summons is pending.

(2) Suspension after 6 months of service of summons. - In the absence of the resolution of the summoned party's response to the summons, the running of any period of limitations under section 6501 or under sec ion 6531 with respect to any person with respect to whose liability the summons is issued (other than a person taking action as provided in subsection (b)) shall be suspended for the period-

(A) beginning on the date which is 6 months after the service of such summons, and

(B) ending with the final resolution of such response.

(f) Additional requirements in the case of a John Doe summons. -

Any summons described in subsection (c)(1) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that -

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the records or testimony (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

(g) Special exception for certain summonses. -

A summons is described in this subsection if, upon petition by the Secretary, the court determines, on the basis of the facts and circumstances alleged, that there is reasonable cause to believe the giving of notice may lead to attempts to conceal, destroy, or alter records relevant to the examination, to prevent the communication of information from other persons through intimidation, bribery, or collusion, or to flee to avoid prosecution, testifying, or production of records.

(h) Jurisdiction of district court; etc. -

(1) Jurisdiction. - The United States district court for the district within which the person to be summoned resides or is found shall have jurisdiction to hear and determine any proceedings brought under subsection (b)(2), (f), or (g). An order denying the peti ion shall be deemed a final order which may be appealed.

(2) Special rule for proceedings under subsections (f) and (g).- The determinations required to be made under subsections (f) and (g) shall be made ex parte and shall be made solely on the petition and supporting affidavits.

(i) Duty of summoned party. -

(1) Recordkeeper must assemble records and be prepared to produce records.- On receipt of a summons to which this section applies for the production of records, the summoned party shall proceed to assemble the records requested, or such portion thereof as the Secretary may prescribe, and shall be prepared to produce the records pursuant to the summons on the day on which the records are to be examined.

(2) Secretary may give summoned party certificate. - The Secretary may issue a certificate to the summoned party that the period prescribed for beginning a proceeding to quash a summons has expired and that no such proceeding began within such period, or that the taxpayer consents to the examination.

(3) Protection for summoned party who discloses. - Any summoned party, or agent or employee thereof, making a disclosure of records or testimony pursuant to this section in good faith reliance on the certificate of the Secretary or an order of a court requiring production of records or the giving of such testimony shall not be liable to any customer or other person for such disclosure.

(4) Notice of suspension of statute of limitations in the case of a John Doe summons. - In the case of a summons described in subsection (f) with respect to which any period of limitations has been suspended under subsection (e)(2), the summoned party shall provide notice of such suspension to any person described in subsection (f).

(j) Use of summons not required. -

Nothing in this section shall be construed to limit the Secretary's ability to obtain information, other than by summons, through formal or informal procedures authorized by sections 7601 and 7602.

Form **2039** (Rev. 10-2010)

In the Matter of Tax Liability of John Does
Attachment to Form 2039 Summons to
Kevin W. Wessell

## Definitions

Wherever used in this summons, the following terms (whether or not capitalized) have the meanings set forth below.

A. "Wessell Group" includes the following entities: Eagle Estate, LLC; Lincoln International Services, Inc; Lincoln Management Group, LLLP; Eagle Rock Mountain, LP; LAP Trust; Incway Corporation Which Will Do Business In California As Companies Incorporated; Companies Inc.; Worldwide Education Services; 1-800-Company; 1-800-Company, LLLP; Presidential Services Incorporate; PSI Holdings, Inc.; National Management Associates, Inc., doing business in California as General Corporate Services, Inc.; Offshore Corporation; OffshoreCorporation.com, which is a website; Offshore Company, Inc., which is a website; CanadianCorp.com, which is a website; and Corporacion.com, which is a website.

B. "Database" means all client records maintained electronically by Wessell Group, including, but not limited to, those records maintained at any time on "Clientele Database."

C. "Documents" means all electronic, written, printed, typed, graphically, visually or aurally reproduced materials of any kind or other means of preserving thought or expression, recording events or activities, and all tangible things from which information can be processed or transcribed, including, but not limited to:

    1) contracts, agreements, plans, summaries, opinions, reports, commentaries, communications, correspondence, memoranda, minutes, notes, comments, messages, telexes, telegrams, teletypes, cables, facsimiles, wire instructions, and electronic mail; and

    2) video and/or audio tapes, cassettes, films, microfilm, spreadsheets, databases, computer discs and other information which is stored or processed by means of data processing equipment and which can be retrieved in printed or graphic form.

D. "Domestic" means within the United States, its territories, and possessions.

E. "Financial Account" means a bank account, securities account, or other financial account of any kind.

F. "Foreign Entity" means a corporation, limited liability company, international business company, personal investment company, partnership, trust,

In the Matter of Tax Liability of John Does
Attachment to Form 2039 Summons to
Kevin W. Wessell

anstalt, stiftung, or any other legal entity created under the laws of a jurisdiction other
than the United States.

G.    "Offshore" means any location outside of the United States and its
territories and possessions.

H.    "Offshore Service Providers" means all individuals and/or entities that
Wessell Group communicated with to effect the establishment of any foreign entity or
bank account for one of more of its clients.

I.    "Summons Period" means January 1, 2012, through December 31, 2017.

J.    "United States Taxpayer" means any person with an address or telephone
number in the United States or who is known to Wessell Group or to any of its officers,
employees, agents, or affiliates through its business records, its know-your-customer
practices, or through any other means, to be a United States citizen or resident.

K.    References to the singular include the plural, and the plural include the
singular.

## Documents Relating to Accounts of United States Taxpayers

Please provide records of all United States Taxpayers who, during the Summons
Period, or for another period stated, used the services of Wessell Group to establish,
maintain, operate, or control: any foreign financial account or other asset; any foreign
corporation, company, trust, foundation, or other legal entity; or any foreign or domestic
financial account or other asset in the name of a foreign entity. Such records include,
but are not limited to, the following:

1.    All data and documents maintained in a Database including, but not
limited to, contact reports which include contact information, addresses, client notes,
and/or client account history.

2.    All books, papers, records, or other data related to services provided,
regardless of date, including, but not limited to:

  a.    client account opening forms, including copies of U.S. passports
        and other identification documents;
  b.    documents prepared or obtained when setting up foreign bank
        accounts, foreign entities, and/or offshore merchant accounts;

In the Matter of Tax Liability of John Does
Attachment to Form 2039 Summons to
Kevin W. Wessell

    c.    client signature cards, powers of attorney, and/or other written authorizations;

    d.    completed client application for business package purchased, including the service arrangement purchased;

    e.    invoices and statements; and

    f.    payments remitted by clients.

3.     All communications with clients including, but not limited to, all electronic communications such as facsimile, email, etc., regardless of date.

4.     All communications with offshore service providers utilized by Wessell Group to effect a Wessell Group client's establishment of all foreign entities and/or bank accounts, regardless of date.

5.     For all foreign entities, and for domestic entities formed as part of a Wessell Group client's foreign structure, established by Wessell Group for its clients, please provide copies of the following documents:

    a.    Articles of Incorporation, regardless of date;

    b.    Bylaws, regardless of date;

    c.    All documents identifying past and current officers, regardless of date;

    d.    Board minutes and resolutions, regardless of date;

    e.    Stock and ownership certificates, regardless of date;

    f.    Instructions directing the transfer, payment, or other movement of funds, whether via email, facsimile, mail, memoranda, or summaries of telephone conversations;

    g.    Nominee agreements entered into by Wessell Group and/or any client entity, regardless of date;

    h.    Confirmations of entity existence, regardless of date;

    i.    Corporation certificate of good standing; and

    j.    Records identifying all assets and/or property transferred into a foreign entity, regardless of date.

6.     For all foreign trusts established at the request of the U.S. client, please provide copies of the following documents:

    a.    The governing instrument for the trust, with all attachments, schedules, and amendments, regardless of date;

    b.    Minutes of all meetings of the Board of Trustees, from the creation of the trust through December 31, 2017;

In the Matter of Tax Liability of John Does
Attachment to Form 2039 Summons to
Kevin W. Wessell

c.   All operating manuals and/or other instructions, including letters of
     wishes, which describe the operation of the trust, regardless of
     date;

d.   All documents containing the name, address, telephone number,
     and/or Taxpayer Identification Number for all current and/or former
     trustees of all trusts, from the date of the creation of the trust to the
     present;

e.   All documents containing the name, address, telephone number,
     and/or Taxpayer Identification Number of trust beneficiary, from the
     creation of the trust through December 31, 2017;

f.   All documents identifying the assets and/or property transferred to
     the trust, from the creation of the trust through December 31, 2017;

g.   All documents related to financial accounts in the name of the trust,
     including statements, wire transfers, canceled checks, and deposit
     slips, for the summons period;

h.   All documents related to the distribution of trust income and/or
     corpus;

i.   All documents related to the acquisition, use, or disposition of all
     trust assets, regardless of date;

j.   All documents related to all loans obtained by the trust, including
     disbursement of loan proceeds, repayment schedules, and
     payments of loan principal and interest; and

k.   All other documents related to the trust, regardless of any purported
     legal effect, including amendments, regardless of date.

## Instructions for Production of Electronically Stored Records

If the records requested herein are stored in your record retention systems
and/or by your technology, data, or other service providers, they should be produced on
electronic media according to the following criteria:

I.   Text Data
     A.   Text data relating to transactions shall be produced within a data file:
          1.   Using a delimited ASCII text data format; or
          2.   Using software that can export to a commonly readable, nonproprietary
               file format without loss of data.
          3.   If text data is stored in a format readable only by proprietary software,
               provide a copy of software necessary to enable the data to be retrieved,
               manipulated, and processed by a computer.
     B.   Text data files relating to transactions shall include field descriptions (e.g.,
          account number, date/time, description, payee/payor, check number, item
          identifier, amount, etc.).

In the Matter of Tax Liability of John Does
Attachment to Form 2039 Summons to
Kevin W. Wessell

II. Image Data
    A. Image data shall be produced in graphic data files in a commonly readable, nonproprietary format with the highest image quality maintained.
    B. Image data of items associated with transactions (e.g., cancelled checks, deposit slips, etc.) shall be:
        1. Produced in individual graphic data files with any associated endorsements;
        2. Linked to corresponding text data by a unique identifier; and
        3. Image collections, OCR (optical character recognition), and image linking files must be produced in a Concordance load-ready format, ideally in a Concordance database.

III. Encryption/Authentication
    A. Electronically stored records may be transmitted in an encrypted container. Decryption keys and/or passwords shall be produced separately at the time the data is produced.
    B. Authentication, such as hash coding, may be set by agreement.
    C. Affidavits or certificates of authenticity for the records may be included as part of the electronic production.

    If you have questions about the format in which to provide electronic data, please contact Revenue Agent Karen Cincotta by telephone at (636) 255-1319.

    Before producing any of the above-listed records, please contact Revenue Agent Karen Cincotta by telephone at (636) 255-1319 to discuss the terms of compliance.

    The personal appearance requirement is waived when the requested information is furnished by mail to Revenue Agent Karen Cincotta at 24000 Avila Road: M/S 6013 - Cincotta, Laguna Niguel, CA 92677.

# Exhibit E



# Service of Summons, Notice and Recordkeeper Certificates

**(Pursuant to section 7603, Internal Revenue Code)**

I certify that I served the summons shown on the front of this form on:

| Date | Time |
|------|------|
| 09/26/2018 | 1:00 pm |

**How Summons Was Served**

1. ☒ I certify that I handed a copy of the summons, which contained the attestation required by § 7603, to the person to whom it was directed.

2. ☐ I certify that I left a copy of the summons, which contained the attestation required by § 7603, at the last and usual place of abode of the person to whom it was directed. I left the copy with the following person (if any): _____

3. ☐ I certify that I sent a copy of the summons, which contained the attestation required by § 7603, by certified or registered mail to the last known address of the person to whom it was directed, that person being a third-party recordkeeper within the meaning of § 7603(b). I sent the summons to the following address: Kevin W. Wessell
10370 Cameilla St, Parkland, FL 33076

| Signature | Title |
|-----------|-------|
| (signature) | Revenue Agent |

4. This certificate is made to show compliance with IRC Section 7609. This certificate does not apply to summonses served on any officer or employee of the person to whose liability the summons relates nor to summonses in aid of collection, to determine the identity of a person having a numbered account or similar arrangement, or to determine whether or not records of the business transactions or affairs of an Identified person have been made or kept.

I certify that, within 3 days of serving the summons, I gave notice (Part D of Form 2039) to the person named below on the date and in the manner indicated.

Date of giving Notice: _____  Time: _____

Name of Noticee: _____

Address of Noticee (if mailed): _____

**How Notice Was Given**

☐ I gave notice by certified or registered mail to the last known address of the noticee.

☐ I left the notice at the last and usual place of abode of the noticee. I left the copy with the following person (if any).

☐ I gave notice by handing it to the noticee.

☐ In the absence of a last known address of the noticee, I left the notice with the person summoned.

☒ No notice is required.

| Signature | Title |
|-----------|-------|
| | |

I certify that the period prescribed for beginning a proceeding to quash this summons has expired and that no such proceeding was instituted or that the noticee consents to the examination.

| Signature | Title |
|-----------|-------|
| | |

Form 2039 (Rev. 10-2010)

# Summons

In the matter of  Tax Liability of John Does*

Internal Revenue Service (Division):  Large Business & International Division

Industry/Area (name or number):  Withholding & International Individual Compliance

Periods: Years ending 12/31/2012 through 12/31/2017

## The Commissioner of Internal Revenue

To:  Kevin W. Wessell

At: ~~10370 Camellia St, Parkland, FL 33076~~ 4411 NE 26th Ave, Lighthouse Point, FL 3306A

You are hereby summoned and required to appear before  Revenue Agent Karen Cincotta or Designee
an officer of the Internal Revenue Service, to give testimony and to bring with you and to produce for examination the following books, records, papers, and other data relating to the tax liability or the collection of the tax liability or for the purpose of inquiring into any offense connected with the administration or enforcement of the internal revenue laws concerning the person identified above for the periods shown.

See attachment

* "JOHN DOES", United States taxpayers who, at any time during the years ended December 31, 2012, through December 31, 2017, used the services of the Wessell Group or its predecessors, subsidiaries, divisions, affiliates, or website domains (collectively, the "Wessell Group") to establish, maintain, operate, or control: any foreign financial account or other asset; any foreign corporation, company, trust, foundation, or other legal entity; or any foreign or domestic financial account or other asset in the name of a foreign entity.

## Attestation

I hereby certify that I have examined and compared this copy of the summons with the original and that it is a true and correct copy of the original.

_Signature_   _Revenue Agent_

Signature of IRS officer serving the summons            Title

Business address and telephone number of IRS officer before whom you are to appear:

1122 Town & Country Commons, Chesterfield, MO 63017; Telephone: (636) 255-1319

Place and time for appearance at  Internal Revenue Service, 7850 SW 6th Court, Plantation, FL 33324-3202

# IRS

on the    26th    day of    October    , 2018   at   10:00    o'clock   a   m.
                                              (year)
Issued under authority of the Internal Revenue Code this  26th  day of    September    ,  2018
                                                                                          (year)

Department of the Treasury
Internal Revenue Service

_Bryan Stiernagle_            Program Manager

www.irs.gov          Signature of issuing officer                      Title

Form 2039 (Rev. 10-2010)          Signature of approving officer (if applicable)          Title

Catalog Number 21405J

Part A - to be given to person summoned

# Exhibit F

| Name | Documents with hits | Documents with hits, including group | Last run time |
|---|---|---|---|
| Abbadess | 0 | 0 | 5/4/2020 16:46 |
| Acheampong | 0 | 0 | 5/4/2020 16:46 |
| Agzamov | 0 | 0 | 5/4/2020 16:46 |
| Alkass | 0 | 0 | 5/4/2020 16:46 |
| Altergott | 0 | 0 | 5/4/2020 16:46 |
| Amanda w/3 Woodland | 0 | 0 | 5/4/2020 16:53 |
| Amston | 0 | 0 | 5/4/2020 16:46 |
| Amyw/3 Williamson | 0 | 0 | 5/4/2020 16:53 |
| Aquanetta w/3 Davis | 0 | 0 | 5/4/2020 16:53 |
| Bankstron | 0 | 0 | 5/4/2020 16:46 |
| Bartoloso | 0 | 0 | 5/4/2020 16:46 |
| Beloushi | 0 | 0 | 5/4/2020 16:46 |
| Benevides | 0 | 0 | 5/4/2020 16:46 |
| Bercescu | 0 | 0 | 5/4/2020 16:46 |
| Bhise | 0 | 0 | 5/4/2020 16:47 |
| Bih-Shiung Chen | 0 | 0 | 5/4/2020 16:52 |
| Bitner | 0 | 0 | 5/4/2020 16:47 |
| Bookhelm | 0 | 0 | 5/4/2020 16:47 |
| Bradley w/3 Morgan | 0 | 0 | 5/4/2020 16:53 |
| Bradley w/3 Nelson | 0 | 0 | 5/4/2020 16:53 |
| Brazhnyk | 0 | 0 | 5/4/2020 16:47 |
| Brisefio | 0 | 0 | 5/4/2020 16:47 |
| Calvin w/3 Turner | 0 | 0 | 5/4/2020 16:53 |
| Chetty | 0 | 0 | 5/4/2020 16:47 |
| Christopher w/3 Ott | 0 | 0 | 5/4/2020 16:53 |
| Circulli | 0 | 0 | 5/4/2020 16:47 |

| | | | |
|---|---|---|---|
| Claude w/3 Joseph | 0 | 0 | 5/4/2020 16:53 |
| Clinton w/3 Brown | 0 | 0 | 5/4/2020 16:52 |
| Colton w/3 Story | 0 | 0 | 5/4/2020 16:53 |
| Darin w/3 Anderson | 0 | 0 | 5/4/2020 16:52 |
| Daskaleas | 0 | 0 | 5/4/2020 16:47 |
| Debettencourt | 0 | 0 | 5/4/2020 16:47 |
| Derek w/3 Campbell | 0 | 0 | 5/4/2020 16:52 |
| DiLeonardo | 0 | 0 | 5/4/2020 16:47 |
| Dobrauc | 0 | 0 | 5/4/2020 16:47 |
| Domatti | 0 | 0 | 5/4/2020 16:47 |
| Dubonn | 0 | 0 | 5/4/2020 16:47 |
| Enikeev | 0 | 0 | 5/4/2020 16:47 |
| Eversman | 0 | 0 | 5/4/2020 16:47 |
| Fryatt | 0 | 0 | 5/4/2020 16:47 |
| Furuta | 0 | 0 | 5/4/2020 16:47 |
| Galde | 0 | 0 | 5/4/2020 16:47 |
| Hanna w/3 Cohen | 0 | 0 | 5/4/2020 16:52 |
| He | 0 | 0 | 5/4/2020 16:47 |
| Hinchey | 0 | 0 | 5/4/2020 16:47 |
| Hodgins | 0 | 0 | 5/4/2020 16:47 |
| Hugh w/3 Jones | 0 | 0 | 5/4/2020 16:53 |
| Ilona w/3 Cherry | 0 | 0 | 5/4/2020 16:52 |
| Jarrie | 0 | 0 | 5/4/2020 16:47 |
| Jason w/3j Cox | 0 | 0 | 5/4/2020 16:53 |
| Juliet w/3 morris | 0 | 0 | 5/4/2020 16:53 |
| Kalabovda | 0 | 0 | 5/4/2020 16:47 |
| Karakaya | 0 | 0 | 5/4/2020 16:47 |
| Karvchencko | 0 | 0 | 5/4/2020 16:47 |
| Kaska | 0 | 0 | 5/4/2020 16:47 |
| Kazaz | 0 | 0 | 5/4/2020 16:47 |
| Kevin w/3 Sheridan | 0 | 0 | 5/4/2020 16:53 |
| Khanukaev | 0 | 0 | 5/4/2020 16:47 |

| | | | |
|---|---|---|---|
| Khurshid | 0 | 0 | 5/4/2020 16:47 |
| Kiyasko | 0 | 0 | 5/4/2020 16:47 |
| Knight w/3 Chen | 0 | 0 | 5/4/2020 16:52 |
| Komova | 0 | 0 | 5/4/2020 16:47 |
| Krapukaityle | 0 | 0 | 5/4/2020 16:47 |
| Kregg w/3Johnson | 0 | 0 | 5/4/2020 16:53 |
| Kruszewski | 0 | 0 | 5/4/2020 16:47 |
| Kuo w/3 Yang | 0 | 0 | 5/4/2020 16:53 |
| Laszio | 0 | 0 | 5/4/2020 16:47 |
| Leah w/3 Cox | 0 | 0 | 5/4/2020 16:53 |
| Linda w/3 Leo | 0 | 0 | 5/4/2020 16:53 |
| Liora w/3 Wall | 0 | 0 | 5/4/2020 16:53 |
| Livi w/3 Moreno | 0 | 0 | 5/4/2020 16:53 |
| Lobdell w/3 Brown | 0 | 0 | 5/4/2020 16:52 |
| Lockamy | 0 | 0 | 5/4/2020 16:47 |
| Lori w/3 Anderson | 0 | 0 | 5/4/2020 16:52 |
| Malparpida | 0 | 0 | 5/4/2020 16:47 |
| Malpatida | 0 | 0 | 5/4/2020 16:47 |
| Mandelcom | 0 | 0 | 5/4/2020 16:47 |
| Mayorguin | 0 | 0 | 5/4/2020 16:47 |
| Megar | 0 | 0 | 5/4/2020 16:47 |
| Mirbod | 0 | 0 | 5/4/2020 16:47 |
| Molly w/3 Chen | 0 | 0 | 5/4/2020 16:52 |
| More | 0 | 0 | 5/4/2020 16:47 |
| Naor | 0 | 0 | 5/4/2020 16:47 |
| Nethery | 0 | 0 | 5/4/2020 16:47 |
| Oilveira | 0 | 0 | 5/4/2020 16:47 |
| Oilveri | 0 | 0 | 5/4/2020 16:47 |
| Oyjeko | 0 | 0 | 5/4/2020 16:47 |
| Pereiras | 0 | 0 | 5/4/2020 16:52 |
| Perex | 0 | 0 | 5/4/2020 16:52 |
| Popkins | 0 | 0 | 5/4/2020 16:52 |

| | | | |
|---|---|---|---|
| R Scott w/3 Wells | 0 | 0 | 5/4/2020 16:53 |
| Radula | 0 | 0 | 5/4/2020 16:52 |
| Ramdaval | 0 | 0 | 5/4/2020 16:52 |
| Rivadeneita | 0 | 0 | 5/4/2020 16:52 |
| Rosebury | 0 | 0 | 5/4/2020 16:52 |
| Rubanov | 0 | 0 | 5/4/2020 16:52 |
| Ryan w/3 Henry | 0 | 0 | 5/4/2020 16:53 |
| Said | 0 | 0 | 5/4/2020 16:52 |
| Selhofer | 0 | 0 | 5/4/2020 16:52 |
| Shea w/3 Lee | 0 | 0 | 5/4/2020 16:53 |
| Stawinksi | 0 | 0 | 5/4/2020 16:52 |
| Suillivan | 0 | 0 | 5/4/2020 16:52 |
| Taglialpietra | 0 | 0 | 5/4/2020 16:52 |
| TC w/3 Lee | 0 | 0 | 5/4/2020 16:53 |
| Tlatonova | 0 | 0 | 5/4/2020 16:52 |
| Vandivier | 0 | 0 | 5/4/2020 16:52 |
| Vickram w/3 Singh | 0 | 0 | 5/4/2020 16:53 |
| Wyne w/3 Chen | 0 | 0 | 5/4/2020 16:52 |
| Zhoushan w/3 Tan | 0 | 0 | 5/4/2020 16:53 |

# Exhibit G

| Name | Documents with hits | Documents with hits, *including family group* | Last run time |
|---|---|---|---|
| 16 Sunshine & Beaches | 0 | 0 | 5/1/2020 10:49 |
| 16 Sunshine&Beaches | 0 | 0 | 5/1/2020 10:52 |
| 28Ten 1 | 0 | 0 | 5/1/2020 10:49 |
| 4A & K Investments | 0 | 0 | 5/1/2020 10:49 |
| 90888 Financial Serivces Company | 0 | 0 | 5/1/2020 10:49 |
| 90888 Financial Service Co | 0 | 0 | 5/1/2020 10:49 |
| A & A Global | 0 | 0 | 5/1/2020 10:49 |
| A & J Laboratories | 0 | 0 | 5/1/2020 10:49 |
| A.C.A. Advisors Services | 0 | 0 | 5/1/2020 10:49 |
| ABC Marketing | 0 | 0 | 5/1/2020 10:49 |
| Acccepted Financial Company | 0 | 0 | 5/1/2020 10:49 |
| Access Holding Group | 0 | 0 | 5/1/2020 10:49 |
| Ace Business Holding Intl Group | 0 | 0 | 5/1/2020 10:49 |
| Ace Business Holdings Intl Group | 0 | 0 | 5/1/2020 10:49 |
| Ace Mgmt Group | 0 | 0 | 5/1/2020 10:49 |
| Achiles Management | 0 | 0 | 5/1/2020 10:52 |
| Achiles Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Adams & Morris | 0 | 0 | 5/1/2020 10:49 |
| Addvisors Design & Consulting | 0 | 0 | 5/1/2020 10:49 |
| Advanced Research Institute | 0 | 0 | 5/1/2020 10:49 |
| Ad-ventres | 0 | 0 | 5/1/2020 10:52 |
| Ad-ventres 4 U | 0 | 0 | 5/1/2020 10:49 |
| Advisors Design & Consulting | 0 | 0 | 5/1/2020 10:49 |
| Advisors Design&Consulting | 0 | 0 | 5/1/2020 10:52 |
| Affiliate Media Parners | 0 | 0 | 5/1/2020 10:49 |
| Africian American and American Indian | 0 | 0 | 5/1/2020 10:49 |
| Agent Management Group | 0 | 0 | 5/1/2020 10:49 |
| Agile Poet LCL | 0 | 0 | 5/1/2020 10:49 |
| AGMS Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Agro Tech Kingdon | 0 | 0 | 5/1/2020 10:49 |

| | | |
|---|---|---|
| AgroTech Kimgdom | 0 | 0 | 5/1/2020 10:49 |
| Aircraft Asset Mgmt Group | 0 | 0 | 5/1/2020 10:49 |
| Alfa Investments | 0 | 0 | 5/1/2020 10:52 |
| Alfa Investments Fond | 0 | 0 | 5/1/2020 10:49 |
| Alfa Noite | 0 | 0 | 5/1/2020 10:52 |
| Alfa Noite Consulting Group | 0 | 0 | 5/1/2020 10:49 |
| Alian lamas | 0 | 0 | 5/1/2020 10:49 |
| Allendevaux & Company | 0 | 0 | 5/1/2020 10:49 |
| Alpha Nolte | 0 | 0 | 5/1/2020 10:52 |
| Alpha Nolte Consulting Group | 0 | 0 | 5/1/2020 10:49 |
| Alpha Star Etnerprises | 0 | 0 | 5/1/2020 10:49 |
| Alpha Star Holdings | 0 | 0 | 5/1/2020 10:49 |
| Alpha Star Inv | 0 | 0 | 5/1/2020 10:49 |
| Alpha Star Investment | 0 | 0 | 5/1/2020 10:52 |
| Alpin Mgmt Partners | 0 | 0 | 5/1/2020 10:49 |
| Alyssa & Will | 0 | 0 | 5/1/2020 10:49 |
| Amab Holdings & Investments | 0 | 0 | 5/1/2020 10:49 |
| Ambrose & Keith | 0 | 0 | 5/1/2020 10:49 |
| American Mobile Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Ana Services | 0 | 0 | 5/1/2020 10:49 |
| Anastasis Group Archive Holdings | 0 | 0 | 5/1/2020 10:49 |
| Aneek & Astahama A&A | 0 | 0 | 5/1/2020 10:49 |
| Anker & Solii | 0 | 0 | 5/1/2020 10:49 |
| Anker & Solli | 0 | 0 | 5/1/2020 10:49 |
| Anker&Solii | 0 | 0 | 5/1/2020 10:52 |
| Apeiron Global Serices | 0 | 0 | 5/1/2020 10:49 |
| Aperion Global Services | 0 | 0 | 5/1/2020 10:49 |
| April One and Sith Life | 0 | 0 | 5/1/2020 10:49 |
| APTG Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Aquarius Investment IBC | 0 | 0 | 5/1/2020 10:49 |
| Archimedes Intl | 0 | 0 | 5/1/2020 10:49 |
| Argent Mgmt Group | 0 | 0 | 5/1/2020 10:49 |
| Argila | 0 | 0 | 5/1/2020 10:52 |
| Argila Associates | 0 | 0 | 5/1/2020 10:49 |
| ARK Trust | 0 | 0 | 5/1/2020 10:49 |
| Arnold Daniels PhD | 0 | 0 | 5/1/2020 10:49 |
| Asian Pacific Capital | 0 | 0 | 5/1/2020 10:52 |
| Asian Pacific Capital Management | 0 | 0 | 5/1/2020 10:49 |

| | | | |
|---|---|---|---|
| Atkins Office Personnel Services | 0 | 0 | 5/1/2020 10:49 |
| Atkins Office Program | 0 | 0 | 5/1/2020 10:49 |
| Atlas Admin | 0 | 0 | 5/1/2020 10:49 |
| Austin Ave Holdings | 0 | 0 | 5/1/2020 10:49 |
| Authentic Sales & Service | 0 | 0 | 5/1/2020 10:49 |
| Autin Avenue Holdings | 0 | 0 | 5/1/2020 10:49 |
| Automakers Protection Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Axiom Limited | 0 | 0 | 5/1/2020 10:49 |
| Axzel Mrketing Solutions | 0 | 0 | 5/1/2020 10:49 |
| Baker Holdings Trust | 0 | 0 | 5/1/2020 10:49 |
| Balam Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Balam Mgmt Group | 0 | 0 | 5/1/2020 10:49 |
| BAR Industries | 0 | 0 | 5/1/2020 10:49 |
| Barataza International | 0 | 0 | 5/1/2020 10:52 |
| Barataza Intl | 0 | 0 | 5/1/2020 10:49 |
| BBLS | 0 | 0 | 5/1/2020 10:49 |
| BC Holdings & Investments | 0 | 0 | 5/1/2020 10:49 |
| BCJJO | 0 | 0 | 5/1/2020 10:49 |
| BCMS Smart Investments Glabal | 0 | 0 | 5/1/2020 10:49 |
| Beauty Drama | 0 | 0 | 5/1/2020 10:49 |
| Bele Venture Parners | 0 | 0 | 5/1/2020 10:49 |
| Bentley Global Grup | 0 | 0 | 5/1/2020 10:49 |
| BentWater Captial | 0 | 0 | 5/1/2020 10:49 |
| Beore Financeial | 0 | 0 | 5/1/2020 10:49 |
| Bethany Investments Group | 0 | 0 | 5/1/2020 10:49 |
| Betta Spendens | 0 | 0 | 5/1/2020 10:49 |
| Bidwithintegritycom | 0 | 0 | 5/1/2020 10:49 |
| BitAmex | 0 | 0 | 5/1/2020 10:49 |
| Blackridge | 0 | 0 | 5/1/2020 10:49 |
| Blue Bonnet Holdings | 0 | 0 | 5/1/2020 10:49 |
| Blue Group Holdings | 0 | 0 | 5/1/2020 10:51 |
| Blue Print Group LC | 0 | 0 | 5/1/2020 10:49 |
| Blue Sky Investments | 0 | 0 | 5/1/2020 10:49 |
| BMG Holdings trust | 0 | 0 | 5/1/2020 10:49 |
| BMG Management Trust | 0 | 0 | 5/1/2020 10:49 |
| Bo & Co | 0 | 0 | 5/1/2020 10:49 |
| BOG Group | 0 | 0 | 5/1/2020 10:49 |
| Boost Magic Frame | 0 | 0 | 5/1/2020 10:49 |
| Boulevard Cas | 0 | 0 | 5/1/2020 10:49 |
| Bourret Glass & Upholstery | 0 | 0 | 5/1/2020 10:49 |

| | | | |
|---|---|---|---|
| Brazilian Churascaria of King of Prussia | 0 | 0 | 5/1/2020 10:49 |
| Breckendal Investments | 0 | 0 | 5/1/2020 10:49 |
| Bright Eyes Intl | 0 | 0 | 5/1/2020 10:49 |
| Broad Street Wealth Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Broadway Foundation | 0 | 0 | 5/1/2020 10:51 |
| Brockway & Assoc | 0 | 0 | 5/1/2020 10:49 |
| Brockway & Associates | 0 | 0 | 5/1/2020 10:49 |
| Brockway&Assoc | 0 | 0 | 5/1/2020 10:52 |
| BT Mgmt Group | 0 | 0 | 5/1/2020 10:49 |
| Buildingsreports Latin America SRL | 0 | 0 | 5/1/2020 10:49 |
| Business Holdings Intl Group | 0 | 0 | 5/1/2020 10:49 |
| Butler Enterprises | 0 | 0 | 5/1/2020 10:49 |
| Butter Stores | 0 | 0 | 5/1/2020 10:49 |
| BVI Coprs | 0 | 0 | 5/1/2020 10:49 |
| C & G Enterprses | 0 | 0 | 5/1/2020 10:49 |
| C & R International Trading | 0 | 0 | 5/1/2020 10:49 |
| C&G Enterprses | 0 | 0 | 5/1/2020 10:52 |
| C&R International Trading | 0 | 0 | 5/1/2020 10:52 |
| Cadenza Co | 0 | 0 | 5/1/2020 10:49 |
| CAFGW | 0 | 0 | 5/1/2020 10:49 |
| Call Center Intl | 0 | 0 | 5/1/2020 10:49 |
| Calvin Capital - 2 years | 0 | 0 | 5/1/2020 10:49 |
| Capital Acquistion Leasing | 0 | 0 | 5/1/2020 10:49 |
| Carbon Commoditites Group | 0 | 0 | 5/1/2020 10:49 |
| Carubbean Business Development | 0 | 0 | 5/1/2020 10:49 |
| Castlewealth Investment | 0 | 0 | 5/1/2020 10:49 |
| Catalyst Intl Services | 0 | 0 | 5/1/2020 10:49 |
| Cavalier Investments & Acquisitions | 0 | 0 | 5/1/2020 10:49 |
| CC Investments Group | 0 | 0 | 5/1/2020 10:49 |
| CFS Asset Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Champion Bike Components | 0 | 0 | 5/1/2020 10:49 |
| Chaucey Gardner Investments | 0 | 0 | 5/1/2020 10:49 |
| Chaucey Gardner Investments LP | 0 | 0 | 5/1/2020 10:49 |
| Chauncey Gardner Mgmt | 0 | 0 | 5/1/2020 10:49 |

| | | | |
|---|---|---|---|
| Chauncey Gardnet Management | 0 | 0 | 5/1/2020 10:52 |
| Chauncey Gardnet Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Christopher Consulting Company | 0 | 0 | 5/1/2020 10:49 |
| Chrysus | 0 | 0 | 5/1/2020 10:49 |
| Churchhill S. Rhodes | 0 | 0 | 5/1/2020 10:49 |
| Cody International | 0 | 0 | 5/1/2020 10:49 |
| Collaborative Techonolgy Holdings | 0 | 0 | 5/1/2020 10:49 |
| CollBonn Jaxen Trust | 0 | 0 | 5/1/2020 10:49 |
| Collin Group Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Coltrane Ewing 14-15 | 0 | 0 | 5/1/2020 10:49 |
| Comisoft | 0 | 0 | 5/1/2020 10:49 |
| Compliant Dealer | 0 | 0 | 5/1/2020 10:49 |
| Compliant Dialter | 0 | 0 | 5/1/2020 10:49 |
| Conference Meeting Partners | 0 | 0 | 5/1/2020 10:49 |
| Conshohocken Waste & Recycling Consulting | 0 | 0 | 5/1/2020 10:49 |
| Constitutional Property Holdings | 0 | 0 | 5/1/2020 10:49 |
| Construction Specialties & Supply | 0 | 0 | 5/1/2020 10:49 |
| Consulting Intl Advisors Group | 0 | 0 | 5/1/2020 10:49 |
| CoPiolot Global | 0 | 0 | 5/1/2020 10:49 |
| Corporate Credit Program Superior Credit Lending | 0 | 0 | 5/1/2020 10:49 |
| Cosmic Glabal Investments | 0 | 0 | 5/1/2020 10:49 |
| Cotrane Ewing | 0 | 0 | 5/1/2020 10:49 |
| Creative Bell Taylor and Associates | 0 | 0 | 5/1/2020 10:49 |
| Creative Capital Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Creative Legeacy | 0 | 0 | 5/1/2020 10:49 |
| Creative xxx | 0 | 0 | 5/1/2020 10:49 |
| Csaa Andina Properties | 0 | 0 | 5/1/2020 10:49 |
| Curly Inv | 0 | 0 | 5/1/2020 10:49 |
| DA Enterprises | 0 | 0 | 5/1/2020 10:49 |
| Dafahadah Global | 0 | 0 | 5/1/2020 10:49 |
| DAK Assoiates | 0 | 0 | 5/1/2020 10:49 |
| DApecks Services | 0 | 0 | 5/1/2020 10:49 |
| Deca Aloe Arborescens Intl | 0 | 0 | 5/1/2020 10:49 |
| Deep See Ineternational | 0 | 0 | 5/1/2020 10:49 |

| | | | |
|---|---|---|---|
| Deep See Intl | 0 | 0 | 5/1/2020 10:49 |
| DGW | 0 | 0 | 5/1/2020 10:49 |
| Direct Services Mgmt | 0 | 0 | 5/1/2020 10:49 |
| Dirrecktor Themal Sciences International | 0 | 0 | 5/1/2020 10:49 |
| Diversified Holdings Intl | 0 | 0 | 5/1/2020 10:49 |
| Dominion Capital | 0 | 0 | 5/1/2020 10:49 |
| Dovkway Group | 0 | 0 | 5/1/2020 10:49 |
| DPiCo Intl | 0 | 0 | 5/1/2020 10:49 |
| Dragon Intl Escrow | 0 | 0 | 5/1/2020 10:49 |
| Duland | 0 | 0 | 5/1/2020 10:49 |
| Dulane Copr | 0 | 0 | 5/1/2020 10:49 |
| E & G Int'l Group | 0 | 0 | 5/1/2020 10:49 |
| E&S Holdings & investments | 0 | 0 | 5/1/2020 10:49 |
| Earl & La Marr | 0 | 0 | 5/1/2020 10:49 |
| East Atlantic Eind Holdings | 0 | 0 | 5/1/2020 10:49 |
| East Caribbean Finacial Services | 0 | 0 | 5/1/2020 10:49 |
| Edgepoint Group Intl | 0 | 0 | 5/1/2020 10:49 |
| Elements Global (Credit on Account) | 0 | 0 | 5/1/2020 10:49 |
| EME Marketing | 0 | 0 | 5/1/2020 10:49 |
| Empire State Hodlings | 0 | 0 | 5/1/2020 10:49 |
| Englise Spinners | 0 | 0 | 5/1/2020 10:49 |
| EOC Oil & Gas | 0 | 0 | 5/1/2020 10:49 |
| EP & H Enterprises | 0 | 0 | 5/1/2020 10:49 |
| ER&H Enterprises | 0 | 0 | 5/1/2020 10:50 |
| European Investments Group | 0 | 0 | 5/1/2020 10:50 |
| Evergreen Holdings | 0 | 0 | 5/1/2020 10:50 |
| F1 Group | 0 | 0 | 5/1/2020 10:52 |
| F1 Group UK | 0 | 0 | 5/1/2020 10:50 |
| Fair Escrow & Clearing | 0 | 0 | 5/1/2020 10:50 |
| FAIR Escrow& learing | 0 | 0 | 5/1/2020 10:52 |
| Farflung Ent | 0 | 0 | 5/1/2020 10:50 |
| Fari Escrow & Clearing | 0 | 0 | 5/1/2020 10:50 |
| Fari Escrow&Clearing | 0 | 0 | 5/1/2020 10:52 |
| Fast Efunds | 0 | 0 | 5/1/2020 10:50 |
| Fice Loaves and Two Fish | 0 | 0 | 5/1/2020 10:50 |
| Fields Enterprise | 0 | 0 | 5/1/2020 10:50 |
| Finanziaria Consolidation Solia | 0 | 0 | 5/1/2020 10:50 |
| Finaziaria Consolodation Socia | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| FINNIAN EBUEHI ELIZABETH EBUEH | 0 | 0 | 5/1/2020 10:50 |
| Five Loaves & Two Fish | 0 | 0 | 5/1/2020 10:50 |
| Five Starr Intl | 0 | 0 | 5/1/2020 10:50 |
| Florida Holdings & Investments | 0 | 0 | 5/1/2020 10:50 |
| Florida Trust Management | 0 | 0 | 5/1/2020 10:52 |
| Florida Trust Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Florida Wildlife Assoiation | 0 | 0 | 5/1/2020 10:50 |
| Focus Dist | 0 | 0 | 5/1/2020 10:50 |
| Food Research International LCL | 0 | 0 | 5/1/2020 10:50 |
| Food Research Intl | 0 | 0 | 5/1/2020 10:50 |
| Fountain & Justice Global Enterprise | 0 | 0 | 5/1/2020 10:50 |
| Four K Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Fractional Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Frailis Int | 0 | 0 | 5/1/2020 10:50 |
| Frailis International | 0 | 0 | 5/1/2020 10:52 |
| Franctional Life | 0 | 0 | 5/1/2020 10:50 |
| Francional Life Beneficial | 0 | 0 | 5/1/2020 10:50 |
| FTR Processing | 0 | 0 | 5/1/2020 10:50 |
| FTS Internaitonal Solutions | 0 | 0 | 5/1/2020 10:50 |
| Furimus Commercial Advisors | 0 | 0 | 5/1/2020 10:50 |
| FXVIP Services | 0 | 0 | 5/1/2020 10:50 |
| G & B Holdings | 0 | 0 | 5/1/2020 10:50 |
| G & V Global Consulting | 0 | 0 | 5/1/2020 10:50 |
| Gaskill Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Gaskill Mgmt Group | 0 | 0 | 5/1/2020 10:50 |
| Gavib Investments | 0 | 0 | 5/1/2020 10:50 |
| GB Investments Capitla | 0 | 0 | 5/1/2020 10:50 |
| General Mgmt Services | 0 | 0 | 5/1/2020 10:50 |
| GFB Business Capital | 0 | 0 | 5/1/2020 10:50 |
| Global Aset Holdings | 0 | 0 | 5/1/2020 10:50 |
| Global Asset Financial Management | 0 | 0 | 5/1/2020 10:52 |
| Global Asset Financial Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Global Asset Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Global Commodities Trading & Partners | 0 | 0 | 5/1/2020 10:50 |
| Global Energy Resource Consultatns | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| Global holding Enterprise | 0 | 0 | 5/1/2020 10:50 |
| Global Holdings Intl | 0 | 0 | 5/1/2020 10:50 |
| Global Intl Bebidas | 0 | 0 | 5/1/2020 10:50 |
| Global Intl Ventures | 0 | 0 | 5/1/2020 10:50 |
| Global Management & Investment | 0 | 0 | 5/1/2020 10:50 |
| Global Power & Infrastructure | 0 | 0 | 5/1/2020 10:50 |
| Global Solutions Captial | 0 | 0 | 5/1/2020 10:50 |
| Global Suppression & Survellance | 0 | 0 | 5/1/2020 10:50 |
| Global Suppression&Survellance | 0 | 0 | 5/1/2020 10:52 |
| Global Trading & Consulting Services | 0 | 0 | 5/1/2020 10:50 |
| Globat Trading & Consulting | 0 | 0 | 5/1/2020 10:50 |
| Globat Trading&Consulting | 0 | 0 | 5/1/2020 10:52 |
| Golden State Unic | 0 | 0 | 5/1/2020 10:50 |
| Golden State Univ | 0 | 0 | 5/1/2020 10:50 |
| Golden View Investment | 0 | 0 | 5/1/2020 10:50 |
| Goldenstate Univ | 0 | 0 | 5/1/2020 10:50 |
| Goldenwest University | 0 | 0 | 5/1/2020 10:50 |
| Goldern State Univ | 0 | 0 | 5/1/2020 10:50 |
| Golestan Family & Company | 0 | 0 | 5/1/2020 10:50 |
| Govard | 0 | 0 | 5/1/2020 10:50 |
| GowaniHeitmannWebber Investors | 0 | 0 | 5/1/2020 10:50 |
| Grace & Salvation | 0 | 0 | 5/1/2020 10:50 |
| Grand Assets Investments | 0 | 0 | 5/1/2020 10:50 |
| Grapkoski Holdings Trust | 0 | 0 | 5/1/2020 10:50 |
| Great Panda Holsings Limited | 0 | 0 | 5/1/2020 10:50 |
| Green River Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Greenwood Hodlings Group | 0 | 0 | 5/1/2020 10:50 |
| Gruppo Campo Di Gloe | 0 | 0 | 5/1/2020 10:50 |
| Gryphon I Holding | 0 | 0 | 5/1/2020 10:50 |
| Gryphon Mgmt Group | 0 | 0 | 5/1/2020 10:50 |
| Guardian Intl Group | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| H & H Investment Holdings | 0 | 0 | 5/1/2020 10:50 |
| Hadifield Interest | 0 | 0 | 5/1/2020 10:50 |
| HALOLO Assocaites | 0 | 0 | 5/1/2020 10:50 |
| Halstead Preston & Ford LP | 0 | 0 | 5/1/2020 10:50 |
| Health Net Systems Intl | 0 | 0 | 5/1/2020 10:50 |
| Hedi Shipping | 0 | 0 | 5/1/2020 10:50 |
| Heltos Investment Company Limited | 0 | 0 | 5/1/2020 10:50 |
| Heman | 0 | 0 | 5/1/2020 10:50 |
| Hevenly Management | 0 | 0 | 5/1/2020 10:50 |
| Higher Learning Education | 0 | 0 | 5/1/2020 10:50 |
| Hings & Associates | 0 | 0 | 5/1/2020 10:50 |
| Honey Dadger | 0 | 0 | 5/1/2020 10:50 |
| Horizon Cpaital Ventures | 0 | 0 | 5/1/2020 10:50 |
| Howard Multimodal Dev | 0 | 0 | 5/1/2020 10:50 |
| HSNI Holding Group | 0 | 0 | 5/1/2020 10:50 |
| Huntington Capital Mgmt | 0 | 0 | 5/1/2020 10:50 |
| I Wanna be a star | 0 | 0 | 5/1/2020 10:50 |
| ICO2FM | 0 | 0 | 5/1/2020 10:50 |
| IETECH Solution Import & Export | 0 | 0 | 5/1/2020 10:50 |
| Image in Mind Printing & Graphics | 0 | 0 | 5/1/2020 10:50 |
| Inca Anker & Soli | 0 | 0 | 5/1/2020 10:50 |
| Inca Anker&Soli | 0 | 0 | 5/1/2020 10:52 |
| Inception Group | 0 | 0 | 5/1/2020 10:50 |
| Industrial Equipments & Attachments | 0 | 0 | 5/1/2020 10:50 |
| Inlt Finance | 0 | 0 | 5/1/2020 10:50 |
| Inlt Tourism Services | 0 | 0 | 5/1/2020 10:50 |
| Integral Management IMI Productions | 0 | 0 | 5/1/2020 10:50 |
| Integrated Logistics Services (ILS) | 0 | 0 | 5/1/2020 10:50 |
| Intellectual Property Mgmt Services Intl LTD | 0 | 0 | 5/1/2020 10:50 |
| Intellignet Virual Agents | 0 | 0 | 5/1/2020 10:50 |
| Interbrokers - Simon & Simon Ravicorp | 0 | 0 | 5/1/2020 10:50 |
| Interbrokers - Simon & Simon-Ravicorp | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| Interbrokers Simon & So | 0 | 0 | 5/1/2020 10:50 |
| Interbrokers Simon&So | 0 | 0 | 5/1/2020 10:52 |
| Interbrokers-Simon & Simon - Ravicorp | 0 | 0 | 5/1/2020 10:50 |
| Interbrokers-Simon & Simon Ravicorp | 0 | 0 | 5/1/2020 10:50 |
| Interbrokers-Simon & Simon -Ravicorp | 0 | 0 | 5/1/2020 10:50 |
| Interbrokers-Simon & Simon-Ravicopr | 0 | 0 | 5/1/2020 10:50 |
| Interbrokers-Simon & Simon-Ravicorp | 0 | 0 | 5/1/2020 10:50 |
| Interbrokers-Simon&Simon-Ravicopr | 0 | 0 | 5/1/2020 10:52 |
| International Auto Source Limted | 0 | 0 | 5/1/2020 10:50 |
| International Captial Holdings | 0 | 0 | 5/1/2020 10:50 |
| International Communicaitons Ltd | 0 | 0 | 5/1/2020 10:50 |
| International Healthcare Tecruitment Consultants | 0 | 0 | 5/1/2020 10:52 |
| International Pipeline Consulants | 0 | 0 | 5/1/2020 10:50 |
| International Resturant Concepts | 0 | 0 | 5/1/2020 10:50 |
| International Services & Consultants | 0 | 0 | 5/1/2020 10:50 |
| International Whols Privacy Services | 0 | 0 | 5/1/2020 10:52 |
| International Whols Privacy Services Limited | 0 | 0 | 5/1/2020 10:50 |
| International Whorls Privacy Services Limited | 0 | 0 | 5/1/2020 10:52 |
| International Yachy Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Intl Healthcare Tecruitment Consultants | 0 | 0 | 5/1/2020 10:50 |
| Intl Monetary Investments | 0 | 0 | 5/1/2020 10:50 |
| Intl Monetary Services | 0 | 0 | 5/1/2020 10:50 |
| Intl Pipeline Consultants | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| Intl Whois Privacy Services Ltd | 0 | 0 | 5/1/2020 10:50 |
| Intl Whols Privacy Services Ltd | 0 | 0 | 5/1/2020 10:50 |
| Intl Whorls Privacy Services Limited | 0 | 0 | 5/1/2020 10:50 |
| Investors Capital Holdings Company | 0 | 0 | 5/1/2020 10:50 |
| Irish Blue & Gold | 0 | 0 | 5/1/2020 10:50 |
| Irr Life Ins | 0 | 0 | 5/1/2020 10:50 |
| Island Pitch Intl | 0 | 0 | 5/1/2020 10:50 |
| Isolatte | 0 | 0 | 5/1/2020 10:50 |
| Istiopharus Investment | 0 | 0 | 5/1/2020 10:52 |
| Istiopharus Investments | 0 | 0 | 5/1/2020 10:50 |
| J & E Admin Group | 0 | 0 | 5/1/2020 10:50 |
| J & E Administration | 0 | 0 | 5/1/2020 10:50 |
| J & H Asset Company | 0 | 0 | 5/1/2020 10:50 |
| J&E Admin Group | 0 | 0 | 5/1/2020 10:52 |
| Janne Korinn Jaxen Trust | 0 | 0 | 5/1/2020 10:50 |
| JASE Partners Trust | 0 | 0 | 5/1/2020 10:50 |
| JBM Investments | 0 | 0 | 5/1/2020 10:50 |
| JDM Holdings | 0 | 0 | 5/1/2020 10:50 |
| Jemic | 0 | 0 | 5/1/2020 10:52 |
| Jemic Company | 0 | 0 | 5/1/2020 10:50 |
| Jewish Genealogy | 0 | 0 | 5/1/2020 10:52 |
| Jewish Genealogy Services Ltd | 0 | 0 | 5/1/2020 10:50 |
| JHM Limited | 0 | 0 | 5/1/2020 10:50 |
| JKLA Enterprices | 0 | 0 | 5/1/2020 10:50 |
| John Oakhusrt Emigre' Benovlient Society | 0 | 0 | 5/1/2020 10:50 |
| John P Brenan International Holdings | 0 | 0 | 5/1/2020 10:50 |
| John P. Brenan International Holdings | 0 | 0 | 5/1/2020 10:50 |
| Jokulsa Lackur | 0 | 0 | 5/1/2020 10:50 |
| Joresa Intl | 0 | 0 | 5/1/2020 10:50 |
| JP1 Investments | 0 | 0 | 5/1/2020 10:50 |
| JPDS Asset Group | 0 | 0 | 5/1/2020 10:50 |
| JS Consulting | 0 | 0 | 5/1/2020 10:50 |
| JSL Travel | 0 | 0 | 5/1/2020 10:50 |
| K & T International Trading | 0 | 0 | 5/1/2020 10:50 |
| Kelly Construction & Design | 0 | 0 | 5/1/2020 10:50 |
| Kerrigan Mgmt | 0 | 0 | 5/1/2020 10:50 |

| | | |
|---|---|---|
| Keshmiri & Associates | 0 | 0 | 5/1/2020 10:50 |
| King Counsulting Firm | 0 | 0 | 5/1/2020 10:50 |
| Kiwi Intl Group | 0 | 0 | 5/1/2020 10:50 |
| KJ Kapital 12-13 | 0 | 0 | 5/1/2020 10:50 |
| KJ Kapital 13-14 | 0 | 0 | 5/1/2020 10:50 |
| Klaissa Group | 0 | 0 | 5/1/2020 10:50 |
| KMAN Investments | 0 | 0 | 5/1/2020 10:50 |
| Kobe Investments | 0 | 0 | 5/1/2020 10:50 |
| KRIC 13-14 | 0 | 0 | 5/1/2020 10:50 |
| KRIC Inc 12-13 | 0 | 0 | 5/1/2020 10:50 |
| Krigsman Consulting Offshore | 0 | 0 | 5/1/2020 10:50 |
| Kuwait Capital Inc 12-14 | 0 | 0 | 5/1/2020 10:50 |
| Kuwait Capital12-13 | 0 | 0 | 5/1/2020 10:50 |
| Kwuait Capital | 0 | 0 | 5/1/2020 10:50 |
| LAS Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Lee Domestic Benefial | 0 | 0 | 5/1/2020 10:50 |
| Legacy Intl Holdings Group | 0 | 0 | 5/1/2020 10:50 |
| Leicht International Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Leroj Coulture | 0 | 0 | 5/1/2020 10:50 |
| Linda Silva Roberts | 0 | 0 | 5/1/2020 10:50 |
| LLC Flower Solutions | 0 | 0 | 5/1/2020 10:50 |
| Loden Enterprises 2010-2011 | 0 | 0 | 5/1/2020 10:50 |
| Loden Enterprises 2011-2012 | 0 | 0 | 5/1/2020 10:50 |
| Logx International | 0 | 0 | 5/1/2020 10:52 |
| LogX International Enterprises | 0 | 0 | 5/1/2020 10:52 |
| Lots of Diff Companies | 0 | 0 | 5/1/2020 10:50 |
| LRG Realty Co | 0 | 0 | 5/1/2020 10:50 |
| LS Holdings & Investments (Nevis) LTD | 0 | 0 | 5/1/2020 10:50 |
| LS Holdings Ltd | 0 | 0 | 5/1/2020 10:50 |
| Luna Investments | 0 | 0 | 5/1/2020 10:50 |
| M & N Global Holdings | 0 | 0 | 5/1/2020 10:50 |
| M & T GLOBAL TRANSPORTATION | 0 | 0 | 5/1/2020 10:50 |
| M3Invetment | 0 | 0 | 5/1/2020 10:50 |
| Mab Investment Group | 0 | 0 | 5/1/2020 10:50 |
| Madison International | 0 | 0 | 5/1/2020 10:50 |
| Magic Boost Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Magna Intl Enterprises | 0 | 0 | 5/1/2020 10:50 |
| Main Star Software | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| Manaloana Integriat | 0 | 0 | 5/1/2020 10:50 |
| Manaolana Intergritat | 0 | 0 | 5/1/2020 10:50 |
| Marble Risk Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Matilja Canyon Trust | 0 | 0 | 5/1/2020 10:50 |
| Maximun Health Enterprises | 0 | 0 | 5/1/2020 10:50 |
| MCMM & Associates | 0 | 0 | 5/1/2020 10:50 |
| MCN Mgmt Advisors | 0 | 0 | 5/1/2020 10:50 |
| MD Global Inv | 0 | 0 | 5/1/2020 10:50 |
| Med Co Management | 0 | 0 | 5/1/2020 10:52 |
| Med Co Mgmt | 0 | 0 | 5/1/2020 10:50 |
| MedCo Mmt | 0 | 0 | 5/1/2020 10:50 |
| Medical Net Systems International | 0 | 0 | 5/1/2020 10:52 |
| Medical Net Systems Intl | 0 | 0 | 5/1/2020 10:50 |
| Medical Referral Network Intl | 0 | 0 | 5/1/2020 10:50 |
| mercury Mairtime Advisors | 0 | 0 | 5/1/2020 10:50 |
| MES Investments | 0 | 0 | 5/1/2020 10:52 |
| MES Investments Limited Company | 0 | 0 | 5/1/2020 10:50 |
| MFS Holdings LC | 0 | 0 | 5/1/2020 10:50 |
| MHGS Intl | 0 | 0 | 5/1/2020 10:50 |
| Miahuzin LC | 0 | 0 | 5/1/2020 10:50 |
| Milennium | 0 | 0 | 5/1/2020 10:50 |
| Millennium Group Holdings | 0 | 0 | 5/1/2020 10:50 |
| Ming Long CRE Investment | 0 | 0 | 5/1/2020 10:50 |
| MLA Pealty | 0 | 0 | 5/1/2020 10:50 |
| MLK Consulting | 0 | 0 | 5/1/2020 10:50 |
| Monarch Enterprises | 0 | 0 | 5/1/2020 10:50 |
| Moni & Car Group | 0 | 0 | 5/1/2020 10:50 |
| Monolith One Holdigns | 0 | 0 | 5/1/2020 10:50 |
| Moving & Relocation Services | 0 | 0 | 5/1/2020 10:50 |
| Mr. Financail Solutions | 0 | 0 | 5/1/2020 10:50 |
| Musician Trust | 0 | 0 | 5/1/2020 10:50 |
| MW Marketing | 0 | 0 | 5/1/2020 10:50 |
| Mysric Ventures | 0 | 0 | 5/1/2020 10:50 |
| NABN Dev | 0 | 0 | 5/1/2020 10:50 |
| National Mechanical Service Co | 0 | 0 | 5/1/2020 10:50 |
| Nekstream Global LL | 0 | 0 | 5/1/2020 10:50 |
| Nelare Churrascaria Pier Shops | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| Neutro Diagnostic Consulting | 0 | 0 | 5/1/2020 10:50 |
| Nevis Breachfront Group | 0 | 0 | 5/1/2020 10:50 |
| Nevis Ventures Group | 0 | 0 | 5/1/2020 10:50 |
| New World Family Turst | 0 | 0 | 5/1/2020 10:50 |
| Nexus Parts & Supplies | 0 | 0 | 5/1/2020 10:50 |
| Niagara St Dreamer Trust | 0 | 0 | 5/1/2020 10:51 |
| Niagara Steet Dreamer Trust | 0 | 0 | 5/1/2020 10:51 |
| NM Good Neighbor Partnership | 0 | 0 | 5/1/2020 10:50 |
| No9 News | 0 | 0 | 5/1/2020 10:51 |
| Nonko roup | 0 | 0 | 5/1/2020 10:50 |
| north Shore Energy Engineering Inlt | 0 | 0 | 5/1/2020 10:50 |
| North Shore Energy Engineering Intl | 0 | 0 | 5/1/2020 10:50 |
| Nova Entergy Solutions | 0 | 0 | 5/1/2020 10:50 |
| NQ Land & Cattle | 0 | 0 | 5/1/2020 10:50 |
| NSRD Management | 0 | 0 | 5/1/2020 10:52 |
| NSRD Mgmt | 0 | 0 | 5/1/2020 10:50 |
| nwah! | 0 | 0 | 5/1/2020 10:50 |
| Nyala Intl Group | 0 | 0 | 5/1/2020 10:50 |
| Ocaeanfront Real Estate | 0 | 0 | 5/1/2020 10:50 |
| Ocenawise Holdings | 0 | 0 | 5/1/2020 10:50 |
| Offshore Complete Mgmt Program | 0 | 0 | 5/1/2020 10:50 |
| Oil Sands Equipment & Supplies International | 0 | 0 | 5/1/2020 10:50 |
| Oil Sands Equipment & Supplies Intl | 0 | 0 | 5/1/2020 10:50 |
| Old Ranitan Capital | 0 | 0 | 5/1/2020 10:50 |
| Old Union Tours | 0 | 0 | 5/1/2020 10:50 |
| Omaha Group Funding | 0 | 0 | 5/1/2020 10:50 |
| Omni Printing & Graphics | 0 | 0 | 5/1/2020 10:50 |
| Omniscient Holdigns | 0 | 0 | 5/1/2020 10:50 |
| Opus Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Orthepedic Implant Science & Design | 0 | 0 | 5/1/2020 10:50 |
| Orthepedic Implant Science&Design | 0 | 0 | 5/1/2020 10:52 |
| Orthopedic Impant Science & Design | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| Orthopedic Impant Science&Design | 0 | 0 | 5/1/2020 10:52 |
| Orthopedic Implant Science & Design | 0 | 0 | 5/1/2020 10:50 |
| Outwourced Investments | 0 | 0 | 5/1/2020 10:50 |
| Overseas Inv. Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Overseas Investment Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Overseas investments Management | 0 | 0 | 5/1/2020 10:50 |
| Overseas Investments Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Overseas Invstments Management | 0 | 0 | 5/1/2020 10:50 |
| Ozylus | 0 | 0 | 5/1/2020 10:50 |
| P & K Construction | 0 | 0 | 5/1/2020 10:50 |
| P & R Transportation | 0 | 0 | 5/1/2020 10:50 |
| P&R Transportation | 0 | 0 | 5/1/2020 10:52 |
| Pacer Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Pacfic Shangri La | 0 | 0 | 5/1/2020 10:50 |
| Pacific Boast Clearing | 0 | 0 | 5/1/2020 10:50 |
| Pamposh Design & Construction | 0 | 0 | 5/1/2020 10:50 |
| Pangaea Investments & Acquisitions | 0 | 0 | 5/1/2020 10:50 |
| Paradisc Solutions International | 0 | 0 | 5/1/2020 10:50 |
| Paragon-Petrofirst International | 0 | 0 | 5/1/2020 10:50 |
| Paramount International Holdings | 0 | 0 | 5/1/2020 10:50 |
| Pascal Femat Enterprises | 0 | 0 | 5/1/2020 10:50 |
| Pascal Fermat Ent | 0 | 0 | 5/1/2020 10:50 |
| Patamount Partnership | 0 | 0 | 5/1/2020 10:50 |
| Peal Innovations International | 0 | 0 | 5/1/2020 10:50 |
| Permix Intl | 0 | 0 | 5/1/2020 10:50 |
| Persol Ent | 0 | 0 | 5/1/2020 10:50 |
| Persol Enterprises | 0 | 0 | 5/1/2020 10:50 |
| Pesol Enterprieses | 0 | 0 | 5/1/2020 10:50 |
| Petro Celec | 0 | 0 | 5/1/2020 10:50 |
| Petronaval Intl | 0 | 0 | 5/1/2020 10:50 |
| Pharoah Investments | 0 | 0 | 5/1/2020 10:50 |
| Pharsoh Investments Holdings Group | 0 | 0 | 5/1/2020 10:50 |
| Pilgrim Enterprise | 0 | 0 | 5/1/2020 10:50 |
| Pine Bush Estate | 0 | 0 | 5/1/2020 10:52 |

| | | | |
|---|---|---|---|
| Pine Bush Estate Mangement | 0 | 0 | 5/1/2020 10:50 |
| Pine Bush Real Estate Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Pinner Intl | 0 | 0 | 5/1/2020 10:50 |
| PK Consultants | 0 | 0 | 5/1/2020 10:52 |
| PK Consultants USA | 0 | 0 | 5/1/2020 10:50 |
| PMI Intl Ventures | 0 | 0 | 5/1/2020 10:50 |
| Power Four Fitness Ridfefield | 0 | 0 | 5/1/2020 10:50 |
| Praising & Spirit Filled Center | 0 | 0 | 5/1/2020 10:50 |
| Premeone | 0 | 0 | 5/1/2020 10:50 |
| Premier Intl Enterprises | 0 | 0 | 5/1/2020 10:50 |
| Premier Real Estate Inv | 0 | 0 | 5/1/2020 10:50 |
| Premier Real Estate Investment | 0 | 0 | 5/1/2020 10:50 |
| Premier Resturant Group | 0 | 0 | 5/1/2020 10:50 |
| Prime Resturant Group | 0 | 0 | 5/1/2020 10:50 |
| Prina Source | 0 | 0 | 5/1/2020 10:50 |
| Princeton Holings Group | 0 | 0 | 5/1/2020 10:50 |
| Prindle Captial | 0 | 0 | 5/1/2020 10:50 |
| Professional Chiropractic Care | 0 | 0 | 5/1/2020 10:52 |
| Professional Chiropractic Care PC | 0 | 0 | 5/1/2020 10:50 |
| Professional Culinary Mgmt | 0 | 0 | 5/1/2020 10:50 |
| Prometheus Intl | 0 | 0 | 5/1/2020 10:50 |
| Promethus International | 0 | 0 | 5/1/2020 10:52 |
| Promethus Intl | 0 | 0 | 5/1/2020 10:50 |
| Propect Industry | 0 | 0 | 5/1/2020 10:50 |
| Proweb INC Montana | 0 | 0 | 5/1/2020 10:50 |
| Pubiventas | 0 | 0 | 5/1/2020 10:50 |
| Pyrmid Beauty & Fashion | 0 | 0 | 5/1/2020 10:50 |
| QoopInvestment | 0 | 0 | 5/1/2020 10:50 |
| Quality Management Group | 0 | 0 | 5/1/2020 10:52 |
| Quark Limited 12-13 | 0 | 0 | 5/1/2020 10:50 |
| R & A Global Services | 0 | 0 | 5/1/2020 10:50 |
| R & V Investments | 0 | 0 | 5/1/2020 10:50 |
| R & W Contracting Services | 0 | 0 | 5/1/2020 10:50 |

| | | | |
|---|---|---|---|
| Rality Holdings | 0 | 0 | 5/1/2020 10:50 |
| Rambe Captial | 0 | 0 | 5/1/2020 10:50 |
| Ramenshni & Associates technology & Engineering | 0 | 0 | 5/1/2020 10:50 |
| Ramenshni&Associates technology&Engineering | 0 | 0 | 5/1/2020 10:52 |
| Rameshini & Associates Technology & Engineering | 0 | 0 | 5/1/2020 10:50 |
| Rameshini&Associates Technology&Engineering | 0 | 0 | 5/1/2020 10:52 |
| Rameshni & Associates Technology & Engineering | 0 | 0 | 5/1/2020 10:50 |
| Ramneshni & Associates Technology & Engineering | 0 | 0 | 5/1/2020 10:50 |
| Randa Importers | 0 | 0 | 5/1/2020 10:50 |
| RC Holdings | 0 | 0 | 5/1/2020 10:50 |
| Real Estate Holding Group | 0 | 0 | 5/1/2020 10:50 |
| Real Estate Holdngs Group | 0 | 0 | 5/1/2020 10:50 |
| Real Innovations Intl | 0 | 0 | 5/1/2020 10:50 |
| Real Time Media | 0 | 0 | 5/1/2020 10:50 |
| Redemption Holdings Intl | 0 | 0 | 5/1/2020 10:50 |
| Refund - Qoop Technologies | 0 | 0 | 5/1/2020 10:50 |
| Refund -Qoop Technologies | 0 | 0 | 5/1/2020 10:50 |
| Regal Partners L | 0 | 0 | 5/1/2020 10:50 |
| Reign Holdings & Investments | 0 | 0 | 5/1/2020 10:51 |
| Rent Equity 200 | 0 | 0 | 5/1/2020 10:51 |
| Richard Hyman intl | 0 | 0 | 5/1/2020 10:51 |
| Rig QA Intl | 0 | 0 | 5/1/2020 10:51 |
| Ringtone Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Rizik International Rizik International | 0 | 0 | 5/1/2020 10:51 |
| RLS Enterprieses | 0 | 0 | 5/1/2020 10:51 |
| RM Marketing Inl | 0 | 0 | 5/1/2020 10:51 |
| RM Marketing International | 0 | 0 | 5/1/2020 10:52 |
| RML Management &Linda Silva Roberts Trusts | 0 | 0 | 5/1/2020 10:52 |

| | | | |
|---|---|---|---|
| RML Management Trust | 0 | 0 | 5/1/2020 10:51 |
| RML Mgmt & Linda Silva Roberts Trusts | 0 | 0 | 5/1/2020 10:51 |
| Robert Joseph Group Intl | 0 | 0 | 5/1/2020 10:51 |
| Ross & KC Enterprises | 0 | 0 | 5/1/2020 10:51 |
| Royal HH Group | 0 | 0 | 5/1/2020 10:51 |
| S & A Global | 0 | 0 | 5/1/2020 10:51 |
| S & R Procurement | 0 | 0 | 5/1/2020 10:51 |
| S & S International | 0 | 0 | 5/1/2020 10:51 |
| S S&A Global | 0 | 0 | 5/1/2020 10:51 |
| Savory Seafood Mgmt | 0 | 0 | 5/1/2020 10:51 |
| ScipsAmerica Rapi-Med Royalty Pool | 0 | 0 | 5/1/2020 10:51 |
| Scope Consulting Intl | 0 | 0 | 5/1/2020 10:51 |
| SCS Prosessing | 0 | 0 | 5/1/2020 10:51 |
| Sea Gulf Management | 0 | 0 | 5/1/2020 10:52 |
| Sea Gulf Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Seadise Payday | 0 | 0 | 5/1/2020 10:51 |
| Seaside TrustDeposit | 0 | 0 | 5/1/2020 10:51 |
| Second City Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Sedation Reff | 0 | 0 | 5/1/2020 10:51 |
| Sekots Mgmt Group | 0 | 0 | 5/1/2020 10:51 |
| Serveral BVI and Nevis RA | 0 | 0 | 5/1/2020 10:51 |
| Setal Intl Holdings | 0 | 0 | 5/1/2020 10:51 |
| Several Anguilla | 0 | 0 | 5/1/2020 10:51 |
| Several CA Companies | 0 | 0 | 5/1/2020 10:51 |
| Several compaines | 0 | 0 | 5/1/2020 10:51 |
| Several DE | 0 | 0 | 5/1/2020 10:52 |
| Several DE s | 0 | 0 | 5/1/2020 10:51 |
| Several Nevis Companies | 0 | 0 | 5/1/2020 10:51 |
| Shacklford Holding Group | 0 | 0 | 5/1/2020 10:51 |
| Shale Entergy International | 0 | 0 | 5/1/2020 10:51 |
| Shang Ren Capital Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Shelby Sebastian | 0 | 0 | 5/1/2020 10:51 |
| SIM Marketing | 0 | 0 | 5/1/2020 10:51 |
| Sivergate Group | 0 | 0 | 5/1/2020 10:51 |
| SJM Marketing | 0 | 0 | 5/1/2020 10:51 |
| Skin Preservation Intl | 0 | 0 | 5/1/2020 10:51 |
| Skiyo Manugacturing | 0 | 0 | 5/1/2020 10:51 |
| Softwar4Parents | 0 | 0 | 5/1/2020 10:51 |
| Somedayy Enterprises | 0 | 0 | 5/1/2020 10:51 |
| Star Britht China | 0 | 0 | 5/1/2020 10:51 |

| | | | |
|---|---|---|---|
| Star Import & Export | 0 | 0 | 5/1/2020 10:51 |
| Starlight Asset Management | 0 | 0 | 5/1/2020 10:51 |
| Starlight Asset Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Starlight Fund | 0 | 0 | 5/1/2020 10:51 |
| Startegic Venture | 0 | 0 | 5/1/2020 10:52 |
| Startegic Venture Partners | 0 | 0 | 5/1/2020 10:51 |
| Starts Holding Company | 0 | 0 | 5/1/2020 10:51 |
| Stepping Stone Inv | 0 | 0 | 5/1/2020 10:51 |
| StermPro Systems | 0 | 0 | 5/1/2020 10:51 |
| Strategic IP Mgmt Services Ireland | 0 | 0 | 5/1/2020 10:51 |
| Strategic Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Stray Arrow International | 0 | 0 | 5/1/2020 10:51 |
| STX Services | 0 | 0 | 5/1/2020 10:51 |
| Summer Investments | 0 | 0 | 5/1/2020 10:51 |
| Sundance Deutsche Vanguard Holdings | 0 | 0 | 5/1/2020 10:51 |
| Sunshine & Beaches | 0 | 0 | 5/1/2020 10:51 |
| Sunshines & Beaches | 0 | 0 | 5/1/2020 10:51 |
| SWE Intl | 0 | 0 | 5/1/2020 10:51 |
| Sybac Solat Latam | 0 | 0 | 5/1/2020 10:51 |
| T & C DataSolutions | 0 | 0 | 5/1/2020 10:51 |
| T & H Land Management | 0 | 0 | 5/1/2020 10:51 |
| T.M. Holdings & Investments | 0 | 0 | 5/1/2020 10:51 |
| TA Prod | 0 | 0 | 5/1/2020 10:51 |
| Tai Enterprises | 0 | 0 | 5/1/2020 10:51 |
| Tanio Del Bosque Coffee Company | 0 | 0 | 5/1/2020 10:51 |
| Tatianna Vidal | 0 | 0 | 5/1/2020 10:51 |
| Tatis' Kitchen 11-13 | 0 | 0 | 5/1/2020 10:51 |
| Taylors RLT | 0 | 0 | 5/1/2020 10:51 |
| TC Lee | 0 | 0 | 5/1/2020 10:51 |
| Technatic Enterprises | 0 | 0 | 5/1/2020 10:51 |
| Telecom Complaince Services | 0 | 0 | 5/1/2020 10:51 |
| Tellex International | 0 | 0 | 5/1/2020 10:51 |
| TerraNova International | 0 | 0 | 5/1/2020 10:51 |
| Timble Enterprises | 0 | 0 | 5/1/2020 10:51 |
| Tital Holdings & Investments | 0 | 0 | 5/1/2020 10:51 |
| Tital Holdings&Investments | 0 | 0 | 5/1/2020 10:52 |

| | | | |
|---|---|---|---|
| Titan Holdings & Investments | 0 | 0 | 5/1/2020 10:51 |
| TK Properties | 0 | 0 | 5/1/2020 10:51 |
| TM & M Holdings | 0 | 0 | 5/1/2020 10:51 |
| TM&M Holdings | 0 | 0 | 5/1/2020 10:52 |
| Today International Brokers | 0 | 0 | 5/1/2020 10:51 |
| Totis Oil & Gas International | 0 | 0 | 5/1/2020 10:51 |
| Town Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Trade Concept | 0 | 0 | 5/1/2020 10:51 |
| Treydr Holdings | 0 | 0 | 5/1/2020 10:51 |
| Tri State Intl | 0 | 0 | 5/1/2020 10:51 |
| Tri State Mgmt Group | 0 | 0 | 5/1/2020 10:51 |
| Trilogy Group Intl | 0 | 0 | 5/1/2020 10:51 |
| Trimstone Holding Trust | 0 | 0 | 5/1/2020 10:51 |
| Trinity Financial Group Limited 12-13 | 0 | 0 | 5/1/2020 10:51 |
| Trinity Financial Group Limited 13-14 | 0 | 0 | 5/1/2020 10:51 |
| Trinity Financial Group Limited 14-15 | 0 | 0 | 5/1/2020 10:51 |
| TriState Intl | 0 | 0 | 5/1/2020 10:51 |
| TriState Trust Holdings | 0 | 0 | 5/1/2020 10:51 |
| Trucha Consulting | 0 | 0 | 5/1/2020 10:51 |
| TS Internatioanl | 0 | 0 | 5/1/2020 10:51 |
| Turi Defense Group | 0 | 0 | 5/1/2020 10:51 |
| Turkey Ventures | 0 | 0 | 5/1/2020 10:51 |
| TZ Productions | 0 | 0 | 5/1/2020 10:51 |
| Underdog Avocate | 0 | 0 | 5/1/2020 10:51 |
| Unfunds Intl | 0 | 0 | 5/1/2020 10:51 |
| United Claimes | 0 | 0 | 5/1/2020 10:51 |
| Universal Import & Export | 0 | 0 | 5/1/2020 10:51 |
| Universal Impulse Mgmt Group | 0 | 0 | 5/1/2020 10:51 |
| Universal Venture | 0 | 0 | 5/1/2020 10:51 |
| Urgent Medcare International | 0 | 0 | 5/1/2020 10:52 |
| Urgent Medcare Int'l | 0 | 0 | 5/1/2020 10:51 |
| Uriah Intl Ventures | 0 | 0 | 5/1/2020 10:51 |
| US Young Chang | 0 | 0 | 5/1/2020 10:51 |
| Utah Home Warrenty | 0 | 0 | 5/1/2020 10:51 |
| Vacation in Paradis Prop | 0 | 0 | 5/1/2020 10:51 |
| Vahalla Investmetns | 0 | 0 | 5/1/2020 10:51 |
| Val Holdings | 0 | 0 | 5/1/2020 10:52 |
| Val Holdings Group | 0 | 0 | 5/1/2020 10:51 |

| | | | |
|---|---|---|---|
| Vanessa Allen -Etincelant | 0 | 0 | 5/1/2020 10:51 |
| Vast Mgmt Holdings | 0 | 0 | 5/1/2020 10:51 |
| Velka US | 0 | 0 | 5/1/2020 10:51 |
| Venture Capital Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Vine Mgmt | 0 | 0 | 5/1/2020 10:51 |
| Viritgo | 0 | 0 | 5/1/2020 10:52 |
| Viritgo Bros | 0 | 0 | 5/1/2020 10:51 |
| Virtnosity Victory | 0 | 0 | 5/1/2020 10:51 |
| Vision Alliance Con | 0 | 0 | 5/1/2020 10:51 |
| Vision Alliance Consulting | 0 | 0 | 5/1/2020 10:51 |
| Vituvian | 0 | 0 | 5/1/2020 10:51 |
| Vituvian & Cardinal Industires | 0 | 0 | 5/1/2020 10:51 |
| Vituvian&Cardinal Industires | 0 | 0 | 5/1/2020 10:52 |
| Vlanvale & Associates | 0 | 0 | 5/1/2020 10:51 |
| WBU Enterprises Group | 0 | 0 | 5/1/2020 10:51 |
| Wenny Cui Enterpirses | 0 | 0 | 5/1/2020 10:51 |
| West Main Properties LC | 0 | 0 | 5/1/2020 10:51 |
| Wheeler Marketing & Associates | 0 | 0 | 5/1/2020 10:51 |
| Wholsale Source | 0 | 0 | 5/1/2020 10:51 |
| William Wiliams 9 Trust | 0 | 0 | 5/1/2020 10:51 |
| Williams 9 Williams | 0 | 0 | 5/1/2020 10:51 |
| Wilson Capital Group International Holdings | 0 | 0 | 5/1/2020 10:51 |
| WIND & SKY | 0 | 0 | 5/1/2020 10:51 |
| Windward Global | 0 | 0 | 5/1/2020 10:51 |
| Winning Techology International | 0 | 0 | 5/1/2020 10:51 |
| Winston Intl Ventures | 0 | 0 | 5/1/2020 10:51 |
| Wire Fee ANSGroup | 0 | 0 | 5/1/2020 10:51 |
| Wire fee Grampian Hills Resources International | 0 | 0 | 5/1/2020 10:51 |
| Wire Fee Zikru | 0 | 0 | 5/1/2020 10:51 |
| WISE MARIN Wise Automotive | 0 | 0 | 5/1/2020 10:51 |
| Woodbury Office Fice | 0 | 0 | 5/1/2020 10:51 |
| Woodlawn Partnership | 0 | 0 | 5/1/2020 10:51 |
| World Serviices | 0 | 0 | 5/1/2020 10:51 |
| World Trade Intl | 0 | 0 | 5/1/2020 10:51 |
| Worldwide Import & Export | 0 | 0 | 5/1/2020 10:51 |

| | | | |
|---|---|---|---|
| Worldwide Prosperity Gourp | 0 | 0 | 5/1/2020 10:51 |
| Wrong CC Charged | 0 | 0 | 5/1/2020 10:51 |
| WSOT Intl | 0 | 0 | 5/1/2020 10:51 |
| Wylde & Strate International Resources | 0 | 0 | 5/1/2020 10:51 |
| Wyoming Berea Florida Homes | 0 | 0 | 5/1/2020 10:51 |
| Xenith Offers | 0 | 0 | 5/1/2020 10:51 |
| Yash & Deep Web Development | 0 | 0 | 5/1/2020 10:51 |
| Yaweh Group | 0 | 0 | 5/1/2020 10:51 |
| Yellow & Stripe | 0 | 0 | 5/1/2020 10:51 |
| Yoda Media | 0 | 0 | 5/1/2020 10:51 |
| | | | |

Exhibit H

## TABLE OF CONTENTS
## LIMITED DURATION COMPANY

*Overview*.................................................................................................. *2*

*Tax Issues* ................................................................................................ *3*

    *Taxes--Default Treatment as a Partnership* .......................................... *3*

    *Other Taxes*......................................................................................... *3*

*Required record keeping* .......................................................................... *3*

*Accounting Procedures* ........................................................................... *3*

*Insurance* ............................................................................................... *4*

*Limited Duration Company Formalities Must be Followed* ........................... *4*

*Meetings, Minutes, and Acting by Unanimous Consent* ............................... *5*

*Management of the Limited Duration Company* .......................................... *6*

*Managers' Responsibilities* ....................................................................... *6*

*Members' Rights* ...................................................................................... *7*

*The Organizational Minutes* ..................................................................... *7*

*Annual Meeting* ....................................................................................... *7*

*The Operating Agreement of the Limited Duration Company* ....................... *8*

*Company Information Sheet* ...................................................................... *9*

*Minutes of the Organizational Meeting* ...................................................... *10*

*Conformed Copy of Banking Resolutions* .................................................. *12*

*Specimen Certificate of Ownership* ........................................................... *13*

*Minutes of the Annual Meeting of Members* ............................................... *14*

*Waiver of Notice of Annual Meeting of Members* ........................................ *15*

*Capital Contribution of Members and Addresses of Members and Managers* ............... *16*

*Operating Agreement* ............................................................................... *17*

*Amendment to Articles of Organization/Operating Agreement* ...................... *30*

*Approval of Transaction Benefiting Members* ............................................. *31*

*Approval of Loan to Company* .................................................................. *32*

WESSELL-ESI2-0001936807

## MEMORANDUM
## LIMITED DURATION COMPANY

### Overview

This information summarizes how a limited duration company operates and what needs to be done to preserve the limited duration company status once the documents have been filed by the Registry and an organizational meeting has been held. To insure the continued existence of the separate limited duration company entity, the following considerations should be reviewed and observed by the limited duration company employees, managers, and members. The managers or members should devise an operating agreement to govern the operations of the limited duration company, and should maintain proper records consistent with the forms contained herein.

A limited duration company is neither a corporation nor a partnership. It is instead a distinct type of entity mingling the characteristics and powers of a corporation and a partnership. The owners of an LDC are called "members," not partners or shareholders. Unlike a corporation, which has Articles of Incorporation accompanied by By-Laws, an LDC uses an "Operating Agreement" that details how the entity will be run.

*Purchasers and users of this LDC start up kit should be advised to consult with an attorney and check all cited and applicable laws to insure that they are still current. This LDC kit is not meant to be a substitute for the services of an attorney. The authors are not licensed to practice in the jurisdiction of sale. It is sold with the understanding that the publisher is not engaged in rendering legal, accounting, or other professional service.*

2

WESSELL-ESI2-0001936808

### Tax Issues

### Taxes – Default Treatment as a Partnership

Once an LDC has been successfully formed under the jurisdiction law, if the LDC does Partnerships and LDCs specify in their partnership or operating agreement how the profits and losses of the company will be allocated among the members. This allows members to customize their allocations and not base them solely upon the percentage of ownership they possess in the company. Profits and losses from the LDC that are passed through to the members are reported on their individual income tax forms and paid at their individual tax rate.

### Other Federal Taxes

Funds collected by a limited duration company as FICA taxes and payroll withholding taxes must be paid as provided by law, or the persons responsible for not doing so may be held personally liable. This liability is separate from that imposed upon the LDC as an employer. The statutes imposing such liability are broad in scope and may be enforced against all officers or other personnel whose duties relate to the withholding function.

### Required record keeping

- List of the names and addresses of all members and managers
- Copy of the Articles of Organization and all Amendments
- Copy of the then-effective Operating Agreement and financial statements for three years
- If not already included in the Articles of Organization or Operating Agreement, a writing describing: the amount of cash and agreed value of any capital contributions, the time at which any additional contributions are to be made, any events that would require dissolution and winding up
- Copy of all Certificates of Conversion and Executed Powers of Attorney related to organization or conversion

### Accounting Procedures

The managers and officers of the limited duration company are responsible for making certain that the LDC follows accounting practices and auditing procedures customarily followed by similar businesses and that these procedures are properly carried out in a timely fashion. Furthermore, certain types of LDCs may be prohibited from using the cash method of accounting, and must use the accrual method of accounting.

Accordingly, the LDC's tax professional should be kept informed about all of the limited duration company's business activities. All assets transferred to the limited duration company should be appropriately entered in the company's books, and any such assets become the property of the limited duration company. A tax professional should also

WESSELL-ESI2-0001936809

advise the company regarding whether the company's fiscal year should end on a date other than the calendar year end, whether any tax elections should be made, and how to prepare and file required tax returns.

### Insurance

Make certain that any business insurance is transferred to the LDC, either by assignment or binder. Promptly consult with an insurance agent regarding how such transfers should be accomplished and what other forms of insurance may be recommended for the LDC.

### Limited Duration Company Formalities must be followed

It is extremely important to maintain the formal integrity of the limited duration company entity. The LDC is considered by the law to be a separate person, apart from its members and organizers. This structure, and the limited personal liability that goes with it, must be protected. To ensure proper adherence to limited duration company formalities, it is vital that all-important transactions in the business be reflected in written minutes of meetings of managers or members, even where there is only one member. The following items should always be acted upon formally and evidenced by written minutes:

> All major contracts, including employment contracts, buy-sell agreements, profit sharing plans, pension plans, insurance plans, trust agreements, loans, leases, purchase contracts, and limited duration brokerage and investment accounts should be made in the name and on behalf of the limited duration company and with the required approval.

> The establishment and adjustment of all salaries and bonuses of officers and employees of the limited duration company.

> Any change in membership interest, including issuing additional interests or any transfers of interests. Such changes should not only be reported to the company's accountant but should also be entered on the certificates of membership interest and the membership register in the limited duration company minute book.

> Placing restrictions on the ability to transfer membership interests.

> Accepting the resignation, terminating, or appointing managers.

> Changing the LDC name, registered office, or registered agent.

> Changing bank accounts.

> Any other significant LDC activities.

Whenever people sign on behalf of or for the limited duration company, they should add their title next to the signature so that it will be clear that they are acting as an agent of

4

WESSELL-ESI2-0001936810

the company rather than in their individual capacity. For instance, if you sign a contract with just your name and do not state your relationship to the limited duration company next to your name in the contract, you may be held personally liable for the contract. An example of a correct signature would be:

ABC Farms, L.D.C.


By: _____

John Smith, Manager

Any LDC bank and checking accounts should also reflect the company name. If necessary, a new bank account should be opened in the name of the limited duration company. This transaction should be accomplished easily by completing a limited duration company resolution that authorizes the company to open a bank account.

Any loans or banking activities should be conducted in the company's name rather than in the name of any individual or that individual could become personally liable for the obligations. If a loan is made and the lender requires someone to endorse or guarantee the loan personally, such an action should be approved by the managers and reflect the approval in an appropriately drafted resolution that is adopted and inserted into the company's minute book.

### Meetings, Minutes, and Acting by Unanimous Consent

Actions of the managers or members may be taken at an actual meeting or by unanimous written consent. Whenever a meeting is held, written minutes must be created documenting the actions taken at the meeting. The written minutes should include at least the following information: (1) the type of meeting, (2) the date, time, and place of the meeting, (3) whether or not the meeting had a special or specific purpose, (4) the name and title of the persons who acted as chairperson and secretary of the meeting, (5) whether (if required by the operating agreement) the meeting was held pursuant to notice or that notice had been waived by those entitled to receive it, (6) a listing of members present either in person or by proxy and their voting power, (7) whether managers will vote at the meeting and identification of those present and voting and whether a quorum was present, (8) identity of any other persons present at the meeting, (9) whether minutes from a previous meeting were distributed and approved or approved as corrected, (10) a description of any reports presented and identification of the presenters, (11) any resolutions or other votes presented, discussed, approved, disapproved, etc., (12) any other business presented, and (13) time of adjournment. Ideally, the secretary should prepare minutes within a few days of a meeting-taking place and copies should be distributed before the next meeting so they can be reviewed.

The Act also provides that actions may be taken using a unanimous written consent action embodying the desired resolutions. Unanimous written consent actions must be

WESSELL-ESI2-0001936811

executed by all of the members or managers entitled to vote on the matters contained therein. If a limited duration company has relatively few managers and members, it is generally simpler and more convenient to take action by unanimous written consent rather than through actual meetings.

If the limited duration company proposes to engage in a transaction affecting the basic structure or existence of the limited duration company, such as a merger or conversion with or an acquisition of another limited duration company, a reorganization in another jurisdiction, or a dissolution of the company, it is strongly recommended that counsel be consulted to insure that all of the necessary documents and consents are prepared, executed, and where necessary, filed with the appropriate governmental authorities. Failure to execute the proper documents and make the filings required by law could result in any such transaction being void and ineffective.

## Management of the Limited Duration Company

The LDC will be a member-managed company, unless the Articles of Organization or the Operating Agreement state otherwise. In a member-managed company, management is vested in the members in proportion to the current percentage of the company owned by all the members. If the LDC determines that management should be allocated otherwise, the Articles of Organization or the Operating Agreement should so state. The decision of a majority-in-interest of the members shall be controlling. The members may vote in person or by proxy.

If the LDC is to be managed by managers, the Articles of Organization or the Operating Agreement must indicate that the LDC is a manager-managed company. In a manager-managed company, the decision of the manager (if only one manager) or a majority of the managers (if more than one manager) shall be controlling. The managers may vote in person or by proxy.

## Managers' Responsibilities

Principal officers and managers of every limited duration company must be mindful of the following specific and important duties and responsibilities:

Payments of Salaries to Employees. Officers responsible for the payment of salaries must see that the limited duration company pays those salaries. Managers establish salaries for officers.

Duty to Inspect. Managers have the absolute right to inspect all company record books, records, documents and property at any time. If they do not exercise that right, they may be held liable for negligence in the event that the company suffers loss or its creditors suffer loss by reason of failure to exercise diligence in such matters.

6

WESSELL-ESI2-0001936812

## Members' Rights

The limited duration company must allow the members to access company records. Additionally, the company must provide each member with information necessary for the exercise of the member's duties under the operating agreement. This requirement cannot be waived in the Operating Agreement.

## The Organizational Minutes

The Organizational Minutes are agreed upon at the Organizational Meeting of the members. The minutes document the following actions and have the following effects:

The Articles of Organization are reviewed and accepted.

The Operating Agreement/Regulations are reviewed and accepted.

Identifies the first officers of the LDC.

The certificates of membership interest form in the minute book are reviewed and adopted.

Identifies to whom membership interest certificates have been issued.

Identifies any organizational expenses incurred are authorized to be paid.

Authorization is given to open a bank account.

The location of the office of the limited duration company is established.

The authorization for the necessary license, permits, etc. is given.
Authorization is given for necessary documents needed to operate in other jurisdictions.

A fiscal year ending on December 31 is selected.

All of the managers and members need to sign the Organizational Minutes as appropriate.

## Annual Meeting

The limited duration company should hold an annual members' meeting. At that meeting, there should be a discussion and review of the business activities that have transpired during the previous year at the annual meeting. The waiver of notice of the annual meeting should be used to set the time and place of the meeting and, if signed by all members, will dispense with the requirement of giving formal notice of the annual meeting.

WESSELL-ESI2-0001936813

### The Operating Agreement of the Limited Duration Company

The members of the company may develop the basic operating rules for the limited duration company, called the Operating Agreement. The Operating Agreement functions similarly to "by-laws" in a corporation. It reflects the structural framework of the limited duration company and should be consulted any time the limited duration company intends to take action. Members may not include provisions in the Operating Agreement that are contrary to the Act, but many of the default provisions in the Act can be modified by consent in the Operating Agreement.

The Operating Agreement provided in these forms supposes that the limited duration company will be a manager-managed company and that unanimous consent of the members will be required for most company actions.

8

WESSELL-ESI2-0001936814

# COMPANY INFORMATION SHEET

_____

Name of Limited Duration Company

Organization Date:

Organization Jurisdiction:  Belize

Principal Place of Business:  Belize City, Belize

Officers:

    Operating Manager:

    Secretary:

    Treasurer:

Bank Accounts:

Fiscal Year:  January 1 - December 31

Date of Annual Meeting:

Members                                          Units
_____                 _____
_____                 _____
_____                 _____
_____                 _____

9

WESSELL-ESI2-0001936815

## MINUTES OF THE ORGANIZATIONAL MEETING

## OF

The organizational meeting of the members of the above named limited duration company was held on the date time and place stated below. There were present at the meeting the following members:

_____              _____
_____              _____
_____              _____

being all the members of the Limited Duration Company. The meeting was called to order by_____. It was moved, seconded and unanimously carried that_____ act as temporary chairperson and that_____ act as temporary secretary.

The meeting then proceeded to the election of managers. Upon nominations duly made and seconded, the following were elected:

Managing Member 1:

Managing Member 2:

Secretary:

Treasurer:

The managing member of the above-mentioned Limited Duration Company thereupon assumed the chair, and the secretary of the above-mentioned Limited Duration Company assumed the duties as secretary of the meeting.

The Secretary presented to the meeting:

  1. Copy of the Articles of organization
  2. Specimen certificate of ownership
  3. Copy of the Operating Agreement of the Limited Duration Company
  4. The Company seal
  5. Conformed Copy of banking resolutions

**RESOLVED**, that the Articles of Organization and the Operating Agreement be, and they are, approved, ratified and adopted by the members.

WESSELL-ESI2-0001936816

There was presented to the meeting a specimen of a proposed certificate to represent the ownership of an interest in the company. Upon motion duly made, seconded and unanimously carried, it was

**RESOLVED**, that the specimen form of the certificate at this meeting be, and the same hereby is, approved and adopted as the certificate to represent ownership of an interest in the Limited Duration Company, and that the specimen certificate so presented to the meeting be annexed to the minutes thereof.

The Secretary submitted to the meeting a seal proposed for the use as the company seal. Upon motion duly made, seconded and unanimously carried, it was

**RESOLVED**, that the form of the seal submitted to this meeting be, and it hereby is, approved and adopted as and for the Company seal of this Limited Duration Company, and that an impression thereof be made on the margin of these minutes.

**RESOLVED**, that upon receipt of consideration therefore certificates representing ownership in the company be issued by the Secretary as follows:

Name and Address                                    Interest in the LDC

There was presented to the meeting a conformed copy of banking resolutions. Upon motion duly made, seconded and unanimously carried, it was

**RESOLVED**, that the banking resolutions presented at this meeting be, and the same hereby are, approved and adopted and that a copy of the aforementioned resolutions so presented to the meeting be annexed to the minutes thereof.

**RESOLVED**, that the managing members of the Limited Duration Company be, and they hereby are, authorized, empowered and directed to take any and all steps, and to execute and deliver any and all instruments in connection with carrying the foregoing resolutions into effect.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

_____
                                                           Secretary

Members:

_____                    _____

_____                    _____

11

WESSELL-ESI2-0001936817

## CONFORMED COPY OF BANKING RESOLUTIONS

12

WESSELL-ESI2-0001936818

## SPECIMEN CERTIFICATE OF OWNERSHIP

13

WESSELL-ESI2-0001936819

## MINUTES OF THE ANNUAL MEETING OF MEMBERS
## OF

The annual Meeting of Members of the above named Limited Duration Company was held on the date and time and at the place set forth in the written waiver of notice signed by all the members, fixing such time and place, and prefixed to the minutes of this meeting.

There were present at the meeting all of the members of the above named Limited Duration Company.

_____       _____
_____       _____
_____       _____

The meeting was called to order by _____ it was moved, seconded and unanimously carried that _____ act as Chairman and that _____ act as Secretary.

The Chairman then stated that all of the members were present.

The managing member presented his/hers annual report and, after discussion, the report was accepted and ordered filed with the Secretary.

The Chairman noted that it was in order to consider electing managing members for the ensuing year. Upon nominations duly made and seconded, the following were unanimously elected managing members of the Limited Duration Company, to serve for the ensuing year and until their successors are elected and qualified:

Managing Member:

Secretary:

Treasurer:

There being no further business to come before the meeting, upon duly made, seconded and unanimously carried, it was adjourned.

_____
                Secretary

Members:

_____       _____
_____       _____
_____       _____

14

WESSELL-ESI2-0001936820

## WAIVER OF NOTICE OF ANNUAL MEETING OF MEMBERS
## OF

We, the undersigned, being all of the members of the above named Limited Duration Company, hereby agree and consent that the annual meeting of the members of the Limited Duration Company be held on the date and time and at the place designated hereunder, and do hereby waive all notice whatsoever of such meeting and of any adjournment or adjournments thereof.

We do further agree and consent that any and all lawful business may be transacted at such meeting or at any adjournment or adjournments thereof, the members present may deem as advisable thereat. Any business transacted at such meeting or at any adjournment or adjournments thereof shall be as valid and legal and of the same force and effect as if such meeting or adjourned meeting were held after notice.

Place of Meeting:

Date of Meeting:

Time of Meeting:

Dated:


_____
Member


_____
Member


_____
Member


_____
Member

15

WESSELL-ESI2-0001936821

## CAPITAL CONTRIBUTION OF MEMBERS AND ADDRESSES OF MEMBERS AND MANAGERS AS OF _____

Member's Name: _____
Member's Address _____
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest _____

Member's Name: _____
Member's Address: _____
Member's Capital Contribution $_____ (ex: services and cash)
Member's Percentage Interest: _____

Member's Name: _____
Member's Address _____
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest _____

Member's Name: _____
Member's Address _____
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest _____

Member's Name: _____
Member's Address _____
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest _____

Member's Name: _____
Member's Address _____
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest _____

Member's Name: _____
Member's Address _____
Member's Capital Contribution: $_____ (ex: equipment and supplies)
Member's Percentage Interest _____

Manager's Name: _____
Manager's Address _____

16

WESSELL-ESI2-0001936822

# OPERATING AGREEMENT

## OF

### A Limited Duration Company

**AGREEMENT,**                                                    Date:
Made among:

Managing Member 1:
Address: 60 Market Square, Belize City, Belize
Managing Member 2:
Address:
Collectively hereafter referred to as "managing Members"

and,

Member 1:
Address:
Member 2:
Address:
Member 3:
Address:
Member 4:
Address:
Collectively hereafter referred to as "Members"

### W I T N E S S E T H :

**WHEREAS,** the parties hereto desire to form a limited duration company pursuant to the laws of the Country of _____Belize_____ (jurisdiction of organization) for the purposes hereinafter set forth, and to establish their respective rights and obligations in connection with the limited duration company; and

**NOW, THEREFORE,** in consideration of the mutual covenants set forth herein and other valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the Managing Members and Members agree as follows:

### 1. Formation

The parties hereby confirm that they have formed a limited duration company (the "Limited Duration Company") pursuant to the provisions of the _____Belize_____ (jurisdiction of organization)Limited Duration Company Act, *as* the same may be amended from time to time, for the purposes and the period and upon the terms and conditions hereinafter set forth. The parties have caused to be filed the Articles of Organization of the Limited Duration Company, and shall execute, acknowledge, swear to and file any other documents required under applicable law.

17

WESSELL-ESI2-0001936823

## 2. Name

The name of the Limited Duration Company shall be _____
_____(Name of LDC), and all business of the Limited Duration Company shall be conducted under said name, or such other name as the Members from time to time may determine.

## 3. Purposes

The purposes of the Limited Duration Company are to

To incur indebtedness, secured and unsecured; to enter into and perform contracts and agreements of any kind necessary to, in connection with or incidental to the business of the Limited Duration Company; and to carry on any other activities necessary to, in connection with or incidental to the foregoing, as the Managing Members in their discretion may deem desirable.

## 4. Place of Business

The principal place of business and specified office of the Limited Duration Company at which the records required to be maintained by the Limited Duration Company under the
_____Belize_____ (jurisdiction of organization) Limited Duration Company Act are to be kept shall be at
60 Market Square, Belize City, Belize
_____,(Address) or at such other or additional places of business within or outside of the Jurisdiction of ____Belize____ as the Managing Members from time to time may designate. The Managing Members shall notify the other Members of any change of the principal place of business and specified office.

The Limited Duration Company hereby designates ____Belize Bank Limited____
_____(Registered Agent), whose address is
P.O. Box 364 Belize City, Belize_____, as the Registered Agent of the Limited Duration Company for service of process.

The Managing Members may change the registered office and Registered Agent from time to time by filing the prescribed forms with the appropriate governmental authorities.

## 5. Capital Contributions

The capital of the Limited Duration Company shall be $ 1000 . 00 , which shall consist of the aggregate of the capital contributions to be made pursuant to this Article 6.

Each of the Members shall contribute to the capital of the Limited Duration Company the amount set forth opposite his name below:

Managing Member 1-_____ $____.____
Managing Member 2-_____ $____.____
Member 1-_____ $____.____
Member 2-_____ $____.____
Member 3-_____ $____.____
Member 4-_____ $____.____

18

WESSELL-ESI2-0001936824

The Members shall not be required to make any additional capital contributions.

Except as specifically provided in this Agreement or required by law, no Member shall have the right to withdraw or reduce his contributions to the capital of the Limited Duration Company until the termination of the Limited Duration Company. No Member shall have the right to demand and receive any distribution from the Limited Duration Company in any form other than cash, regardless of the nature of such Member's capital contribution. No Member shall be paid interest on capital contributions to the Limited Duration Company.

The liability of any Member for the losses, debts, liabilities and obligations of the Limited Duration Company shall be limited to paying: the capital contribution of such Member when due under this Agreement; such Member's share of any undistributed assets of the Limited Duration Company; and (only if and to the extent at any time required by applicable law) any amounts previously distributed to such Member by the Limited Duration Company.

### 6. Loans and Advances by Members

If any Member shall loan or advance any funds to the Limited Duration Company in excess of the capital contribution of such Member prescribed herein, such loan or advance shall not be deemed a capital contribution to the Limited Duration Company and shall not in any respect increase such Member's interest in the Limited Duration Company.

### 7. Allocations and Distributions

As used in this Agreement, the terms "net profits" and "net losses" shall mean the profits or losses of the Limited Duration Company from the conduct of the Limited Duration Company's business, after all expenses incurred in connection therewith have been paid or provided for. The net profits or net losses of the Limited Duration Company shall be determined by the Limited Duration Company's accountants in accordance with generally accepted accounting principles applied in determining the income, gains, expenses, deductions or losses, as the case may be, reported by the Limited Duration Company for Federal income tax purposes.

The term "cash receipts" shall mean all cash receipts of the Limited Duration Company from whatever source derived, including without limitation capital contributions made by the Members; the proceeds of any sale, exchange, or other disposition of all or any part of the assets of the Limited Duration Company; the proceeds of any loan to the Limited Duration Company; the proceeds of any insurance policy payable to the Limited Duration Company; and the proceeds from the liquidation of the assets of the Limited Duration Company following a termination of the Limited Duration Company.

The term "Members' Percentage Interests" shall mean the percentages set forth opposite the name of each Member below:

| Managing Members | Percentage Interest |
| --- | --- |

| Other Members | Percentage Interest |
| --- | --- |

19

WESSELL-ESI2-0001936825

During each fiscal year, the net profits and net losses of the Limited Duration Company (other than from capital transactions), and each item of income, gain, loss, deduction or credit entering into the computation thereof, shall be credited or charged, as the case may be, to the capital accounts of each Member in proportion to the Members' Percentage Interests.  The net profits of the Limited Duration Company from capital transactions shall be allocated in the following order of priority:  (a) to offset any negative balance in the capital accounts of the Members in proportion to the amounts of the negative balance in their respective capital accounts, until all negative balances in the capital accounts have been eliminated; then (b) to the Members in proportion to the Members' Percentage Interests.  The net losses of the Limited Duration Company from capital transactions shall be allocated in the following order of priority:  (a) to the extent that the balances in the capital accounts of any Members are in excess of their original contributions, to such Members in proportion to such excess balances in the capital accounts until all such excess balances have been reduced to zero; then (b) to the Members in proportion to the Members' Percentage Interests.

The cash receipts of the Limited Duration Company shall be applied in the following order of priority:  (a) to the payment by the Limited Duration Company of amounts due on debts and liabilities of the Limited Duration Company other than to any Member, and operating expenses of the Limited Duration Company; (b) to the payment of interest and amortization due on any loan made to the Limited Duration Company by any Member; (c) to the establishment of cash reserves determined by the Managing Members to be necessary or appropriate, including without limitation reserves for the operation of the Limited Duration Company's business, taxes and contingencies; and (d) to the repayment of any loans made to the Limited Duration Company by any Member.  Thereafter, the cash receipts of the Limited Duration Company shall be distributed among the Members as hereafter provided.

The cash receipts of the Limited Duration Company shall be distributed to the Members from time to time at such times as the Managing Members shall determine.  It is contemplated that distributions will be made if the Managing Members deem such distributions to be prudent and feasible.

Except as otherwise provided in this Agreement or required by law, distributions of cash receipts of the Limited Duration Company, other than from capital transactions, shall be allocated among the Members in proportion to the Members' Percentage Interests.

Except as otherwise provided in this Agreement or required by law, distributions of cash receipts from capital transactions shall be allocated in the following order of priority:  (a) to the Members in proportion to their respective capital accounts until each Member has received cash distributions equal to any positive balance in his capital account; then (b) to the Members in proportion to the Members' Percentage Interests.

## 8.  Books, Records and Tax Returns

At all times during the continuance of the Limited Duration Company, the Managing Members shall keep or cause to be kept complete and accurate records and books of account in which shall be entered each transaction of the Limited Duration Company in accordance with generally accepted accounting principles.

The fiscal year of the Limited Duration Company for both accounting and income tax purposes shall be the calendar year.  The Limited Duration Company shall report its operations, net income and net losses in accordance with the methods of accounting selected by the Managing Members.

The Managing Members may employ on behalf of the Limited Duration Company and at the expense of the Limited Duration Company such firm of certified public accountants as the Managing Members in their sole discretion deems appropriate to serve as the Limited Duration Company's accountants.

20

WESSELL-ESI2-0001936826

The Managing Members shall furnish to each Member, within seventy-five days after the end of each fiscal year, an annual report of the Limited Duration Company which shall include a balance as of the end of such fiscal year; a profit and loss statement of the Limited Duration Company for such fiscal year; a statement of the balance in the capital account of such Member; and the amount of such Member's share of the Limited Duration Company's income, gain, losses, deductions and other relevant items for Federal income tax purposes.

The Managing Members shall prepare or cause to be prepared all Federal, State and local income tax and information returns for the Limited Duration Company, and shall cause such tax and information returns to be filed timely with the appropriate governmental authorities. Within seventy-five days after the end of each fiscal year, the Managing Members shall forward to each person who was a Member during the preceding fiscal year a true copy of the Limited Duration Company's information return filed with the Internal Revenue Service for the preceding fiscal year. The Managing Members shall not be liable to any Member if any taxing authority disallows or adjusts any deductions or credits in the Limited Duration Company's income tax or information returns.

All such records, books of account, tax and information returns, and reports and statements, together with executed copies of this Agreement, shall at all times be maintained at the principal place of business of the Limited Duration Company, and shall be open to the inspection and examination of the Members or their duly authorized representatives during regular business hours. Each Member, or a duly authorized representative of such Member, may make copies of the Limited Duration Company's books of account and records at the expense of such Member. Any Member, at the expense of such Member, may conduct an audit of the Limited Duration Company's books of account and records.

The Managing Members shall furnish to each Member, promptly upon request, a current list of the names and addresses of all of the Managing Members and other Members of the Limited Duration Company, and any other persons or entities having any financial interest in the Limited Duration Company.

The cost of preparing all of the aforesaid records, books, returns and other items shall be borne by the Limited Duration Company. Upon request of the Managing Members, the Members shall pay to the Limited Duration Company, in proportion to the Members' Percentage Interests, the cost of preparing same, not to exceed in the aggregate $2,000 for each fiscal year.

## 9. Bank Accounts

All funds of the Limited Duration Company shall be deposited in the Limited Duration Company's name in such bank account or the Managing Members shall designate accounts as. Withdrawals from any such bank accounts shall be made only in the regular course of business of the Limited Duration Company and shall be made upon such signature or signatures as the Managing Members from time to time may designate.

## 10. Management of the Limited Duration Company

The Members hereby designate _____, having an address at  60 Market Square, Belize City, Belize                                     , and _____, having an address at _____ to serve as Managing Members for the Limited Duration Company.

The business and affairs of the Limited Duration Company shall be conducted and managed by the Managing Members of the Limited Duration Company in accordance with this Agreement and the laws of _____Belize_____ ( jurisdiction of organization).

21

WESSELL-ESI2-0001936827

At any time there is more than one Managing Member, a majority in number of the Managing Members shall decide any difference arising as to any matter within the authority of Managing Members.

If at any time the Managing Members do not own, in the aggregate, at least 20 percent of the Members' Percentage Interests, all of the Members shall be Managing Members until such time as the Members duly elect Managing Members who do own at least 20 percent of the Members' Percentage Interests.

The Managing Members shall have responsibility for the day-to-day management of the business and affairs of the Limited Duration Company and shall devote such time and attention as the Managing Members deem necessary to the conduct and management of the business and affairs of the Limited Duration Company.

Each of the Managing Members hereby is given sole power and authority to execute instruments on behalf of the Limited Duration Company and to otherwise bind the Limited Duration Company. Unless authorized by the Managing Members, no other person shall have the power or authority to execute instruments on behalf of the Limited Duration Company and to otherwise bind the Limited Duration Company. No person, firm or corporation dealing with the Limited Duration Company shall be required to investigate the authority of the Managing Members or to secure the approval of or confirmation by the Members of any act of the Managing Members in connection with the business or affairs of the Limited Duration Company.

No Member, other than the Managing Members or their designees, shall have the authority, or shall take any action as a Member, to bind the Limited Duration Company.

The Managing Members shall be reimbursed by the Limited Duration Company for all direct out-of-pocket expenses incurred by the Managing Members on behalf of the Limited Duration Company in connection with the performance of their duties hereunder, including without limitation amounts payable by the Managing Members for office, accounting, bookkeeping and other services, materials, facilities and professional and legal services rendered or furnished to the Limited Duration Company.

As compensation for the services of the Managing Members in arranging the transactions contemplated by the Limited Duration Company and the continuing management of the Limited Duration Company, the Limited Duration Company shall pay the Managing Members a limited duration company management fee of $_____._____ per annum payable monthly. The compensation for the services of the Managing Members to the Limited Duration Company may be modified from time to time by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests.

A Managing Member's duty of care in the discharge of the Managing Member's duties to the Limited Duration Company and the Members is limited to refraining from engaging in grossly negligent conduct, intentional misconduct, or a knowing violation of law. In discharging the duties of a Managing Member, the Managing Member shall be fully protected in relying in good faith upon the records of the Limited Duration Company and upon such information, opinions, reports or statements by other Managing Members, Members, agents or other persons as to matters the Managing Member reasonably believes are within such person's professional or expert competence, including without limitation information, opinions, reports or statements as to the value or amount of the assets, liabilities, profits or losses of the Limited Duration Company or any other facts pertinent to the existence and amount of assets from which distributions to Members might properly be paid.

To the extent of the Limited Duration Company's assets, and to the extent permitted by law, the Limited Duration Company shall indemnify and hold each Managing Member harmless from and against all liability, claim, loss, damage or expense, including reasonable attorneys' fees, incurred by the Managing Member by reason of any act or omission of the Managing Member made in good faith on behalf of the Limited Duration Company.

22

WESSELL-ESI2-0001936828

Except as expressly provided elsewhere in this Agreement, any decisions which are to be made by the Members, rather than the Managing Members, shall be made by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests.

## 11. Assignment of Interests

Except as otherwise provided in this Agreement, no Member or other person holding any interest in the Limited Duration Company may assign, pledge, hypothecate, transfer or otherwise dispose of all or any part of his interest in the Limited Duration Company, including without limitation the capital, profits or distributions of the Limited Duration Company without the prior written consent of the other Members in each instance.

The Members agree that no Member may voluntarily withdraw from the Limited Duration Company without the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (other than the withdrawing Member).

A Member may assign all or any part of such Member's interest in the allocations and distributions of the Limited Duration Company to any of the following (collectively the "permitted assignees"):  any person, corporation, partnership or other entity as to which the Limited Duration Company has given consent to the assignment of such interest in the allocations and distributions of the Limited Duration Company by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests. An assignment to a permitted assignee shall only entitle the permitted assignee to the allocations and distributions to which the assigned interest is entitled, unless such permitted assignee applies for admission to the Limited Duration Company and is admitted to the Limited Duration Company as a Member in accordance with this Agreement.

An assignment, pledge, hypothecation, transfer or other disposition of all or any part of the interest of a Member in the Limited Duration Company or other person holding any interest in the Limited Duration Company in violation of the provisions hereof shall be null and void for all purposes.

No assignment, transfer or other disposition of all or any part of the interest of any Member permitted under this Agreement shall be binding upon the Limited Duration Company unless and until a duly executed and acknowledged counterpart of such assignment or instrument of transfer, in form and substance satisfactory to the Managing Members, has been delivered to the Limited Duration Company.

No assignment or other disposition of any interest of any Member may be made without an opinion of counsel satisfactory to the Managing Members that such assignment or disposition is subject to an effective registration under, or exempt from the registration requirements of, the applicable jurisdiction securities laws.  No interest in the Limited Duration Company may be assigned or given to any person below the age of 21 years or to a person who has been adjudged to be insane or incompetent.

Anything herein contained to the contrary, the Managing Members and the Limited Duration Company shall be entitled to treat the record holder of the interest of a Member as the absolute owner thereof, and shall incur no liability by reason of distributions made in good faith to such record holder, unless and until there has been delivered to the Managing Members the assignment or other instrument of transfer and such other evidence as may be reasonably required by the Managing Members to establish to the satisfaction of the Managing Members that an interest has been assigned or transferred in accordance with this Agreement.

WESSELL-ESI2-0001936829

### 12. Admission of New Members

The Members may admit new Members (or transferees of any interests of existing Members) into the Limited Duration Company by the unanimous vote or consent of the Members.

As a condition to the admission of a new Member, such Member shall execute and acknowledge such instruments, in form and substance satisfactory to the Managing Members, as the Managing Members may deem necessary or desirable to effectuate such admission and to confirm the agreement of such Member to be bound by all of the terms, covenants and conditions of this Agreement, as the same may have been amended. Such new Member shall pay all reasonable expenses in connection with such admission, including without limitation reasonable attorneys' fees and the cost of the preparation, filing or publication of any amendment to this Agreement or the Articles of Organization, which the Managing Members may deem necessary or desirable in connection with such admission.

In no event shall a new Member be admitted to the Limited Duration Company if such admission would be in violation of applicable jurisdiction securities laws or would adversely affect the treatment of the Limited Duration Company as a partnership for income tax purposes.

### 13. Withdrawal Events Regarding Members and Election to Continue the Limited Duration Company

In the event of the death, retirement, withdrawal, expulsion, or dissolution of a Member, or an event of bankruptcy or insolvency, as hereinafter defined, with respect to a Member, or the occurrence of any other event which terminates the continued membership of a Member in the Limited Duration Company pursuant to the laws of _____ Belize _____ ( jurisdiction of organization) (each of the foregoing being hereinafter referred to as a "Withdrawal Event"), the Limited Duration Company shall terminate sixty days after notice to the Members of such Withdrawal Event unless the business of the Limited Duration Company is continued as hereinafter provided.

Notwithstanding a Withdrawal Event with respect to a Member, the Limited Duration Company shall not terminate, irrespective of applicable law, if within aforesaid sixty day period the remaining Members, by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (other than the Member who caused the Withdrawal Event), shall elect to continue the business of the Limited Duration Company.

In the event of a Withdrawal Event with respect to any Member, any successor in interest to such Member (including without limitation any executor, administrator, heir, committee, guardian, or other representative or successor) shall not become entitled to any rights or interest of such Member in the Limited Duration Company, other than the allocations and distributions to which such Member is entitled, unless such successor in interest is admitted as a Member in accordance with this Agreement.

An "event of bankruptcy or insolvency" with respect to a Member shall occur if such Member: applies for or consents to the appointment of a receiver, trustee or liquidator of all or a substantial part of his assets; or makes a general assignment for the benefit of creditors; or is adjudicated a bankrupt or an insolvent; or files a voluntary petition in bankruptcy or a petition or an answer seeking an arrangement with creditors or to take advantage of any bankruptcy, insolvency, readjustment of debt or similar law or statute, or an answer admitting the material allegations of a petition filed against him in any bankruptcy, insolvency, readjustment of debt or similar proceedings; or takes any action for the purpose of effecting any of the foregoing; or an order, judgment or decree shall be entered, with or without the application, approval or consent of such Member, by any court of competent jurisdiction, approving a petition for or appointing a receiver or trustee of all or a substantial part of the assets of such Member, and such order, judgment or decree shall continue unstayed and in effect for thirty days.

24

WESSELL-ESI2-0001936830

### 14. Dissolution and Liquidation

The Limited Duration Company shall terminate upon the occurrence of any of the following: the election by the Members to dissolve the Limited Duration Company made by the unanimous vote or consent of the Members; the occurrence of a Withdrawal Event with respect to a Member and the failure of the remaining Members to elect to continue the business of the Limited Duration Company as provided for in Article 14 above; or any other event which pursuant to this Agreement, as the same may hereafter be amended, shall cause a termination of the Limited Duration Company.

The liquidation of the Limited Duration Company shall be conducted and supervised by the Managing Members or if there be none then by a person designated for such purposes by the affirmative vote or consent of Members holding a majority of the Members' Percentage Interests (the "Liquidating Agent"). The Liquidating Agent hereby is authorized and empowered to execute any and all documents and to take any and all actions necessary or desirable to effectuate the dissolution and liquidation of the Limited Duration Company in accordance with this Agreement.

Promptly after the termination of the Limited Duration Company, the Liquidating Agent shall cause to be prepared and furnished to the Members a statement setting forth the assets and liabilities of the Limited Duration Company as of the date of termination. The Liquidating Agent, to the extent practicable, shall liquidate the assets of the Limited Duration Company as promptly as possible, but in an orderly and businesslike manner so as not to involve undue sacrifice and in accordance with the provisions of the _____Belize_____ ( jurisdiction of Organization) Limited Duration Company Act.

The proceeds of sale and all other assets of the Limited Duration Company shall be applied and distributed in the following order of priority: (a) to the payment of the expenses of liquidation and the debts and liabilities of the Limited Duration Company, other than debts and liabilities to Members; (b) to the payment of debts and liabilities to Members; (c) to the setting up of any reserves which the Liquidating Agent may deem necessary or desirable for any contingent or unforeseen liabilities or obligations of the Limited Duration Company, which reserves shall be paid over to an attorney-at-law admitted to practice in the Country of _____Belize_____ as escrowee, to be held for a period of two years for the purpose of payment of the aforesaid liabilities and obligations, at the expiration of which period the balance of such reserves shall be distributed as hereinafter provided.

If the Liquidating Agent shall determine that it is not practicable to liquidate all of the assets of the Limited Duration Company, the Liquidating Agent may retain assets having a fair market value equal to the amount by which the net proceeds of liquidated assets are insufficient to satisfy the debts and liabilities referred to above. If, in the absolute judgment of the Liquidating Agent, it is not feasible to distribute to each Member his proportionate share of each asset, the Liquidating Agent may allocate and distribute specific assets to one or more Member in such manner as the Liquidating Agent shall determine to be fair and equitable, taking into consideration the basis for tax purposes of each asset.

Upon compliance with the distribution plan, the Members shall cease to be such, and the Managing Members shall execute, acknowledge and cause to be filed such certificates and other instruments as may be necessary or appropriate to evidence the dissolution and termination of the Limited Duration Company.

25

WESSELL-ESI2-0001936831

## 15. Representations Of Members

Each of the Members represents, warrants and agrees that the Member is acquiring the interest in the Limited Duration Company for the Member's own account as an investment and not with a view to the sale or distribution thereof; the Member, if an individual, is over the age of 21, or if the Member is an organization, such organization is duly organized, validly existing and in good standing under the laws of its Country of organization and that it has full power and authority to execute and perform its obligations under this Agreement; and the Member shall not dispose of such interest or any part thereof in any manner which would constitute a violation of the Securities Act of 1933, the Rules and Regulations of the Securities and Exchange Commission, or any applicable laws, rules or regulations of any jurisdiction or other governmental authorities, as the same may be amended.

## 16. Certificates Evidencing Membership

A Certificate of Membership issued by the Managing Members shall evidence every membership interest in the Limited Duration Company. Each Certificate of Membership shall set forth the name of the Member holding the membership interest and the Member's Percentage Interest held by the Member, and shall bear the following legend:

> The membership interest represented by this certificate is subject to, and may not be transferred except in accordance with, the provisions of the Operating Agreement of_____,(LDC name) dated as of _____, 20____, as the same from time to time may be amended, a copy of which Operating Agreement is on file at the principal office of the Limited Duration Company.

The Members agree promptly to deliver to the Managing Members any Certificates of Membership previously issued for the purpose of adding the foregoing legend thereto.

## 17. Notices

All notices, demands, requests or other communications which any of the parties to this Agreement may desire or be required to give hereunder shall be in writing and shall be deemed to have been properly given if sent by FedEx or similar private express service or by registered or certified mail, return receipt requested, with postage prepaid, addressed as follows: (a) if to the Limited Duration Company, to the Limited Duration Company c/o the Managing Members at their address first above written or to such other address or addresses as may be designated by the Limited Duration Company or the Managing Members by notice to the Members pursuant to this Article 17; (b) if to the Managing Members, to the Managing Members at their address first above written or to such other address or addresses as may be designated by the Managing Members by notice to the Limited Duration Company and the Members pursuant to this Article 18; and (c) if to any Member, to the address of said Member first above written, or to such other address as may be designated by said Member by notice to the Limited Duration Company and the other Members pursuant to this Article 17. Each Member shall keep the Limited Duration Company and the other Members informed of such Member's current address.

WESSELL-ESI2-0001936832

### 18. Amendments

This Agreement may not be altered, amended, changed, supplemented, waived or modified in any respect or particular unless the same shall be in writing and agreed to by the affirmative vote or consent of Members holding two-thirds of the Members' Percentage Interests. No amendment may be made to Articles 5, 7, 12 and 14 hereof, insofar as said Articles apply to the financial interests of the Members, except by the vote or consent of all of the Members. No amendment of any provision of this Agreement relating to the voting requirements of the Members on any specific subject shall be made without the affirmative vote or consent of at least the number or percentage of Members required to vote on such subject.

### 19. Miscellaneous

This Agreement and the rights and liabilities of the parties hereunder shall be governed by and determined in accordance with the laws of the Country of _____Belize_____ ( jurisdiction of organization). Every provision of this Agreement is intended to be severable. If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not affect the other provisions of this Agreement, which shall remain in full force and effect.

The captions in this Agreement are for convenience only and are not to be considered in construing this Agreement. All pronouns shall be deemed to be the masculine, feminine, neuter, singular or plural as the identity of the person or persons may require. References to a person or persons shall include partnerships, corporations, limited duration companies, unincorporated associations, trusts, estates and other types of entities. The Managing Members and the Members collectively are referred to herein as the Members. Any one of the Members is referred to herein as a Member.

This Agreement, and any amendments hereto may be executed in counterparts all of whom taken together shall constitute one agreement.

This Agreement sets forth the entire agreement of the parties hereto with respect to the subject matter hereof. It is the intention of the Members that this Agreement shall be the sole source of agreement of the parties, and, except to the extent a provision of this Agreement provides for the incorporation of Federal income tax rules or is expressly prohibited or ineffective under the _____Belize_____ (jurisdiction of organization) Limited Duration Company Act, as the same may be amended from time to time, this Agreement shall govern even when inconsistent with, or different from, the provisions of any applicable law or rule. To the extent any provision of this Agreement is prohibited or otherwise ineffective under the _____Belize_____ (jurisdiction of organization) Limited Duration Company Act, such provision shall be considered to be ineffective to the smallest degree possible in order to make this Agreement effective under the _____Belize_____ (jurisdiction of organization)Limited Duration Company Act.

Subject to the limitations on transferability contained herein, this Agreement shall be binding upon and inure to the benefit of the parties hereto and to their respective heirs, executors, administrators, successors and assigns.

No provision of this Agreement is intended to be for the benefit of or enforceable by any third party.

WESSELL-ESI2-0001936833

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the date first above written.

**In the presence of:**

_____

Managing Member 1

_____
Print:

_____
Print:

_____

Managing Member 2

_____
Print:

_____
Print:

**In the presence of:**

_____

Member 1

_____
Print:

_____
Print:

_____

Member 2

_____
Print:

_____
Print:

28

WESSELL-ESI2-0001936834

_____
Member 3

_____
Print:

_____
Print:

_____
Member 4

_____
Print:

_____
Print:

WESSELL-ESI2-0001936835

## AMENDMENT TO ARTICLES OF ORGANIZATION/
## OPERATING AGREEMENT

There was presented to the members an amendment to the _____ for the company. After consideration by the members of the company, it was

**RESOLVED,** that the following amendment be made:

The Secretary shall amend the document, file the document with the proper jurisdiction agencies, if necessary, and distribute the amended document to the members of the company.

Members:

_____          _____
_____          _____
_____          _____

30

WESSELL-ESI2-0001936836

## APPROVAL OF TRANSACTION BENEFITING MEMBERS

There was presented to the members the following transaction:

The transaction has a potential benefit to one or more members of the company. After consideration by the members of the company, it is hereby

**RESOLVED,** that the above-described transaction has been approved.

Members:

_____          _____

_____          _____

_____          _____

31

WESSELL-ESI2-0001936837

## APPROVAL OF LOAN TO COMPANY

The company wishes to make application to receive a loan in the amount of _____, to be repaid at _____ percent interest, for a term of _____.

The company will not accept a loan that materially differs from the terms described above. After consideration by the members of the company, it is hereby

**RESOLVED**, that the above-described transaction has been approved.

Members:

_____        _____

_____        _____

32

WESSELL-ESI2-0001936838

# Exhibit I

| OCI ROW on Master List | Entity Name | Operating Agreement | Members Certificate | Related person due diligence information (Passport/Address) | Certificate of Incorporation | Articles of Organization | All | Type of Document | NOTE | Reference | Reference Row on Wessell List |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | OGF#|#III|sh£whg#Lwbpv# | | | | | | | | | |
| 160 | Global Compassion LDC | - | - | - | 4 | | | Cert of Good Standing; Check 1800Company.LLLP | | WESSELL-ESI2-0001873147; WESSELL-ESI2-0001873675; | 80 |
| 191 | AnyChart LDC | 4 | 4 | 4 | 4 | 4 | 4 | AnyChart LDC Notarized Operating Agreement; Author Agreement; Belize | | WESSELL-ESI2-0001607567; WESSELL-ESI2-0001594201; | 99 |
| 208 | DramRock International LDC | 4 | 4 | 4 | 4 | 4 | 4 | Cert of Incorp Memo of Assn and Art of Assn | | WESSELL-ESI2-0001843472; WESSELL-ESI2-0001843501; | 109 |
| 224 | Adcorp LDC | 4 | 4 | 4 | 4 | 4 | 4 | Entity Documents; Operating Agreement | | WESSELL-ESI2-0000815686; WESSELL-ESI2-0000823209; | 121 |
| 225 | Dope Ads LDC | 4 | 4 | 4 | 4 | 4 | 4 | Operating Agreement & formation documents | | WESSELL-ESI2-0000808235; WESSELL-ESI2- | 121 |
| 240 | Billisa Investments LDC | 4 | 4 | 4 | 4 | 4 | 4 | Bank Account Opening; Belize Bank: Year openned on Bank letter; Estimated | | WESSELL-ESI2-0001414650; WESSELL-ESI2-0001357063; | 135 |
| 292 | LIGHTENING CAPITAL LDC | - | - | 4 | 4 | 4 | | Belize Entity Documents; Certificate of Incumbency; | | WESSELL-ESI2-0000023914 | 166 |
| 293 | WS Capital Group LDC | 4 | 4 | 4 | 4 | 4 | | Atlantic International Bank: Year openned; Estimated Annual Amount and | | WESSELL-ESI2-0002117241; | 167 |
| 419 | Bright Eyes International LDC | - | - | 4 | 4 | 4 | | Formation Docs | | WESSELL-ESI2-0002840 | 240 |
| 442 | Venus Capital LDC | - | - | 4 | | | | CC payment for Bahama Trust; Belize LDC Certificate of Incumbency; Belize | | WESSELL-ESI2-0000070572; WESSELL-ESI2-0000957478; | 248 |
| 483 | Rig QA International LDC | 4 | 4 | 4 | 4 | 4 | | Belize Entity Documents; Capital Security Bank Letter to accepted bank application; | | WESSELL-ESI2-0001695213; WESSELL-ESI2-0001679748; | 267 |
| 547 | ZZYZX LDC | - | - | 4 | 4 | 4 | | Belize Entity Documents; CC Auth; Entity Document: Belize LDC; Bahamas Trust | | WESSELL-ESI2-0000030174; WESSELL-ESI2-0000349364; | 300 |
| 575 | Zonespan LDC | - | - | 4 | 4 | 4 | | AR listing; cc Auth; Invoice; Certificate of Good standing; Article of Association; | | WESSELL-ESI2-0001510360; WESSELL-ESI2-0001519179; | 320 |
| 619 | Leadership Ventures LDC | - | - | 4 | 4 | 4 | | Formation Docs; order to open Leadership Ventures LDC Bahamas Trust; | | WESSELL-ESI2-0000029645 | 346 |
| 631 | Kobrin/Scott LDC | | 4 | 4 | 4 | 4 | | Formation Docs | | WESSELL-ESI2-0001049506 | 354 |
| 735 | Real Estate Holdings Group LDC | - | - | 4 | 4 | | | Bankruptcy Notice; Belize Entity Documents; Electronic Bankruptcy | | WESSELL-ESI2-0000057316; WESSELL-ESI2-0000896345; | 395 |
| 772 | Aragon L.D.C. | - | - | - | 4 | | | Invoice; Notized Certificate | | WESSELL-ESI2-0000174887 | 420 |
| 828 | The Clark Group LDC | - | - | 4 | | | | Invoice; Kits order for 05/15/2012 | | WESSELL-ESI2-0000160556; WESSELL-ESI2-0002109645 | 450 |
| 1036 | Global Asset Holdings LDC | - | - | 4 | 4 | | | Asiaciti Trust invoice; Letter re: Form W-9; **new order emailed on 05/18/2016 for** | | WESSELL-ESI2-0001884232; WESSELL-ESI2-0001705029; | 509 |
| 1089 | Labne Global Investments LDC | - | 4 | 4 | 4 | 4 | | Cert of Incorp Memo of Association and Articles of | Diligence information found | WESSELL-ESI2-0002096031 | 533 |
| 1090 | USCA LDC | - | - | 4 | 4 | 4 | | Formation Docs; New order for USCA LDC; cert of inc | | WESSELL-ESI2-0000030036;WESSELL-ESI2- | 533 |
| 1185 | Partner Capital LDC | 4 | 4 | 4 | 4 | 4 | 4 | Aged/Shelf Company Agreement; Belize Entity Documents; Company Order Form | | WESSELL-ESI2-0000869757; WESSELL-ESI2-0000867883; | 584 |
| 1188 | Butter Stories LDC | 4 | 4 | 4 | 4 | 4 | 4 | Belize Entity Documents; CC Auth; CC Auth for restoration; Credit Card | | WESSELL-ESI2-0001416655; WESSELL-ESI2-0001891878; | 586 |
| 1190 | UTB , LDC | - | 1 | 4 | 1 | - | | CC Auth for UTB LDC Caribbean Bank Account Belize Management Package; | Shown as LLC; Related to Butter | WESSELL-ESI2-0002025996;WESSELL-ESI2- | 586 |
| 1197 | Janitorial A to Z LDC | 4 | 4 | 4 | 4 | 4 | 4 | Entity Document & Blank Loyal Bank application; Formation Docs; Operating | | WESSELL-ESI2-0000071908; WESSELL-ESI2-0000701573; | 599 |
| 1218 | Agape Holdings LDC | - | - | 1 | | | | Resolution document; an email requested to convert LDC to IBC ; A | US Bank Statement for Address; Related | WESSELL-ESI2-0001621602;WESSELL-ESI2- | 599 |
| 1275 | Golden Bridge Group LDC | 4 | 4 | 4 | 4 | 4 | | Bank Account Appl; CC auth; Formation Docs; Invoice; Memo of Assn and Art of | | WESSELL-ESI2-0001393640; WESSELL-ESI2-0001632295; | 631 |
| 1579 | Barak MD LDC | 4 | 4 | 4 | 4 | 4 | | Belize Entity Documents; CC auth; Entity Documents; Book of | | WESSELL-ESI2-0001417091; WESSELL-ESI2-0001416821; | 783 |
| 3088 | Red Square LDC | 1 | 1 | 1 | 1 | 1 | 1 | Bank Account Opening; Formation Docs | | WESSELL-ESI2-0001409612; WESSELL-ESI2-0000853568 | 1397 |
| 3095 | ICQ2FM LDC | 1 | 1 | 1 | 1 | 1 | 1 | Belize Bank: Year openned on Bank letter; Estimated Annual Amount and | | WESSELL-ESI2-0001416858; WESSELL-ESI2-0001366758 | 1401 |
| 3105 | Bains Enterprises L.D.C. | 1 | 1 | 1 | 1 | 1 | 1 | Belize Entity Documents; CBS Account Number 606246; Check Payment; Operating | | WESSELL-ESI2-0001198556; WESSELL-ESI2-0001669743; | 1410 |
| 3129 | WRA Enterprises LDC | 1 | 1 | 1 | 1 | 1 | 1 | Formation Docs (Certificate of Incorporation Resolutions Article of | | WESSELL-ESI2-0000030123;WESSELL-ESI2- | 1424 |
| 4340 | PEHAR42 LDC | 1 | 1 | 1 | 1 | 1 | 1 | Affidavit and membership cert; Formation Docs; Operating Agreement; | | WESSELL-ESI2-0001688593; WESSELL-ESI2-0001386078; | |
| New | Reed Engineering Consultants LDC | - | - | 4 | | | | CC Auth | Joan Wessell | | Identified from Wessell Production |
| 627 | Sea Gull Management LDC | - | - | 4 | | | | List of active LDC names from Belize Corporation Services Limited | **Belize bank acct letter** | WESSELL-ESI2-0001918340 | 351 |
| 2648 | Mach 7 Exports LDC | - | - | 4 | | | | List of active LDC names from Belize Corporation Services Limited | **CAYE Bank and PP MC** | WESSELL-ESI2-0001918340; WESSELL-ESI2-0001713276 | 1187 |
| 2915 | SMB International LDC | - | - | - | 4 | - | | List of active LDC names from Belize Corporation Services Limited | shows as LLC | WESSELL-ESI2-0001918340 | 1317 |
| 3251 | Tristate Holdings , LDC | - | - | 4 | - | - | | List of active LDC names from Belize Corporation Services Limited | Rajesh Naik; potential Bahamas | WESSELL-ESI2-0001918340; WESSELL-ESI2-0001775830; | 1463 |
| New | Bahia Holdings LDC | - | - | 4 | | | | List of active LDC names from Belize Corporation Services Limited | | WESSELL-ESI2-0001918340; | Identified from Wessell Production |
| New | BradleyGleves LDC | - | - | 4 | | | | List of active LDC names from Belize Corporation Services Limited | | WESSELL-ESI2-0001918340; WESSELL-ESI2-0000199039; | Identified from Wessell Production |
| New | Fai Bai Hong Group LDC | - | - | 4 | 4 | - | | List of active LDC names from Belize Corporation Services Limited | related entities: Cheap Stuff, Inc. | WESSELL-ESI2-0001918340; WESSELL-ESI2-0001732199; | Identified from Wessell Production |
| | | 17 | 20 | 35 | 33 | 26 | 17 | | | | |
| | Missing | 24 | 21 | 6 | 8 | 15 | 24 | | | | |